IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| HAIYING HUANG, | |
| Plaintiff, | |
| v. | Civil Action No.   4:25-cv-00181 |
| UNIVERSITY OF TEXAS ARLINGTON, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**PLAINTIFF HAIYING HUANG'S VERIFIED COMPLAINT**

Plaintiff Haiying Huang ("Plaintiff" and/or "Dr. Huang"), by and through her attorneys, White, Rose & Hilferty, P.C., hereby complains of Defendant University Of Texas Arlington ("Defendant" and/or "University"), upon information and belief as follows:

**NATURE OF THE CASE**

1. Plaintiff brings this action alleging that Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and Tex. Lab. Code Ann. § 21.051(1), *et seq.*, and seeks damages to redress the injuries she has suffered as a result of being discriminated and retaliated against based upon her race, sex, national origin, and related engagements in protected activity.

**JURISDICTION & VENUE**

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e *et seq.* and 28 U.S.C. §§ 1343.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the underlying events or omissions giving rise to Plaintiff's claim occurred.

## PROCEDURAL REQUIREMENTS

4. On November 27, 2024, Plaintiff filed a complaint (Charge No.: 450-2024-07815) with the Equal Employment Opportunity Commission ("EEOC").

5. On December 20, 2024, the EEOC issued a Determination and Notice of Suit Rights in connection with the above-referenced Charges.

6. Plaintiff has filed this action within 90 days of receipt of the Determination and Notice of Suit Rights.

## THE PARTIES

8. At all relevant times, Plaintiff was and is a resident of Tarrant County, Texas. During the relevant time period herein, Defendant employed Plaintiff as a Professor and Associate Chair of the Mechanical and Aerospace Engineering Department at its location in Tarrant County, Texas.

9. At all relevant times, Defendant was and is a public research university in Arlington, Texas, with its principal place of business at 701 S Nedderman Dr, Arlington, Texas 76019.

## MATERIAL FACTS

10. Dr. Huang is a female who was born in China and identifies as Asian. During her employment, Defendant subjected Dr. Huang to unlawful discrimination based upon her race, sex, and national origin, as well as retaliation following her engagements in protected activity.

11. Defendant hired Plaintiff on August 1, 2006, as an Assistant Professor of Mechanical and Aerospace Engineering. She was promoted twice, to Associate Professor with tenure in 2010 and to Full Professor in 2014. She subsequently became Associate Chair of the Mechanical and Aerospace Engineering Department on September 1, 2022.

12. Throughout her employment, Plaintiff performed her job duties in an exemplary manner.

13. On September 7, 2022, Dr. Huang chaired a meeting of the Mechanics Technical Disciplinary Committee (TDC). Associate Professor Stefan Dancila, a white male from Romania, repeatedly interrupted her. After the meeting, Dr. Huang reported Dancila's behavior to Department Chair Erian Armanios. Armanios provided a set of meeting rules for Dr. Huang to discuss at the next TDC meeting. His suggestions reflected Dancila's demand that the TDC meetings should be conducted following Robert's Rules of Order.

14. Following her escalation, Dancila persistently harassed Dr. Huang in emails. For example, following meetings on September 14, 2022, in which she introduced proposed committee rules, Dancila wrote:

> "*It is insane to move this process online in collectively and concurrently editing a document - you are unnecessarily reinventing the wheel in the form of a hexagon. Just go along with the established practices for conducting orderly business - I did not invent them, I had to learn them as well. I still am.*
>
> *Just like you, I did not grow up with them. I grew up in a system where meetings were rubber-stamping mandatory compliance activities, where any discussion was discouraged and useless anyway, because in the end whatever the leader had decided beforehand and brought to the meeting was what ended up as the collective decision. Not OK. The experience of living under communism left me with a very strong immune reaction to that kind of running of the show and that kind of decision making.*"

These comments referred to Dr. Huang's upbringing in Communist China. When Dr. Huang attempted to conduct another committee meeting, Dancila responded, "You cannot possibly be serious," and questioned, "What is the mad rush about?" Dr. Huang again complained to Armanios. Armanios asked fellow professor Andrew Makeev to speak with Dancila, but no further action was taken.

15. In August or September 2022, Armanios commented to Professor Brian Dennis, a white American male, that Dr. Huang was chosen for the Associate Chair position because she was "a minority."

16. On or around February 21, 2023, three male Graduate Advisors—Kamesh Subbarao, Seiichi Nomura, and Ratan Kumar—complained to Armanios that Dr. Huang did not consult them for the PreApp project, which aimed to improve PhD recruitment. Dr. Huang explained that she solicited input from these advisors, but they did not provide any input. Armanios nevertheless instructed her to meet with the advisors again and countermanded decisions Dr. Huang had previously made regarding the project.

17. On March 1, 2023, Dr. Huang met with Subbarao, Nomura, Kumar, and undergraduate advisor Nancy Michael, a white American female. Within moments, Kumar and the other advisors interrupted and interrogated her. Armanios's favorable treatment of the advisors after their unfounded complaint encouraged them to challenge her authority.

18. On March 31, 2023, Dr. Huang attended a meeting of the Mechanical and Aerospace Engineering Committee on Academic Program (MAECAP) that Dennis called to address issues with the TDC course scheduling. After little progress had been made after a half hour, Dr. Huang provided her input. She also asked Michael to halt side conversations as they made it difficult to hear Dennis speak. However, Dennis subsequently demanded that Armanios

ask Dr. Huang to step down as TDC chair and remove her from MAECAP. Armanios failed to address Dennis' underlying discriminatory conduct.

19. On April 10, 2024, Armanios removed Dr. Huang as the TDC chair.

20. On June 7, 2024, Armanios reluctantly agreed to switch Dr. Huang from the Aerospace Engineering Committee on Academic Program (AECAP) to Mechanical Engineering Committee on Academic Program (MECAP).

21. In June 2023, Dr. Robert Taylor, the new D&M TDC chair, submitted a course schedule to Dr. Huang that did not follow the approved guidelines. Dr. Huang attempted to discuss the schedule with Taylor, who refused to comply with guidelines. When escalated, Armanios incredibly criticized Dr. Huang's methods of dealing with faculty members.

22. In July 2023, Armanios excused Nomura and Kumar from assigning graduate teaching assistants (GTAs). Armanios reassigned this task to her, over her suggestion that the graduate advisors were better suited for the task. Armanios interrupted her and ordered, "You will do it."

23. On August 9, 2023, the graduate team proposed a deadline for switching students from GTA to graduate research assistant (GRA) appointments, which Dr. Huang oversaw. Dr. Huang requested Subbarao explain a GTA-to-GRA switch he submitted past the deadline. Subbarao refused to respond and escalated the dispute to Armanios. Dr. Huang requested a meeting with Armanios to mediate, which resulted in a heated exchange in which Subbarao accused Dr. Huang of arbitrarily "digging in her heels." After Subbarao apologized in writing for his outburst, Armanios praised him and again undermined Dr. Huang's authority by granting Subbarao's exception.

24. On August 29, 2023, Armanios dismissed Dr. Huang's reported increased PhD enrollment due to the PreApp project in an email to graduate and undergraduate advisors.

25. On October 24, 2023, Dr. Huang consulted with Armanios for his input regarding a struggling student. Prior to contacting him, she developed a plan to address the situation with the student's graduate advisor. Armanios chastised Dr. Huang in an e-mail that included the graduate advisor stating, "This abrupt decision is of great concern regarding [the student]'s wellbeing" and "having plans for him at this stage is premature and unwise, at best."

26. Despite this near constant harassment from her colleagues and supervisors, Dr. Huang received the highest possible performance rating in her December 2023 review, "exceeding expectations."

27. In February 2024, Dr. Huang organized doctoral "core" faculty meetings on the graduate curriculum. Over the course of these meetings, both Dancila and Michael openly harassed Dr. Huang. In one meeting, Dancila interrupted Dr. Huang more than a dozen times and had an outburst when she tried to adjourn it.

28. On February 19, 2024, Dr. Huang raised to Armanios the disproportionate impact on female faculty from increased teaching loads on assistant professors. Armanios accused her of overstepping by sharing her perspective on this issue. He directed Dr. Huang to direct all future issues with assistant professors to him, noting that if they were unhappy, "they can move to other departments."

29. Shortly after this exchange Armanios removed Dr. Huang from participation in a key department committee. He also ordered Dr. Huang to stop discussing the course requirements at the graduate curriculum review meeting citing complaints from faculty, despite previously

approving such discussions. Dr. Huang expressed that she felt unsupported by him and questioned why he trusted others' input over her.

30.     On February 28, 2024, Dr. Huang brought a conflict resolution framework summary to a meeting with Armanios.  However, he refused to engage in this process. Instead, He accused her of being a poor communicator, mistreating faculty, and receiving frequent complaints about her. When Dr. Huang asked for details about the complaints, Armanios responded only with vague generalizations. When she cited evidence of unequal treatment of female faculty in the department, Armanios dismissed her concerns.

31.     On March 1, 2024, Armanios indicated that he intended to part ways with her. He blamed all Department woes upon her, claimed her inexperience was "tearing the department apart." Dr. Huang replied that she was not surprised he was now pushing her off the "glass cliff."

32.     On March 14, 2024, Dr. Huang attempted to discuss a PhD recruitment announcement with Armanios.  When Armanios stated that they needed to meet in-person to address their prior meeting; Dr. Huang requested to discuss via email to allow each of them "the time to reflect and respond in a rational way." Armanios replied that her suggestion was "inappropriate." Without further notice or discussion, he terminated Dr. Huang from the Associate Chair position without any explanation on March 21, 2024.

33.     On April 26, 2024, Armanios announced the replacement of Dr. Huang with Dennis, a white American male, and to whom Armanios previously characterized Dr. Huang as a "minority" hire.

34.     On May 21, 2024, Dr. Huang filed an internal discrimination and retaliation complaint against Armanios with the University's Equal Opportunity Services (EOS) Office.

35.     On August 22, 2024, EOS Investigator Amber Hannah Love, a Caucasian American female, issued a draft report concluding that no discrimination had occurred. However, Love failed to acknowledge Armanios' denial that he requested Dr. Huang's resignation on March 1, 2024, and disregarded contradicting witness statements that undermined the credibility of the investigation. The investigation included testimony from Caucasian female faculty members, while no Asian female faculty members were interviewed.

36.     On August 30, 2024, Dr. Huang filed a second discrimination and retaliation complaint against Love with the University's EOS office, alleging that the investigation process was biased.

37.     On the same day, Dr. Huang filed a Title IX complaint against Armanios and other colleagues who she believes have provided false or coached statements to the investigators.

38.     On October 2, 2024, EOS Director and Title IX Coordinator Michelle Willbanks upheld the investigator's determination of non-discrimination, despite clear evidence of flaws in the investigation process. Defendant's counsel claimed Dr. Huang's alleged refusal to improve her working relationship with faculty as the reason for her termination. Counsel also asserted that faculty complaints were legitimate concerns, even in the absence of any formal investigation into those complaints.

39.     On October 8, 2024, Plaintiff received correspondence from the University's Title IX office alerting her that Bowling had filed a retaliatory discrimination complaint against her for calling his witness statement in her EOS investigation "dishonest" and "unethical."

40.     On December 13, 2024, College of Engineering Dean Peter Crouch announced the selection of Subbarao as the interim department chair. Dr. Huang complained to Willbanks about the perception of discrimination and retaliation without an open selection process.

41. On December 18, 2024, Dr. Huang complained to Armanios about the overrepresentation of U.S.- born faculty on curriculum committees and the underrepresentation of foreign-born female faculty members. Rather than substantively address the complaint, Armanios forwarded her email to the entire department and publicly dismissed her concerns. Huang subsequently reported Armanios' retaliatory actions to Willbanks.

42. On January 2, 2025, Willbanks incredulously determined Dr. Huang had engaged in retaliation against Bowling.

43. Throughout her employment Dr. Huang's colleagues continually undermined and disregarded her position. Armanios chiefly endorsed and fostered an environment that diminished her authority. Despite Dr. Huang's attempts to reconcile her colleagues' complaints, the treatment she continued to receive was rooted in her gender while consequentially displaying animus towards her race and national origin.

44. Based on the foregoing, Defendant discriminated against Dr. Huang based on race, gender, and national origin. Defendant treated Dr. Huang differently compared to similarly situated employees with respect to their terms and conditions of employment. These actions of discrimination and retaliation substantially interfered with Dr. Huang's employment. As a result of Defendant's unlawful discriminatory and retaliatory practices, Dr. Huang suffered significant financial ramifications, humiliation, outrage, and mental anguish, for which Dr. Huang claims compensatory damages.

### FIRST CAUSE OF ACTION AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e)

45. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

46. Defendant's discrimination concerned activities protected by Title VII of the Civil Rights Act of 1964, Section 2000e-2.

47. Title VII of the Civil Rights Act of 1964, Section 2000e-2, Section 703 states: "It shall be an unlawful employment practice for any employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

48. Plaintiff is a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964, Section 2000e-2, namely, Plaintiff is a female who was born in China and identifies as Asian.

49. As outlined herein, Defendant and/or its agents intended to discriminate against Plaintiff on the basis of her race, sex, and national origin by subjecting her to disparate treatment in the terms and conditions of her employment as compared to similarly situated colleagues outside of her protected class. Defendant subjected Plaintiff to disparate treatment by, among other things: continually undermining her authority; removing her from leadership positions and committees; assigning her more work than her similarly situated colleagues; denying Plaintiff promotional opportunities that it afforded to similarly situated employees outside her protected class; and failing to address and/or investigate Plaintiff's multiple discrimination complaints while pursuing an investigation into complaints made against Plaintiff by employees outside her protected class.

50. Defendant and/or its agents subjected Plaintiff to adverse employment action by, among other things: continually undermining her authority; assigning her more work than her similarly situated colleagues; denying Plaintiff promotional opportunities that it afforded to similarly situated employees outside her protected class; and failing to address and/or investigate

Plaintiff's multiple discrimination complaints while pursuing an investigation into complaints made against Plaintiff by employees outside her protected class.

51. As a direct and proximate result of Defendant's unlawful conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-3, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages and other relief.

52. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-2, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**SECOND CAUSE OF ACTION AGAINST DEFENDANT**
**(DISCRIMINATION IN VIOLATION OF Tex. Lab. Code § 21.051(1))**

53. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

54. Defendant's discrimination concerned activities protected by Tex. Lab. Code § 21.051(1).

55. Tex. Lab. Code § 21.051(1) provides, in relevant part: "An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, …the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment.

56. Plaintiff a member of a protected class pursuant to Tex. Lab. Code § 21.051(1), namely, Plaintiff is a female who was born in China and identifies as Asian.

57. As outlined herein, Defendant and/or its agents intended to discriminate against Plaintiff on the basis of her race, sex and national origin by subjecting her to disparate treatment in the terms and conditions of her employment as compared to similarly situated colleagues outside her protected class. Defendant subjected Plaintiff to disparate treatment by, among other things: continually undermining her authority; removing her from leadership positions and committees; assigning her more work than her similarly situated colleagues; denying Plaintiff promotional opportunities that it afforded to similarly situated employees outside her protected class; and failing to address and/or investigate Plaintiff's multiple discrimination complaints while pursuing an investigation into complaints made against Plaintiff by employees outside her protected class.

58. Defendant and/or its agents subjected Plaintiff to adverse employment action by, among other things: continually undermining her authority; removing her from leadership positions and committees; assigning her more work than her similarly situated colleagues; denying Plaintiff promotional opportunities that it afforded to similarly situated employees outside her protected class; and failing to address and/or investigate Plaintiff's multiple discrimination complaints while pursuing an investigation into complaints made against Plaintiff by male employees outside her protected class.

59. As a direct and proximate result of Defendant's unlawful conduct in violation of Tex. Lab. Code § 21.051(1), Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages and other relief.

60. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Tex. Lab. Code § 21.051(1), Plaintiff suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**THIRD CAUSE OF ACTION AGAINST DEFENDANT**
**(RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e)**

61. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

62. Title VII prohibits discrimination and retaliation.

63. Title VII of the Civil Rights Act of 1964, Section 2000e-3(a) states: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

64. Defendant's employment practices as alleged at length herein constitute an impermissible act of retaliation in violation of Title VII. The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

65. Plaintiff engaged in protected activity on multiple occasions throughout 2022 to the present by complaining about the disparate treatment to which she was subjected as compared to her similarly situated counterparts outside her protected class and/or opposing Defendant's unlawful employment practices.

66. Defendant was aware of Plaintiff's engagements in protected activity as Plaintiff complained directly to her supervisors and Defendant's EOS office.

67. As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff by, among other things: continually undermining her authority; removing her from leadership positions and committees;  assigning her more work than her similarly situated colleagues; denying Plaintiff promotional opportunities that it afforded to similarly situated employees outside her protected class; and failing to address and/or investigate Plaintiff's multiple discrimination complaints while pursuing an investigation into complaints made against Plaintiff by male employees outside her protected class.

68. Defendant took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

69. As a direct and proximate result of Defendant's unlawful conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-3, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief.

70. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-3, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## FOURTH CAUSE OF ACTION AGAINST DEFENDANT
### (RETALIATION IN VIOLATION OF TEX. LAB. CODE § 21.055)

71. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

72. Tex. Lab. Code § 21.055 prohibits retaliation.

73. Tex. Lab. Code § 21.055 provides, in relevant part: "An employer…commits an unlawful employment practice if the employer…discriminates against a person who, under this chapter: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing."

74. Defendant's employment practices as alleged at length herein constitute an impermissible act of retaliation in violation of Tex. Lab. Code § 21.055. The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

75. Plaintiff engaged in protected activity on multiple occasions throughout 2022 to the present by complaining about the disparate treatment to which she was subjected as compared to her similarly situated counterparts outside her protected class and/or opposing Defendant's unlawful employment practices.

76. Defendant was aware of Plaintiff's engagements in protected activity as Plaintiff complained directly to her supervisors and Defendant's EOS office.

77. As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff by, among other things: continually undermining her authority; removing her from leadership positions and committees;  assigning her more work

than her similarly situated colleagues; denying Plaintiff promotional opportunities that it afforded to similarly situated employees outside her protected class; and failing to address and/or investigate Plaintiff's multiple discrimination complaints while pursuing an investigation into complaints made against Plaintiff by male employees outside her protected class.

78. Defendant took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

79. As a direct and proximate result of Defendant's unlawful conduct in violation of Tex. Lab. Code § 21.055, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages and other relief.

80. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Tex. Lab. Code § 21.055, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**WHEREFORE**, Plaintiff respectfully demands judgment as follows:

A. A declaratory judgment that actions, conduct, and practices of Defendant complained of herein violate the laws of the United States and the State of Texas;

B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct.

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff all non-monetary and/or compensatory harm, including but not

limited to, compensation for mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress; and

  E. An award of damages for any and all other monetary/non-monetary losses suffered by Plaintiff in an amount to be determined at trial;

  F. An award of punitive damages in an amount to be determined at trial;

  G. The costs and disbursements of this action; and

  H. Such other and further relief as this Court may deem just, proper, and equitable.

Dated: February 25, 2025

Respectfully submitted,

**CHERRY JOHNSON SIEGMUND JAMES, PLLC**

BY: /s/ *Mark D. Siegmund*
**MARK D. SIEGMUND**
State Bar No. 24117055
**WILLIAM D. ELLERMAN**
State Bar No. 24007151
8140 Walnut Hill Lane, Suite 830
Dallas, Texas 75231
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
msiegmund@cjsjlaw.com
wellerman@cjsjlaw.com

**WHITE, ROSE, & HILFERTY, P.C.**

BY: */s/ Tuba J. Farooqui*
**MICHAEL P. HILFERTY**
NYS Bar No. 4719498 (*Pro Hac Vice to be filed*)
**TUBA J. FAROOQUI**
NYS Bar No. 6101356 (*Pro Hac Vice to be filed*)
*Attorneys For Plaintiff*
757 Third Avenue, 20th Floor
New York, NY 10017
Telephone: (646) 452-8091
Facsimile: (646) 690-8897
mph@nycjobattorney.com
tfarooqui@nycjobattorney.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| HAIYING HUANG,<br><br>    Plaintiff,<br><br>v.<br><br>UNIVERSITY OF TEXAS ARLINGTON,<br><br>    Defendant. | Civil Action No. 4:25-cv-00181<br><br>**VERIFICATION** |

**PLAINTIFF HAIYING HUANG**, pursuant to the provisions of 28 U.S.C. 1746, declares the following under penalty of perjury that the foregoing is true and correct:

1. I am the Plaintiff in the above-captioned matter.

2. I have read the foregoing Complaint and know the content thereof, that the same is of my own knowledge except as to the matters therein stated upon information and belief; and that as to those matters, I believe the same to be true.

Executed: <u>Arlington</u>, Texas
           February <u>25</u>, 2025

_____
HAIYING HUANG