**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| HAIYING HUANG,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF TEXAS ARLINGTON,<br><br>Defendant. | Civil Action No. 4:25-cv-00181-P |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

Michael P. Hilferty
Tuba J. Farooqui
White, Rose & Hilferty, P.C.
757 Third Avenue, 20th Floor
New York, NY 10017
Tel: (917) 633 5760
Tel: (917) 565-8763

Mark D. Siegmund
William D. Ellerman
Cherry Johnson Siegmund James, PLLC
8140 Walnut Hill Lane, Suite 830
Dallas, Texas 75231
Telephone: (254) 732-2242
Facsimile: (866) 627-3509

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** .................... **6**

**STATEMENT OF FACTS** .................... **6**

**STANDARD OF REVIEW** .................... **14**

**ARGUMENT** .................... **15**

A. DR. HUANG'S ALLEGED INCIDENTS OF DISCRIMINATION AND RETALIATION THAT OCCURRED BEFORE FEBRUARY 1, 2024, ARE NOT TIME-BARRED. .................... 15

*1. Acts of Discrimination and Retaliation that Occurred Before February 1, 2024, are Timely Under the "Continuing Violation Doctrine."* .................... 15

*2. Acts of Discrimination and Retaliation that Occurred Before February 1, 2024, Constitute as Hostile Work Environment.* .................... 20

B. DR. HUANG PLEADED SUFFICIENT FACTS TO ESTABLISH ADVERSE EMPLOYMENT ACTIONS. 22

*1. Plaintiff Provides Evidence of Prima Facie Discrimination.* .................... 22

*2. Dr. Huang Has Provided Evidence of Similarly Situated Comparators.* .................... 26

C. DR. HUANG ESTABLISHES A PLAUSIBLE CLAIM OF RETALIATION. .................... 27

*1. Plaintiff Establishes a Prima Facie Case of Retaliation.* .................... 28

*2. Defendant's Proffered Reason for Dr. Haung's Demotion is Pretextual.* .................... *28*

**CONCLUSION** .................... **31**

CASES

*Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422 (5th Cir. 2017) .................................................. 26

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................ 14, 15

*Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473 (5th Cir. 2008) ......................................... 18, 24

*Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983) ............................... 15

*Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858 (5th Cir.1993) ........................................ 23

*Brown v. Wichita Cnty.*, No. 7:10-CV-00091-O, (N.D. Tex. Oct. 11, 2011) ............................... 14

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) .............................................................. 18

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ................................................ 24

*Casiano v. AT&T Corp.*, 213 F.3d 278 (5th Cir. 2000) ............................................................... 18

*Celotex Corp. v. Catrett,* 477 U.S. 317(1986 ) ........................................................................... 14

*Clark v. UPS*, 400 F.3d 341 (6th Cir. 2005) ........................................................................ 18, 19

*Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899 (5th Cir. 2000) .................................... 14

*Crawford v. Metro. Gov't of Nashville & Davidson County*, 555 U.S. 271 (2009) ...................... 27

*Doe v. Edgewood Indep. Sch. Dist.,* 964 F.3d 351 (5th Cir. 2020) ............................................. 14

*EEOC v. Rock-Tenn Servs. Co.*, 901 F. Supp. 2d 810 (N.D. Tex. 2012) ...................................... 18

*Evans v. City of Houston*, 246 F.3d 344 (5th Cir. 2001) ..................................................... 26, 29

*Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) ................................................. 18

*Frank v. Xerox Corp.*, 347 F.3d 130 (5th Cir. 2003) ................................................................... 15

*Hamilton v. Dallas County*, 79 F.4th 494, 506 (5th Cir. 2023) .................................................. 24

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) .................................................................. 21

*Heath v. Bd. of Supervisors for Agric. & Mech. Coll.*, 850 F.3d 731 (5th Cir. 2017) .................. 21

*Huckabay v. Moore*, 142 F.3d 233 (5th Cir. 1998) ..................................................................... 20

*January v. City of Huntsville*, 74 F.4th 646 (5th Cir. 2023) .......... 27

*Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392 (5th Cir. 2021) .......... 21

*Jones v. United States,* 936 F.3d 318, 321 (5th Cir. 2019) .......... 14

*Laxton v. Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003) .......... 24

*Mack v. John L. Wortham & Son, L.P.*, 541 Fed. Appx. 348, 355-56 (5th Cir. 2013) .......... 15

*McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007) .......... 23

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986) .......... 21

*Messer v. Meno*, 130 F.3d 130 (5th Cir. 1997) .......... 15

*Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512 (5th Cir. 2001) .......... 21

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) .......... 20

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) .......... 22

*Outley v. Luke & Assocs., Inc.*, 840 F.3d 212 (5th Cir. 2016) .......... 23, 27

*Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) ... 27

*Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) .......... 24

*Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000) .......... 24

*Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583–84 (5th Cir. 2020) .......... 21

*Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999) .......... 30

*Singleton v. YMCA of Greater Houston*, No. H-17-2903, (S.D. Tex. June 26, 2019) .......... 29

*Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337 (5th Cir. 2007) .......... 27

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) .......... 30

*Walker v. Sears, Roebuck & Co.*, 853 F.2d 355 (5th Cir. 1988) .......... 15

*Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212 (5th Cir. 2001) .......... 22

*Wheeler v. BL Dev. Corp.*, 415 F.3d 399 (5th Cir. 2005) .......... 23

*Williamson v. City of Houston*, 148 F.3d 462 (5th Cir. 1998) ...................................................... 21

**STATUTES**

Title VII of the Civil Rights Act of 1964

**RULES**

Fed. R. Civ. P §56 (a)

## PRELIMINARY STATEMENT

Plaintiff Haying Huang respectfully submits this memorandum of law in opposition to Defendant University of Texas Arlington's ("Defendant" and/or "UTA") motion for summary judgment dismissing Plaintiff's of gender, race and national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). As set forth herein, Plaintiff: (1) established that harassment was severe and pervasive to constitute a continuing violation and hostile work environment; (2) established *prima facie* cases of gender, race, and national origin discrimination and retaliation; (3) established that Defendant's purported legitimate non-discriminatory and retaliatory reasons for its actions were pretextual; and (4) there are genuine issues of material facts surrounding Plaintiff's discrimination and retaliation claims. Plaintiff respectfully requests that this Court deny Defendant's motion in its entirety.

## STATEMENT OF FACTS

Dr. Huang is a female who was born in China and identifies as Asian. *See* Huang Dep. 16:6-6 (*See* Exhibit D-1 at DEF_MSJ_APPX000006). During her employment, Defendant subjected Dr. Huang to unlawful discrimination based upon her race, sex, and national origin, as well as retaliation following her engagements in protected activity. *See* DEF_MSJ_APPX000297-000309, 000380-000384.

On September 1, 2022, Dr. Huang became Associate Chair of the Mechanical and Aerospace Engineering Department. *See* Ex. D-9 at DEF_MSJ_APPX000405-000406. On September 7, 2022, Dr. Huang chaired a meeting of the Mechanics Technical Disciplinary Committee (TDC). *See* Plaintiff's Appendix in Opposition to Defendant's Motion for Summary Judgement ("PLT_MSJ_APP") at PLT_MSJ_APP_0004-0005. Associate Professor Stefan Dancila, a white male from Romania, repeatedly interrupted her. *Id*. After the meeting, Dr. Huang

reported Dancila's behavior to Department Chair Erian Armanios. *See* PLT_MSJ_APP_0008. Armanios provided a set of meeting rules for Dr. Huang to discuss at the next TDC meeting. *See* PLT_MSJ_APP_0010-0011. His suggestions reflected Dancila's demand that the TDC meetings should be conducted following Robert's Rules of Order. *Id*.

Following her escalation, Dancila persistently harassed Dr. Huang in emails. *See* PLT_MSJ_APP_0013 and Ex. D-29 at DEF_MSJ_APPX001990-001991. For example, following meetings on September 14, 2022, in which she introduced proposed committee rules, Dancila emailed faculty publicly ridiculing Dr. Huang and referencing Dr. Huang's upbringing in Communist China. *See* Ex. D-29 at DEF_MSJ_APPX001990-001991. When Dr. Huang attempted to conduct another committee meeting, Dancila responded, "You cannot possibly be serious," and questioned, "What is the mad rush about?" Dr. Huang again complained to Armanios. *See* PLT_MSJ_APP_0013. Armanios asked fellow professor Andrew Makeev to speak with Dancila, but no further action was taken. *See* Ex. D-35 at DEF_MSJ_APPX002048.

On or around February 21, 2023, three male Graduate Advisors—Kamesh Subbarao, Seiichi Nomura, and Ratan Kumar—complained to Armanios that Dr. Huang did not consult them for the PreApp project, which aimed to improve PhD recruitment. *See* Ex. D-35 at DEF_MSJ_APPX002090-002091. Dr. Huang explained that she solicited input from these advisors and that Dr. Nomura was a member of the PreApp selection committee. *See* Huang Dep. 96:10-23 (*See* Exhibit D-1 at DEF_MSJ_APPX000026). Armanios nevertheless instructed her to meet with the advisors again and countermanded decisions Dr. Huang had previously made regarding the project. *See* Ex. D-49 at DEF_MSJ_APPX002100-002102.

On March 1, 2023, Dr. Huang met with Subbarao, Nomura, Kumar, and undergraduate advisor Nancy Michael, a white American female. *See* Ex. D-35 at DEF_MSJ_APPX002022.

Within moments, Kumar and the other advisors interrupted and interrogated her. *Id.* Armanios' favorable treatment of the advisors after their unfounded complaint encouraged them to challenge her authority. *Id.*

On March 31, 2023, Dr. Huang attended a meeting of the Mechanical and Aerospace Engineering Committee on Academic Program (MAECAP) that Dennis called to address issues with the TDC course scheduling. *See* Dennis Dep. 19:16-20:7 (*See* Exhibit D-104 at DEF_MSJ_APPX002330). After little progress had been made after a half hour, Dr. Huang provided her input. *See* Dennis Dep. 23:1-6 (*See* Exhibit D-104 at DEF_MSJ_APPX002331). She also asked Michael to halt side conversations as they made it difficult to hear Dennis speak. *Id*. However, Dennis subsequently demanded that Armanios ask Dr. Huang to step down as TDC chair and remove her from MAECAP. *See* Dennis Dep. 23:1-24:4 (*See* Exhibit D-104 at DEF_MSJ_APPX002331). Armanios failed to address Dennis' underlying discriminatory conduct. *Id*.

On April 10, 2023, Armanios removed Dr. Huang as the TDC chair. *See* Ex. D-66 at DEF_MSJ_APPX002186-002187. On June 7, 2023, Armanios reluctantly agreed to switch Dr. Huang from the Aerospace Engineering Committee on Academic Program (AECAP) to Mechanical Engineering Committee on Academic Program (MECAP). *See* Ex. D-67 at DEF_MSJ_APPX002188-002189.

In June 2023, Dr. Robert Taylor, the new D&M TDC chair, submitted a course schedule to Dr. Huang that did not follow the approved guidelines. *See* Ex. D-94 at DEF_MSJ_APPX002288-002295. Dr. Huang attempted to discuss the schedule with Taylor, who refused to comply with guidelines. *Id*. When it escalated, Armanios incredibly criticized Dr. Huang's methods of dealing

with faculty members. *See* Huang Dep. 143:17-144:8 (*See* Exhibit D-1 at DEF_MSJ_APPX000038).

In July 2023, Armanios excused Nomura and Kumar from assigning graduate teaching assistants (GTAs). *See* Huang Dep. 145:9-148:21 (*See* Exhibit D-1 at DEF_MSJ_APPX000038-000039), Exhibit D-35 at DEF_MSJ_APPX002026, and Exhibit D-82-83 at DEF_MSJ_APPX002242-009199. Armanios reassigned this task to her, over her suggestion that the graduate advisors were better suited for the task. Armanios interrupted her and ordered, “You will do it.” *Id*.

On August 9, 2023, the graduate team proposed a deadline for switching students from GTA to graduate research assistant (GRA) appointments, which Dr. Huang oversaw. *See* Exhibit D-85 at DEF_MSJ_APPX002257-002259. Dr. Huang requested Subbarao explain a GTA-to-GRA switch he submitted past the deadline. *See* Exhibit D-37 at DEF_MSJ_APPX002061-002065. Subbarao refused to respond and escalated the dispute to Armanios. *Id*. Huang requested a meeting with Armanios to mediate, which resulted in a heated exchange in which Subbarao accused Dr. Huang of arbitrarily “digging in her heels.” *See* PLT_MSJ_APP_0015 and Exhibit D-35 at DEF_MSJ_APPX002028. Subbarao apologized in writing for his outburst, Armanios praised him and again undermined Dr. Huang’s authority by granting Subbarao’s exception. *Id*.

On August 29, 2023, Armanios dismissed Dr. Huang’s reported increased PhD enrollment due to the PreApp project in an email to graduate and undergraduate advisors. *See* PLT_MSJ_APP_0016-0017.

On October 24, 2023, Dr. Huang consulted with Armanios for his input regarding a struggling student. *See* PLT_MSJ_APP_0018-0019. Prior to contacting him, she developed a plan to address the situation with the student’s graduate advisor. *Id*. Armanios chastised Dr. Huang in

an e-mail that included the graduate advisor stating, "This abrupt decision is of great concern regarding [the student]'s wellbeing" and "having plans for him at this stage is premature and unwise, at best." *Id*.

Despite this near constant harassment from her colleagues and supervisors, Dr. Huang received the highest possible performance rating in her December 2023 review, "exceeding expectations." *See* PLT_MSJ_APP_0020-0022.

In February 2024, Dr. Huang organized doctoral "core" faculty meetings on the graduate curriculum. *See* PLT_MSJ_APP_0023. Over the course of these meetings, both Dancila and Michael openly harassed Dr. Huang. *See* Huang Dep. 83:6-85:2 (*See* Exhibit D-1 at DEF_MSJ_APPX000023), Exhibit D-35 at DEF_MSJ_APPX002028, and Dennis Dep. 38:4-14 (*See* Exhibit D-104 at DEF_MSJ_APPX002335). In one meeting, Dancila interrupted Dr. Huang more than a dozen times and had an outburst when she tried to adjourn it. *Id*.

On February 19, 2024, Dr. Huang raised to Armanios the disproportionate impact on female faculty from increased teaching loads on assistant professors. *See* Exhibit D-40 at DEF_MSJ_APPX002073-002075 and Armanios Dep. 109:10-110:15 (*See* Exhibit D-2 at DEF_MSJ_APPX000119-000120). Armanios accused her of overstepping by sharing her perspective on this issue. *See* Armanios Dep. 86:20-92:14 (*See* Exhibit D-2 at DEF_MSJ_APPX000114-000115). He directed Dr. Huang to direct all future issues with assistant professors to him, noting that if they were unhappy, "they can move to other departments." *Id*. and Exhibit D-35 at DEF_MSJ_APPX002032.

Shortly after this exchange Armanios removed Dr. Huang from participation in a key department committee. *See* Exhibit D-13 at DEF_MSJ_APPX000426-000428. He also ordered Dr. Huang to stop discussing the course requirements at the graduate curriculum review meeting citing

complaints from faculty, despite previously approving such discussions. *See* Armanios Dep. 93:17-95:6, 98:22-99:2 (*See* Exhibit D-2 at DEF_MSJ_APPX000115-000117) and D-35 at DEF_MSJ_APPX002033. Dr. Huang expressed that she felt unsupported by him and questioned why he trusted others' input over her. *See* Armanios Dep. 99:3-100:3 (*See* Exhibit D-2 at DEF_MSJ_APPX000117).

On February 28, 2024, Dr. Huang brought a conflict resolution framework summary to a meeting with Armanios. *See* PLT_MSJ_APP_0024. However, he refused to engage in this process. *See* Huang Dep. 37:6-17 (*See* Exhibit D-1 at DEF_MSJ_APPX000011) and Armanios Dep. 102:7-23 (*See* Exhibit D-2 at DEF_MSJ_APPX000118). Instead, He accused her of being a poor communicator, mistreating faculty, and receiving frequent complaints about her. *See* Huang Dep. 44:4-20 (*See* Exhibit D-1 at DEF_MSJ_APPX000013). When Dr. Huang asked for details about the complaints, Armanios responded only with vague generalizations. *See* Huang Dep. 41:2-21 (*See* Exhibit D-1 at DEF_MSJ_APPX000012). When she cited evidence of unequal treatment of female faculty in the department, Armanios dismissed her concerns. *See* Huang Dep. 42:2-21 (*See* Exhibit D-1 at DEF_MSJ_APPX000013) and Armanios Dep. 105:19-106:16 (*See* Exhibit D-2 at DEF_MSJ_APPX000118-000119).

On March 1, 2024, Armanios indicated that he intended to part ways with her. *See* Armanios Dep. 118:16-119:1 (*See* Exhibit D-2 at DEF_MSJ_APPX000122). He blamed all Department woes upon her, claimed her inexperience was "tearing the department apart." *See* Armanios Dep. 122:17-123:1 (*See* Exhibit D-2 at DEF_MSJ_APPX000123). Dr. Huang replied that she was not surprised he was now pushing her off the "glass cliff." *See* Exhibit D-35 at DEF_MSJ_APPX002036, 002039.

On March 14, 2024, Dr. Huang attempted to discuss a PhD recruitment announcement with Armanios. *See* Exhibit D-8 at DEF_MSJ_APPX000400-000403. When Armanios stated that they needed to meet in-person to address their prior meeting; Dr. Huang requested to discuss via email to allow each of them "the time to reflect and respond in a rational way." *See* Exhibit D-8 at DEF_MSJ_APPX0000401. Armanios replied that her suggestion was "inappropriate." *See* Exhibit D-8 at DEF_MSJ_APPX000401. Without further notice or discussion, he terminated Dr. Huang from the Associate Chair position without any explanation on March 21, 2024. *Id*.

On April 26, 2024, Armanios announced the replacement of Dr. Huang with Dennis, a white American male, and to whom Armanios previously speculated Dr. Huang was a "minority" hire. *See* Huang Dep. 86:8-88:2 (*See* Exhibit D-1 at DEF_MSJ_APPX000024), and Exhibit D-43 at DEF_MSJ_APPX002082-002084.

On May 21, 2024, Dr. Huang filed an internal discrimination and retaliation complaint against Armanios with the University's Equal Opportunity Services (EOS) Office. *See* PLT_MSJ_APP_0025-0026.

On August 22, 2024, EOS Investigator Amber Hannah Love, a Caucasian American female, issued a draft report concluding that no discrimination had occurred. *See* PLT_MSJ_APP_0027-0057 and Exhibit D-35 at DEF_MSJ_APPX002015-002057. However, Love failed to acknowledge Armanios' denial that he requested Dr. Huang's resignation on March 1, 2024, and disregarded contradicting witness statements that undermined the credibility of the investigation. *Id*. The investigation included testimony from Caucasian female faculty members, while no Asian female faculty members were interviewed. *Id*.

On August 30, 2024, Dr. Huang filed a second discrimination and retaliation complaint against Love with the University's EOS office, alleging that the investigation process was biased.

*See* PLT_MSJ_APP_0058-0060. On the same day, Dr. Huang filed a Title IX complaint against Armanios and other colleagues who she believes have provided false or coached statements to the investigators. *See* PLT_MSJ_APP_0061-0062.

On October 2, 2024, EOS Director and Title IX Coordinator Michelle Willbanks upheld the investigator's determination of non-discrimination, despite clear evidence of flaws in the investigation process. *See* PLT_MSJ_APP_0063. Defendant's counsel claimed Dr. Huang's alleged refusal to improve her working relationship with faculty as the reason for her termination. *Id*. Counsel also asserted that faculty complaints were legitimate concerns, even in the absence of any formal investigation into those complaints. *Id*. On October 8, 2024, Plaintiff received correspondence from the University's Title IX office alerting her that Bowling had filed a retaliatory discrimination complaint against her for calling his witness statement in her EOS investigation "dishonest" and "unethical." *Id.* and PLT_MSJ_APP_0064, Ex. D-25 at DEF_MSJ_APPX001395-001401.

On December 13, 2024, College of Engineering Dean Peter Crouch announced the selection of Subbarao as the interim department chair. *See* PLT_MSJ_APP_00106. Dr. Huang complained to Willbanks about the perception of discrimination and retaliation without an open selection process. *Id*.

On December 18, 2024, Dr. Huang complained to Armanios about the overrepresentation of U.S.-born faculty on curriculum committees and the underrepresentation of foreign-born female faculty members. *See* PLT_MSJ_APP_00109. Rather than substantively address the complaint, Armanios forwarded her email to the entire department and publicly dismissed her concerns. *See* PLT_MSJ_APP_00110. Huang subsequently reported Armanios' retaliatory actions to Willbanks. *See* PLT_MSJ_APP_00107.

On January 2, 2025, Defendant incredulously determined Dr. Huang had engaged in retaliation against Bowling. *See* D-25 at DEF_MSJ_APPX001406-001407.

## STANDARD OF REVIEW

Summary judgment is only available when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)."A genuine dispute of material fact exists if a reasonable jury could enter a verdict for the non-moving party." *Doe v. Edgewood Indep. Sch. Dist.,* 964 F.3d 351, 358 (5th Cir. 2020). The moving party "bears the initial responsibility of demonstrating the absence of a genuine issue of material fact," *Jones v. United States,* 936 F.3d 318, 321 (5th Cir. 2019) (citing Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)), and "identifying those portions of [the record] which it believes demonstrate [that] absence." *Celotex Corp.,* 477 U.S. at 323.

A fact is material if it "might affect the outcome of the suit under the governing law," while a dispute about that fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In employment law, "[t]he ultimate determination, in every case, is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination." *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000). Accordingly, evidence must be of sufficient "nature, extent, and quality" to permit a jury to reasonably infer discrimination. *Id.* at 903.

Consistent with these principles, "[t]he non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor." *Brown v. Wichita Cnty.*, No. 7:10-CV-00091-O, 2011 U.S. Dist. LEXIS 171610, at 10 (N.D. Tex. Oct. 11, 2011) (citing *Anderson*, 477 U.S. at 249). In making that determination, however, "[t]he Court must decide all reasonable doubts

and inferences in the light most favorable to the non-movant" and "cannot make a credibility determination in light of conflicting evidence or competing inferences." *Id.*, at 10–11 (citing *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988); *Anderson*, 477 U.S. at 255). Thus, where there is "some support for the disputed allegations" such that "reasonable minds could differ as to the import of the evidence," summary judgment must be denied. *Id.* at 11 (quoting *Anderson*, 477 U.S. at 250). As outlined herein, Defendant has failed to satisfy this high standard.

## ARGUMENT

### A. Dr. Huang's Alleged Incidents of Discrimination and Retaliation That Occurred Before February 1, 2024, Are Not Time-Barred.

Plaintiff's allegations of discrimination and retaliation that occurred before February 1, 2024, are timely and are not time-barred under Title VII.

#### 1. Acts of Discrimination and Retaliation that Occurred Before February 1, 2024, are Timely Under the "Continuing Violation Doctrine."

The continuing violation doctrine permits a plaintiff to pursue otherwise time-barred claims if they are part of an ongoing pattern of discrimination. A claim is timely if it involves a series of related acts, at least one of which falls within the statutory period. *See, Messer v. Meno*, 130 F.3d 130, 134-35 (5th Cir. 1997); *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). The court further described three factors to determine whether claims constitute a continuing violation: "(1) subject matter, (2) frequency, and (3) degree of permanence. If the alleged acts involve the same type of discrimination, occur frequently, and indicate to the employee that the continued existence of adverse consequences is likely, it is probable that they rise to the level of continuing violations." *Mack v. John L. Wortham & Son, L.P.*, 541 Fed. Appx. 348, 355-56 (5th Cir. 2013) (citing *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983)).

In this instant matter, Dr. Huang has provided sufficient evidence to demonstrate that the acts of discrimination and retaliation occurring prior to February 1, 2024, constitute a continuing violation because they form part of an ongoing pattern of related conduct rather than isolated or discrete events.

Beginning at the outset of her tenure as Associate Chair on September 1, 2022, Dr. Huang experienced repeated hostility and aggression from male non-Chinese faculty members when she attempted to exercise her authority in that role. When Dr. Huang sought to implement revised Mechanics TDC Rules to improve the effectiveness of faculty meetings, Stefan Dancila publicly ridiculed her, undermined her authority, and explicitly invoked her national origin to diminish her role. *See* PLT_MSJ_APP_0002-0014 and Ex. D-28-29 at DEF_MSJ_APPX001987-001992. Rather than intervene, Armanios disregarded these complaints, reinforced Dancila's conduct by incorporating his hostile feedback, and, only after Dr. Huang raised her concerns, delegated the issue to Professor Andrew Makeev instead of taking corrective action himself. *Id*.

This pattern continued throughout 2022 and 2023 as Dr. Huang worked with male non-Chinese graduate advisors to streamline the assignment of graduate teaching assistants. Instead of complying with Dr. Huang's authority and ensuring assignments were finalized before the start of the semester, the graduate advisors coordinated to shift the task to Dr. Huang. *See* Exhibits D-44-45 at DEF_MSJ_APPX002085-002089, D-82-83 at DEF_MSJ_APPX002242-002247, and D-91 at DEF_MSJ_APPX002278-00280. At the same time, they resisted and ridiculed her efforts to implement a more uniform and efficient process. When Dr. Huang solicited input from the graduate advisors regarding the PreApp project, graduate advisor Subbarao informed her that admissions were not their responsibility and suggested that she establish a PreApp selection committee, to which Dr. Huang invited graduate advisor Nomura as a member. *See* Huang Dep. 96:15-98:11 (*See*

Exhibit D-1 at DEF_MSJ_APPX000026-000027). When the PreApp project was ready to launch, the graduate advisors coordinated and falsely complained to Armanios that Dr. Huang had not sought their input. *See* Exhibits D-46 at DEF_MSJ_APPX002090-002092 and D-90 at DEF_MSJ_APPX002275-002277. Armanios disregarded the discriminatory nature of the conduct and deferred to the criticism directed at Dr. Huang. *See* Exhibit D-49 at DEF_MSJ_APPX002100-2102

The same conduct persisted throughout 2023 in connection with course scheduling and Dr. Huang's participation in MAECAP meetings. *See* Dennis Dep. 23:1-24:4 (*See* Exhibit D-104 at DEF_MSJ_APPX002331). Bowling's treatment of Dr. Huang further illustrates the ongoing pattern of undermining her authority. Although Dr. Huang was a voting member of MECAP, Bowling agreed to allow her to participate only as a non-voting member because he expected her to merely present and leave meetings. *See* Bowling Dep. 26:15–31:8 (*See* Ex. D-105 at DEF_MSJ_APPX002373–002374). Consistent with this limitation, Dennis advised Bowling that Dr. Huang, as a non-voting member, was "supposed to be just sitting there observing." *See* Bowling Dep. 44:23–45:9 (*See* Exhibit D-105 at DEF_MSJ_APPX002336). Rather than permit Dr. Huang to exercise the authority inherent in her role, Bowling repeatedly restricted her participation and diminished her influence within the committee. At the same time, Bowling escalated his objections to Armanios, frequently complaining, without evidentiary support, that Dr. Huang was attempting to undermine his authority by working with other committee members. See Bowling Dep. 50:21–51:5 (*See* Ex. D-104 at DEF_MSJ_APPX002379). This conduct reflects a broader pattern in which faculty members refused to recognize Dr. Huang's authority and instead circumvented her by directing complaints to Armanios.

At no point did Armanios, the only individual with authority over Dr. Huang, take corrective action. *See* Armanios Dep. 30:20-24 (*See* Exhibit D-2 at DEF_MSJ_APPX000100). Instead, Armanios repeatedly dismissed or validated the complaints against Dr. Huang, allowing the discriminatory and retaliatory conduct to continue unabated. *See* Huang Dep. 41:9-43:6 and 43:23-44:20 (*See* Exhibit D-1 at DEF_MSJ_APPX000012-000013), and Armanios Dep. 108:8-113:18 (*See* Exhibit D-2 at DEF_MSJ_APPX000119-000120). The constant undermining, ridicule, public humiliation, and false accusations that Dr. Huang endured were not isolated occurrences, but part of a continuous pattern of conduct that Armanios enabled by failing to report or prevent the actions of male non-Chinese faculty members throughout Dr. Huang's tenure as Associate Chair. *See* Huang Dep. 179:2–23 (*See* Exhibit D-1 at DEF_MSJ_APPX000047).

To establish the *Ellerth/Faragher* affirmative defense in cases involving harassment by supervisors, an employer "must prove both elements by a preponderance of the evidence." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 483 (5th Cir. 2008) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)). To do so, Defendant must show "(1) the employer exercised reasonable care to prevent and correct promptly any harassment; and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm." *Casiano v. AT&T Corp.*, 213 F.3d 278, 284 (5th Cir. 2000) (citing *Ellerth*, 524 U.S. 742, 752 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)). Although "reasonable steps to prevent and correct harassment may include the adoption of an official policy intended to discourage and discipline incidences of harassment," "[t]he mere adoption of a policy is insufficient; the policy must also be shown to have been effective." *EEOC v. Rock-Tenn Servs. Co.*, 901 F. Supp. 2d 810, 828 (N.D. Tex. 2012) (quoting *Clark v. UPS*, 400 F.3d 341, 349 (6th Cir. 2005)). "Prong one of the affirmative defense requires

an inquiry that looks behind the face of a policy to determine whether the policy was effective in practice in reasonably preventing and correcting any harassing behavior." *Clark*, 400 F.3d at 349.

Defendant's own policy required employees to report harassment to the Equal Opportunity Services Office or to any University official, administrator, or supervisor, who must then report the incident immediately. *See* Exhibit D-58 at DEF_MSJ_APPX002140. The policy further required administrators and supervisors to report any discrimination, harassment, or retaliation that comes to their attention, regardless of whether a formal complaint is made. *Id*.

Here, the record demonstrates that Plaintiff did not "unreasonably fail to take advantage of any preventive or corrective opportunities," but in fact repeatedly raised her concerns regarding harassment to Armanios, the individual with supervisory authority over her. *See* Armanios Dep. 108:8-113:18 (*See* Exhibit D-2 at DEF_MSJ_APPX000119-000120), Exhibit D-26 at DEF_MSJ_APPX001618-001620, D-28 at DEF_MSJ_APPX001987-001988, D-40 at DEF_MSJ_APPX002073-002074, and PLT_MSJ_APP_0111. By doing so, Plaintiff utilized the very reporting mechanisms contemplated by Defendant's policy. However, rather than comply with the policy's mandatory reporting requirements, Armanios disregarded Plaintiff's complaints, reinforced the harassing conduct by incorporating hostile feedback, and failed to report or meaningfully address the discrimination and harassment. *See* Huang Dep. 105:4-7 (*See* Exhibit D-1 at DEF_MSJ_APPX000028), Exhibit D-26 at DEF_MSJ_APPX001618-001620, D-28 at DEF_MSJ_APPX001987-001988, D-40 at DEF_MSJ_APPX002073-002074, and PLT_MSJ_APP_0111. This response neither prevented nor corrected the ongoing misconduct and instead allowed it to continue. Defendant's failure to take meaningful corrective action in response to Plaintiff's complaints precludes any finding that Plaintiff acted unreasonably. Accordingly, Defendant cannot establish either prong of the *Ellerth/Faragher* defense.

In *Huckabay v. Moore*, 142 F.3d 233, 240 (5th Cir. 1998), Court found a continuing hostile work environment where the plaintiff was "constantly ribbed and harassed," subjected to "constant remarks," required to attend meetings that similarly situated employees were not required to attend, and assigned to stand in the rain while others were allowed shelter. Because the conduct was ongoing and included acts within the limitations period, the court held that the plaintiff could invoke the continuing violation doctrine. Similarly, Dr. Huang endured constant undermining, ridicule, public humiliation, and false accusations and differential treatment by non-Chinese male faculty members, which ultimately culminated in her demotion as Associate Chair. *See* PLT_MSJ_APP_0027-0057. Accordingly, because Plaintiff has demonstrated a continuous and related course of conduct that persisted into the limitations period, her claims are timely under the continuing violation doctrine, and summary judgment on this basis is not warranted.

**2. <u>Acts of Discrimination and Retaliation that Occurred Before February 1, 2024, Constitute as Hostile Work Environment.</u>**

Even if the Court finds that the acts of discrimination and retaliation do not constitute a continuing violation, Dr. Huang's claims arising before February 1, 2024, remain timely because Dr. Huang was subjected to a hostile work environment.

A hostile work environment claim involves a series of related discriminatory acts that collectively constitute a single unlawful employment practice. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). To prevail, a plaintiff must show that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Id.* at 115. Accordingly, "it does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."

*Id.* at 117. As the Fifth Circuit has further explained, "the filing clock cannot begin running with the first act, because at that point the plaintiff has no claim; nor can a claim expire as to that first act, because the full course of conduct is the actionable infringement." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583–84 (5th Cir. 2020) (quoting *Heath v. Bd. of Supervisors for Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017)).

Harassment is "severe or pervasive enough" when (1) a reasonable person in the plaintiff's position would find the conduct hostile or abusive, and (2) the plaintiff subjectively perceived it as abusive. *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399–400 (5th Cir. 2021). Courts evaluate the objective component by examining the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Importantly, "[t]he end result of the discriminatory conduct need not be an economic or tangible effect for there to be an actionable hostile work environment claim," and such impact is "merely a factor to be considered under the totality of the circumstances." *Rock-Tenn Servs. Co.*, 901 F. Supp. 2d 810, 825, (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986); *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 524 n.33 (5th Cir. 2001)).

An employer is on notice of harassment, and therefore obligated to take remedial action, when an individual with the "authority to address the harassment problem" or an "affirmative duty" to report harassment becomes aware of the conduct. *Williamson v. City of Houston*, 148 F.3d 462, 466 (5th Cir. 1998).

Here, Dr. Huang endured severe, persistent, humiliating, and targeted harassment linked to her protected characteristics. Male non-Chinese faculty members repeatedly ridiculed Dr. Huang

in public settings and consistently undermined her authority in her role as Associate Chair. *See* Huang Dep. 96:15-23 (*See* Exhibit D-1 at DEF_MSJ_APPX000026), D-29 at DEF_MSJ_APPX001990-001992, Ex. D-94 at DEF_MSJ_APPX002288-002295, and PLT_MSJ_APP_0015. This conduct occurred frequently, escalated over time, and interfered with Dr. Huang's ability to perform her duties. At the same time, Armanios failed to utilize the required reporting channels or take corrective action despite having both the authority and obligation to do so. *See* Exhibit D-58 at DEF_MSJ_APPX002140.

As the Supreme Court has emphasized, "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships," and courts must apply "common sense" and "appropriate sensitivity to social context" in determining whether conduct is "severely hostile or abusive." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998). Viewed in this context, the record demonstrates that the conduct Dr. Huang experienced was not mere workplace disagreement or "spirited" discussion. *See* Ex. D-29 at DEF_MSJ_APPX001990-001991, Dennis Dep. 23:1-24:4 (*See* Exhibit D-104 at DEF_MSJ_APPX002331), and PLT_MSJ_APP_0015. Rather, the documentary evidence reflects repeated ridicule, hostility, and systematic undermining of Dr. Huang's authority by faculty members, which a reasonable jury could find created a hostile and abusive work environment.

**B. Dr. Huang Pleaded Sufficient Facts to Establish Adverse Employment Actions.**

**1. Plaintiff Provides Evidence of *Prima Facie* Discrimination.**

Contrary to Defendant's assertion, Plaintiff's allegations do not describe *de minimis* harm. Rather, they present direct evidence of discriminatory intent. To establish a *prima facie* case of discrimination under Title VII, "A plaintiff may prove discrimination through either direct or circumstantial evidence." *See, Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001).

Direct evidence is defined as "[e]vidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Brown v. East Miss. Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir.1993). Where only circumstantial evidence is available, a plaintiff must proceed under the *McDonnell Douglas-Burdine* framework. The Fifth Circuit has held that a plaintiff establishes a *prima facie* case of discrimination by showing that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551 at 556 (5th Cir. 2007), (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005); *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016)).

In this instant matter, Dr. Huang establishes each element of her *prima facie* case. She is a Chinese female and thus a member of a protected class. She was qualified for her role as Associate Chair, as demonstrated by her 2022–2023 performance review reflecting that she exceeded expectations. *See* Huang Dep. 158:8-11 (*See* Exhibit D-1 at DEF_MSJ_APPX000042), D-23 at DEF_MSJ_APPX000488-00494, and PLT_MSJ_APP_0020-0022. Defendant subjected her to an adverse employment action by removing her from that position. Defendant then replaced her with Brian Dennis, a Caucasian male outside her protected class. *See* Exhibit D-43 at DEF_MSJ_APPX002082-002084. Defendant Subjected Plaintiff to Adverse Employment Actions.

To adequately plead an adverse employment action under Title VII, a plaintiff is not required to allege discrimination only with respect to an "ultimate employment decision." Instead, it is sufficient to allege that the employer discriminated against the plaintiff, because of a protected

characteristic, with respect to hiring, firing, compensation, or the terms, conditions, or privileges of employment. *Hamilton v. Dallas County*, 79 F.4th 494, 506 (5th Cir. 2023). Moreover, discriminatory remarks can support a discrimination claim when made by a person with influence over the employment decision. In *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012), the Fifth Circuit held that a plaintiff need only show (1) discriminatory animus and (2) that it came from a person either primarily responsible for the adverse action or with significant influence over the decisionmaker. (Citing *Laxton v. Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000)).

The Fifth Circuit has recognized that "a lateral reassignment to a position with equal pay could amount to a materially adverse action in some circumstances." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (citing *Aryain*, 534 F.3d 473, 485 (5th Cir. 2008)). However, "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006)). In assessing material adversity, the court noted that the plaintiff's reassignment "affected none of her job title, grade, hours, salary, or benefits," and that her duties remained unchanged. *Id.* at 332–33.

Here, Dr. Huang has established that Defendant subjected her to multiple adverse employment actions motivated by discriminatory animus. From the outset of her tenure as Associate Chair, male non-Chinese faculty members, including Dancila, publicly ridiculed and undermined Dr. Huang's authority, including by making discriminatory references to her national origin. *See* PLT_MSJ_APP_0002-0005 and Ex. D-29 at DEF_MSJ_APPX001990-001991. These

actions materially affected the conditions of Dr. Huang's employment by diminishing her authority and effectiveness in a leadership role.

This pattern continued throughout 2022 and 2023. As Dr. Huang worked with male non-Chinese graduate advisors to streamline the assignment of graduate teaching assistants, those advisors refused to comply with her directives and coordinated to shift their duties onto her. *See* Huang Dep. 147:5–17 (*See* Exhibit D-1 at DEF_MSJ_APPX000039), Armanios Dep. 108:8-113:18 (*See* Exhibit D-2 at DEF_MSJ_APPX000119-000120), Ex. D-45 at DEF_MSJ_APPX002088-002089, and Ex. D-91 at DEF_MSJ_APPX002278-00280. This conduct further eroded Dr. Huang's authority and altered the conditions under which she performed her job. Defendant's adverse actions escalated on April 10, 2023, when Armanios removed Dr. Huang from her position as TDC Chair. *See* Ex. D-66 at DEF_MSJ_APPX002186-002187. Ultimately, the ongoing discrimination and harassment culminated in Dr. Huang's removal as Associate Chair. This action constituted a materially adverse employment action because it stripped Dr. Huang of her leadership role, authority, and influence within the department.

Dr. Huang's removal also resulted in tangible economic harm, including the loss of summer pay and a monthly stipend of $400. *See* Huang Dep. 69:21–23 (*See* Exhibit D-1 at DEF_MSJ_APPX000019). To date, these lost wages have totaled $78, 852. 79 in past lost wages and will give rise to continued future lost wages. *See,* Section C of Plaintiff's Amended Initial Disclosure Pursuant to FRCP 26(a)(1) at PLT_MSJ_APP_0101. In addition, her removal foreclosed opportunities for advancement into higher leadership positions, such as department chair, dean, and provost. *See* Huang Dep. 156:13–18 (*See* Exhibit D-1 at DEF_MSJ_APPX000041). Unlike the reassignment in *Stewart*, which "affected none of [the Plaintiff's] job title, grade, hours, salary, or benefits," Dr. Huang's removal here resulted in both a

loss of compensation and a significant diminution in professional standing and career trajectory. Accordingly, Dr. Huang has presented sufficient evidence for a reasonable jury to conclude that she suffered materially adverse employment actions under Title VII.

**2. <u>Dr. Huang Has Provided Evidence of Similarly Situated Comparators.</u>**

Defendant asserts that Dr. Huang has failed to demonstrate a genuine dispute of material fact as to whether she was treated less favorably than a similarly situated comparator. The "similarly situated" prong requires a Title VII plaintiff to identify at least one coworker outside of his protected class who was treated more favorably "under nearly identical circumstances." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017). This coworker, known as a comparator, must hold the "same job" or job responsibilities as the plaintiff, must "share[] the same supervisor or" have his "employment status determined by the same person," and must have a history of "violations" or "infringements" similar to that of the plaintiff. *Id.*

Here, Dr. Huang has identified similarly situated comparators who were treated more favorably. Specifically, male non-Chinese faculty members, including Dr. Wilson and Dr. Subbarao, held comparable leadership roles within the department and operated under the same supervisory structure. Despite occupying similar positions of authority, these individuals were not subjected to the same public ridicule, undermining of authority, or resistance to their leadership that Dr. Huang experienced. *See* Huang Dep. 105:2-7 138:22–24 (*See* Exhibit D-1 at DEF_MSJ_APPX000028 and DEF_MSJ_APPX000037), Exhibit D-35 at DEF_MSJ_APPX002034, Exhibit D-44 at DEF_MSJ_APPX002086, and PLT_MSJ_APP_0015.

Unlike Dr. Huang, whose authority as Associate Chair was consistently challenged and diminished, Dr. Wilson and Dr. Subbarao were permitted to perform their roles without comparable interference or hostility. This differential treatment occurred under the same departmental

leadership and decision-making authority, thereby satisfying the "nearly identical circumstances" requirement.

Accordingly, Plaintiff has presented sufficient evidence for a reasonable jury to conclude that similarly situated employees outside her protected class were treated more favorably, precluding summary judgment on this ground.

**C. Dr. Huang Establishes a Plausible Claim of Retaliation.**

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must allege: (1) participation in protected activity; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse action. *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015). An employee engages in protected activity when they oppose practices reasonably believed to be unlawful under Title VII. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007). "When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication' virtually always 'constitutes the employee's *opposition* to the activity." *Crawford v. Metro. Gov't of Nashville & Davidson County*, 555 U.S. 271, 276 (2009).

The Fifth Circuit has ruled that causal connection when employer had knowledge of the employee's protected activity and adverse action occurred within reasonably close temporal proximity of employ's engagement in protected activity. "We've repeatedly held periods of a few months sufficient to satisfy causation in a prima facie case. See, e.g., *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016) (holding two months sufficient to show causal connection); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (suggesting 'a time lapse of up to four months has been found sufficient to satisfy the causal connection'" *Id* at 653, *January v. City of Huntsville*, 74 F.4th 646, 653, 2023 (5th Cir. 2023).

**1. Plaintiff Establishes a *Prima Facie* Case of Retaliation.**

Here, Dr. Huang has presented sufficient evidence to establish each element of her prima facie case. Dr. Huang engaged in protected activity by repeatedly opposing discriminatory conduct throughout her tenure as Associate Cahir. At the outset of her employment, she reported Dancila's harassment to Armanios. *See* Ex. D-28 at DEF_MSJ_APPX001987-001989. Under Defendant's policy, Armanios, as a supervisory official, had an obligation to report such conduct to the Equal Opportunity Services Office, regardless of whether Dr. Huang submitted a formal complaint. *See* Exhibit D-58 at DEF_MSJ_APPX002140.

Dr. Huang continued to engage in protected activity in February 2024, when she raised concerns regarding ongoing harassment by male non-Chinese faculty, the persistent undermining of her authority, and the disproportionate impact of increased teaching loads on female faculty. *See* Exbibit D-35 at DEF_MSJ_APPX002034, Exhibit D-40 at DEF_MSJ_APPX002073-002075, Exhibit D-44 at DEF_MSJ_APPX002086, and PLT_MSJ_APP_0015.

Rather than address these concerns, Armanios dismissed the discriminatory nature of the conduct, accused Dr. Huang of overstepping her authority, and threatened to terminate her role as Associate Chair effective March 1, 2024. *See* Armanios Dep. 118:16-119:1 (*See* Exhibit D-2 at DEF_MSJ_APPX000122), Exhibit D-35 at DEF_MSJ_APPX002031-002036, and PLT_MSJ_APP_0104-0105. Armanios then refused to engage further with Dr. Huang regarding these concerns and removed her from the Associate Chair position on March 21, 2024. *See* Exhibit D-8 at DEF_MSJ_APPX000400-000404.

**2. Defendant's Proffered Reason for Dr. Haung's Demotion is Pretextual.**

Even if Defendant satisfies its burden of production, the record permits a reasonable jury to conclude that this explanation is pretext for retaliation.

First, Defendant improperly reframes Dr. Huang's protected activity as interpersonal conflict. Dr. Huang did not merely engage in "squabbling"; she repeatedly opposed conduct she reasonably believed to be discriminatory, including harassment by male non-Chinese faculty and inequitable treatment within the department. *See* PLT_MSJ_APP_0002-0005, Exhibit D-26 at DEF_MSJ_APPX001618-001620, Exbibit D-35 at DEF_MSJ_APPX002024 and DEF_MSJ_APPX002034, and Exhibit D-40 at DEF_MSJ_APPX002073-002075. Defendant cannot rely on Dr. Huang's protected opposition as a justification for adverse action. *See* PLT_MSJ_APP_0112.

Second, Defendant overlooks the discriminatory nature of the complaints lodged against Dr. Huang and Dr. Armanios' failure to investigate or report Dr. Huang's complaints of discrimination. Under Defendant's own policy, Dr. Armanios had an affirmative obligation to report such complaints to the Equal Opportunity Services Office. *See* Exhibit D-58 at DEF_MSJ_APPX002140. Instead, he disregarded Dr. Huang's complaints and relied on criticism from faculty members who resisted Dr. Huang's authority. *See* Huang Dep. 145:9-148:21 (*See* Exhibit D-1 at DEF_MSJ_APPX000038-000039), Exhibit D-26 at DEF_MSJ_APPX001618-001620, Exhibit D-35 at DEF_MSJ_APPX002024, Exhibit D-40 at DEF_MSJ_APPX002073-002075 and PLT_MSJ_APP_0112. A reasonable jury could find that Defendant selectively credited biased complaints while ignoring Dr. Huang's protected activity.

Third, the record contradicts Defendant's claim that Dr. Huang's removal was based on performance deficiencies. Unlike the Plaintiff in *Singleton v. YMCA of Greater Houston*, No. H-17-2903, 2019 U.S. Dist. LEXIS 107094 (S.D. Tex. June 26, 2019), Dr. Huang was not removed for poor performance. Her 2022–2023 annual review reflects that she exceeded expectations in her role as Associate Chair. *See* Huang Dep. 158:8-11 (*See* Exhibit D-1 at DEF_MSJ_APPX000042),

D-23 at DEF_MSJ_APPX000488-00494, and PLT_MSJ_APP_0020-0022. This objective evidence undermines Defendant's stated rationale and supports an inference of pretext.

Fourth, the temporal proximity between Dr. Huang's protected activity and her removal, combined with Defendant's failure to address her complaints, further supports a finding of retaliatory motive. As the Fifth Circuit has recognized, "the combination of suspicious timing with other significant evidence of pretext … can be sufficient to survive summary judgment." *Evans*, 246 F.3d at 356 (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)).

Finally, Defendant's reliance on *Singleton* is misplaced. In *Singleton*, the Plaintiff failed to produce evidence of discriminatory or retaliatory animus and relied solely on her subjective disagreement with her employer's assessment. Here, Dr. Huang has presented objective evidence of protected activity, temporal proximity, differential treatment, and a pattern of conduct tied to her protected characteristics.

To prevail on a Title VII retaliation claim, a Dr. Huang must ultimately show that the adverse action would not have occurred "but for" the protected activity. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). At the summary judgment stage, however, Dr. Huang need only produce sufficient evidence for a reasonable jury to conclude that retaliation was the but-for cause of the adverse action. Here, the evidence permits such a finding. Dr. Huang engaged in protected activity shortly before her removal, Defendant failed to investigate or address her complaints, and Defendant instead relied on complaints arising from resistance to Dr. Huang's authority. *See* Huang Dep. 41:9-43:6 and 43:23-44:20 (*See* Exhibit D-1 at DEF_MSJ_APPX000012-000013). Combined with the close temporal proximity and the absence of documented performance deficiencies, this evidence supports a reasonable inference that Dr. Huang would not have been removed but for her protected activity. At minimum, the evidence

presents genuine disputes of material fact regarding Defendant's motive and the true reason for Dr. Huang's removal. Accordingly, Defendant is not entitled to summary judgment on Dr. Huang's retaliation claim.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's motion for summary judgment, together with such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Dated: New York, New York
April 2, 2026

**WHITE, ROSE, & HILFERTY, P.C.**
BY: *<u>/s/ Michael P. Hilferty</u>*
**MICHAEL P. HILFERTY**
NYS Bar No. 4719498 (*Pro Hac Vice)*
**TUBA J. FAROOQUI**
NYS Bar No. 6101356 (*Pro Hac Vice*)
*Attorneys For Plaintiff*
757 Third Avenue, 20th Floor
New York, NY 10017
Telephone: (646) 452-8091
Facsimile: (646) 690-8897
mph@nycjobattorney.com
tfarooqui@nycjobattorney.com

**CHERRY JOHNSON SIEGMUND JAMES, PLLC**
BY: *<u>/s/ Mark D. Siegmund</u>*
**MARK D. SIEGMUND**
State Bar No. 24117055
**WILLIAM D. ELLERMAN**
State Bar No. 24007151
8140 Walnut Hill Lane, Suite 830
Dallas, Texas 75231
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
msiegmund@cjsjlaw.com
wellerman@cjsjlaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all counsel of record via the Court's electronic filing system in accordance with the Federal Rules of Civil Procedure on this 2nd day of April 2026.

BY: /s/ *Tuba J. Farooqui*
**TUBA J. FAROOQUI, ESQ.**