**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS FORT WORTH DIVISION**

| | |
|---|---|
| HAIYING HUANG,<br><br>Plaintiff,<br>v.<br><br>UNIVERSITY OF TEXAS ARLINGTON,<br><br>Defendant. | Case No.: 4:25-cv-00181-P |

# PLAINTIFF'S APPENDIX IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

| Bates No. | Document |
|---|---|
| PLT_MSJ_APP_0002-0005 | September 13, 2022- Eml from Dancila- Subj: Mechanics TDC meeting |
| PLT_MSJ_APP_0006-0007 | September 8, 2022- Eml from Dancila to Armanios- Subj: Call for proposal on Meeting Rules |
| PLT_MSJ_APP_0008-0009 | September 7, 2022- Eml from Huang to Armanios- Subj: TDC |
| PLT_MSJ_APP_0010-0012 | September 9, 2022- Eml from Armanios to Huang, Wilson- Subj: Rules for Operation of TDCs |
| PLT_MSJ_APP_0013-0014 | September 20, 2022- Eml from Dancila- Subj: Sept 14 meeting minutes and next TDC meeting |
| PLT_MSJ_APP_0015 | August 22, 2023- Eml from Armanios to Huang, Subbarao- Subj: *Redacted* GTA matter |
| PLT_MSJ_APP_0016-0017 | August 29, 2023- Eml from Armanios- Subj: Fall 2023 Enrollment reports - 08/29/2023 |
| PLT_MSJ_APP_0018-0019 | October 24, 2023- Eml from Armanios to Huang- Subj: Summary withdrawal of enrollment for Fall 2023 semester |
| PLT_MSJ_APP_0020 | March 27, 2023- Letter from Provost to Huang- 2022-23 Comprehensive Periodic Evaluation |
| PLT_MSJ_APP_0021-0022 | Huang 2022-2023- Tenured Faculty Evaluation-Tenured Faculty Annual Review |
| PLT_MSJ_APP_0023 | February 1, 2024- Eml from Huang- Subj: Doctoral program review kick-off-meeting |
| PLT_MSJ_APP_0024 | February 26, 2024- Eml from Huang to Armanios- Subj: materials for Wed's discussion |
| PLT_MSJ_APP_0025-0026 | IR #0056153 Harassment Retaliation- On-Campus Off-Campus Online- 03/21/2024 |
| PLT_MSJ_APP_0027-0057 | August 22, 2024- Draft EOS Investigation |
| PLT_MSJ_APP_0058-0060 | August 30, 2024- University of Texas at Arlington Harassment, Discrimination and Retaliation On-Line Complaint Form |
| PLT_MSJ_APP_0061-0062 | August 30, 2024- University of Texas at Arlington Report Sexual Misconduct |
| PLT_MSJ_APP_0063 | October 2, 2024- Eml from Willbanks to Armanios- Subj: EOS case filed PERSONAL AND CONFIDENTIAL |
| PLT_MSJ_APP_0064 | October 9, 2024- Eml from Meier to Huang- Subj: EOS response |
| PLT_MSJ_APP_0065-0094 | February 4, 2025- Dr. Bowling v. Dr. Huang Investigation Report |
| PLT_MSJ_APP_0095-0103 | March 3, 2026- Plaintiff's Amended Initial Disclosure Pursuant to FRCP 26(a)(1) |
| PLT_MSJ_APP_0104 | March 1, 2024- Handwritten Note on Termination |
| PLT_MSJ_APP_0105 | March 7, 2024- Eml from Huang to Kilgore Law- Subj: you work issue |
| PLT_MSJ_APP_0106-0109 | December 19, 2024- Eml from Huang to Willbanks- Subj: TDC and AECAP leadership |
| PLT_MSJ_APP_0110-0111 | Dr. Huang's Formal Complaint Allegations |

**Huang, Haiying**

| | |
|---|---|
| **From:** | Dancila, Dragos S |
| **Sent:** | Tuesday, September 13, 2022 8:50 AM |
| **To:** | Huang, Haiying |
| **Cc:** | Adnan, Ashfaq; Armanios, Erian A; Benavides, Julio Cesar; Bozlar, Michael; Davidson, Paul; Iarve, Endel; Kilmain, Catherine H; Lawrence, Kent L; Luo, Cheng; Makeev, Andrew V; Michael, Nancy L; Nomura, Seiichi; Raihan, Md Rassel; Taylor, Robert M; Wang, Bo P; Aswath, Pranesh B; Karbhari, Vistasp |
| **Subject:** | Re: Mechanics TDC meeting |

BTW, regarding the proposed rules:

3. "Meeting can be held without a quorum." - This is not a TDC meeting, it is a coffee break…:)

"Additional votes must be sought by email." - How can someone meaningfully vote when they were not present for the debate of the issue? Rubberstamping?

My broader overarching point is that self governance is hard and needs to be taken seriously. Otherwise mistakes can and do arise with the power of rules...

Cheers,

Stefan

On Sep 13, 2022, at 8:25 AM, Dancila, Dragos S <dancila@uta.edu> wrote:

We need to have some set rules (voting, quorum, etc.) that govern the meeting in which we plan to debate and decide any proposed rules…and another issue for that matter.

As we meet tomorrow

- who gets to vote to decide who has a vote and before we decide who has a vote?
- what constitutes quorum before those who can vote decide what constitutes quorum?

Do you see the issue here?

Stefan

On Sep 13, 2022, at 7:54 AM, Huang, Haiying <huang@uta.edu> wrote:

All,

Please review the proposed mechanics TDC rules (see link below) before tomorrow's meeting. The folder also have the TDC member list and course coordinators list.

The meeting will be virtual.

Thanks!

Haiying

https://mavsuta.sharepoint.com/:w:/r/sites/DisciplineCommittee_StructureMechanicsandStructuralOptimizat/Shared%20Documents/General/Meeting%20Agenda/Fall%202022/Sept14_2022/TDC%20rules_Huang.docx?d=wf884732555ea447ca51bb59092096687&csf=1&web=1

Sent from my iPhone

> On Sep 13, 2022, at 5:51 AM, Dancila, Dragos S <dancila@uta.edu> wrote:
>
> There already is a rule that each MAE faculty has primary TDC affiliation in one and only one TDC. Consistent with this, each faculty should have one and only one vote in TDCs, specifically they have a vote in the TDC of their primary affiliation.
>
> It then follows that the quorum in each TDC meeting should be decided based upon voting members for that TDC, and a typical 50%+1 being present criterion could be used.
>
> Stefan
>
>> On Sep 13, 2022, at 5:43 AM, Dancila, Dragos S <dancila@uta.edu> wrote:
>>
>> Dear All:
>>
>> Looking at the Powerpoint file circulated earlier this semester with the TDC memberships I note that Drs. Aswath, Karbhari, and Reifsnider are listed with primary membership in the SMSO TDC, but not included in the e-mail distribution of this message - not sure why. As we move towards the TDC meeting tomorrow, it is essential that all members of the TDC be aware of the meeting and participate, given the importance of the

decisions that are to be made regarding the mode of operation of the TDC.

I reiterate my request that we have a MAE uniform set of TDC operating rules. Otherwise, at the start of tomorrow's meeting:

1. Which members of the TDC have a vote?
2. What is the quorum requirement to ensure that the meeting and any decisions reached are valid?

These issues need to be decided BEFORE tomorrow's meeting, because the first action to be taken once the meeting is called to order is to determine if we have quorum, and for that we need to have a criterion for what constitutes quorum, and given that decisions are made by voting we need to have a clear understanding of who has a vote and how measures carry. Only a quorum based upon voting members makes sense.

Stefan

> On Sep 7, 2022, at 5:49 PM, Huang, Haiying <huang@uta.edu> wrote:
>
> All,
>
> Thanks for those who attended today's TDC meeting. You can watch the meeting recording if you were not able to attend <image001.png> Mechanics TDC meeting-20220907_120459-Meeting Recording.mp4.
>
> Based on today's discussions, we will have multiple meetings this semester to discuss curriculum issues. The first action item is to revisit the syllabi and catalog course descriptions. Attached is the list of mechanics courses and their course coordinators. If you are a course coordinator, please upload your syllabi to the Teams folder <image002.png> Syllabi by 9/12/2022.
>
> I have sent out the invitation for a TDC meeting on Wed 9/14/2022 12-1pm. Hope everyone will be able to attend. This is an extremely important meeting as the outcomes of the meeting will

determine how our TDC will operate in future.

Best Regards,

Haiying Huang, PhD
Professor, Dept. of Mechanical and Aerospace Engineering
University of Texas Arlington
500 W. First Street, WH211
Arlington, TX 76019
817-272-0563
astl.uta.edu

Message

**From**: Dancila, Dragos S [dancila@uta.edu]
**Sent**: 9/8/2022 2:40:43 PM
**To**: Armanios, Erian A [armanios@uta.edu]
**Subject**: Fwd: Call for proposal on Meeting Rules
**Attachments**: Meeting_Rules_huang.pdf; Discipline committee 22-23.pptx

Unbelievable disregard for my input! Unacceptable, really.

Stefan

Begin forwarded message:

**From:** "Huang, Haiying" <huang@uta.edu>
**Subject: Call for proposal on Meeting Rules**
**Date:** September 8, 2022 at 2:26:23 PM CDT
**To:** "Adnan, Ashfaq" <aadnan@uta.edu>, "Armanios, Erian A" <armanios@uta.edu>, "Benavides, Julio Cesar" <julio.benavides@uta.edu>, "Bozlar, Michael" <bozlar@uta.edu>, "Dancila, Dragos S" <dancila@uta.edu>, "Davidson, Paul" <paul.davidson@uta.edu>, "Iarve, Endel" <endel.iarve@uta.edu>, "Kilmain, Catherine H" <catherine.kilmain@uta.edu>, "Lawrence, Kent L" <lawrence@uta.edu>, "Luo, Cheng" <chengluo@exchange.uta.edu>, "Makeev, Andrew V" <makeev@uta.edu>, "Michael, Nancy L" <nancym@uta.edu>, "Nomura, Seiichi" <nomura@uta.edu>, "Raihan, Md Rassel" <mdrassel.raihan@uta.edu>, "Taylor, Robert M" <TAYLORRM@uta.edu>, "Wang, Bo P" <bpwang@uta.edu>
**Cc:** General - Discipline Committee _ Structural Mechanics and Optimization <7e809b50.groups.uta.edu@amer.teams.ms>

All,

In preparation for Wed's meeting, I would like to make a call for proposals on meeting rules. Please submit your proposal in a single word file to the Teams folder

Sept14_2022 by 5pm on 09/12/2022. That will give everyone time to evaluate the proposals and contribute to effective discussions.

Since we need to decide on the quorum first, I propose we follow the attached meeting rules for the quorum discussion. After that, we can discuss the proposals. The goal is to define the meeting rules that we all abide by. We need to set up the meeting rules before we can move on to other discussions.

To reduce the amount of email exchanges, please direct all conversations related to this email thread through the Posts section of the Teams group. I will check the posts daily and respond accordingly.

Attached also is the member list of the TDC.

Regards,

Haiying

P.S. Let me know if you have trouble access the Teams link.

**From:** Huang, Haiying <huang@uta.edu>
**Sent:** Wednesday, September 7, 2022 5:50 PM
**To:** Adnan, Ashfaq <aadnan@uta.edu>; Armanios, Erian A <armanios@uta.edu>; Benavides, Julio Cesar <julio.benavides@uta.edu>; Bozlar, Michael <bozlar@uta.edu>; Dancila, Dragos S <dancila@uta.edu>; Davidson, Paul <paul.davidson@uta.edu>; Iarve, Endel <endel.iarve@uta.edu>; Huang, Haiying <huang@uta.edu>; Kilmain, Catherine H <catherine.kilmain@uta.edu>; Lawrence, Kent L <lawrence@uta.edu>; Luo, Cheng <chengluo@exchange.uta.edu>; Makeev, Andrew V <makeev@uta.edu>; Michael, Nancy L <nancym@uta.edu>; Nomura, Seiichi <nomura@uta.edu>; Raihan, Md Rassel <mdrassel.raihan@uta.edu>; Taylor, Robert M <TAYLORRM@uta.edu>; Wang, Bo P <bpwang@uta.edu>
**Subject:** Mechanics TDC meeting

All,

Thanks for those who attended today's TDC meeting. You can watch the meeting recording if you were not able to attend

Mechanics TDC meeting-20220907_120459-Meeting Recording.mp4.

Based on today's discussions, we will have multiple meetings this semester to discuss curriculum issues. The first action item is to revisit the syllabi and catalog course descriptions. Attached is the list of mechanics courses and their course coordinators. If you are a course coordinator, please upload your syllabi to the Teams folder

Syllabi by 9/12/2022.

I have sent out the invitation for a TDC meeting on Wed 9/14/2022 12-1pm. Hope everyone will be able to attend. This is an extremely important meeting as the outcomes of the meeting will determine how our TDC will operate in future.

Best Regards,

Haiying Huang, PhD
Professor, Dept. of Mechanical and Aerospace Engineering
University of Texas Arlington
500 W. First Street, WH211
Arlington, TX 76019
817-272-0563
astl.uta.edu

**Huang, Haiying**

**From:** Huang, Haiying
**Sent:** Wednesday, September 7, 2022 1:01 PM
**To:** Armanios, Erian A
**Subject:** RE: TDC

Erian,

Do you have time for a phone call?

Thanks!

Haiying

---

**From:** Armanios, Erian A <armanios@uta.edu>
**Sent:** Wednesday, September 7, 2022 2:13 PM
**To:** Huang, Haiying <huang@uta.edu>
**Cc:** Wilson, Donald R <wilson@uta.edu>
**Subject:** RE: TDC

Don and Haiying,
Per our bylaws: " *The MAE Department Chair, in consultation with the Associate Chair, appoints the Chairs of the DCs*."
I would appreciate your input on appointing Stefan as Chair of the Structural Mechanics & Structural Optimization committee
Regards
Erian

-----Original Message-----
From: Huang, Haiying <huang@uta.edu>
Sent: Wednesday, September 7, 2022 1:28 PM
To: Dancila, Dragos S <dancila@uta.edu>
Cc: Wilson, Donald R <wilson@uta.edu>; Armanios, Erian A <armanios@uta.edu>
Subject: RE: TDC

Stefan,

Thanks for volunteering. The TDC chairs are appointed by Dr. Armanios.

Regards,

Haiying

-----Original Message-----
From: Dancila, Dragos S <dancila@uta.edu>
Sent: Wednesday, September 7, 2022 1:13 PM
To: Huang, Haiying <huang@uta.edu>
Cc: Wilson, Donald R <wilson@uta.edu>; Armanios, Erian A <armanios@uta.edu>
Subject: TDC

Haiying,

Per your question during the TDC meeting, I would not mind stepping up to do the work to chair the Solid Mechanics and Structures TDC.

This may actually help you given your new Associate Chair responsibilities.

Best,

Stefan

**Huang, Haiying**

**From:** Armanios, Erian A
**Sent:** Friday, September 9, 2022 10:27 AM
**To:** Huang, Haiying; Wilson, Donald R
**Subject:** RE: Rules for Operation of TDCs
**Attachments:** MAE- Values and Expectations.pdf; Roberts Rules Of Order.pdf; roberts-rules-of-order - Parliamentary.pdf

Haiying,
I see two issues in conducting meetings: 1) according to MAE Values and expectations ( attached), and 2) according to selected elements of Robert's Rules: e.g. quorum, voting and minutes ( two simplified file attached).
You leadership of the Structural Mechanics and Structural Optimization committee, in getting things done, is appreciated. And as a result the associated "labor of love"
Erian

---

**From:** Armanios, Erian A
**Sent:** Friday, September 9, 2022 8:07 AM
**To:** Huang, Haiying <huang@uta.edu>; Wilson, Donald R <wilson@uta.edu>
**Subject:** RE: Rules for Operation of TDCs

Haiying,
How about at 9:15 am on Teams? I have added #6 below to the items you may propose.
Regards
Erian

---

**From:** Huang, Haiying <huang@uta.edu>
**Sent:** Thursday, September 8, 2022 5:08 PM
**To:** Armanios, Erian A <armanios@uta.edu>; Wilson, Donald R <wilson@uta.edu>
**Subject:** RE: Rules for Operation of TDCs

Erian,

Will you have time tomorrow before 10:30am for a call? Thanks!

Haiying

---

**From:** Armanios, Erian A <armanios@uta.edu>
**Sent:** Thursday, September 8, 2022 3:19 PM
**To:** Huang, Haiying <huang@uta.edu>; Wilson, Donald R <wilson@uta.edu>
**Subject:** RE: Rules for Operation of TDCs

Haiying,
While these are broad rules that address punctuality, behavior and engagement , they do not address issues of quorum, voting, minutes. We will include these as part of updating our bylaws. But, this will take time. To move your planned agenda for the Structural Mechanics and Structural Optimization committee in a timely manner, you may perhaps propose the following, as a starter:

1. Voting members are the primary members

2. Quorum defined as a majority of the members
3. Voting encompasses all the members in attendance including the Chair
4. Motion passes with a majority of votes following Robert's Rules: specifically “move to vote”, “second” or “second for discussion”, then discussion if need be, followed by voting.
5. Meeting modality ( in person, virtual or hybrid) decided by the Chair to ensure the highest participation within room and IT constraints
6. Time limit for a member’s input to the discussion to ensure fair contribution for each member of the committee and timely completion of the agenda
7. Minutes of the meeting should be taken and approved by the next meeting.

I am attaching two simplified versions of Robert’s Rules.
Give me a call if you wish to follow up.
Regards,
Erian

-----Original Message-----
From: Huang, Haiying <huang@uta.edu>
Sent: Thursday, September 8, 2022 10:24 AM
To: Armanios, Erian A <armanios@uta.edu>; Wilson, Donald R <wilson@uta.edu>
Subject: FW: Rules for Operation of TDCs

Erian and Don,

Just for your information. The Mechanics TDC will have a meeting next Wed to discuss the ground rule for mechanics TDC meetings and operations in general. We had a very disruptive meeting yesterday because one member took up the majority of the meeting time. Despite my best effort, I had a difficult time to stay on the meeting agenda.

Attached is the meeting rules I found on internet. I think it is a good starting point for both TDC meetings and MAE meetings in general. I would say that this is not an isolated incident as we had a few disruptive department meetings and MAECAP meetings as well.

Regards,

Haiying

-----Original Message-----
From: Dancila, Dragos S <dancila@uta.edu>
Sent: Thursday, September 8, 2022 10:12 AM
To: Armanios, Erian A <armanios@uta.edu>; Wilson, Donald R <wilson@uta.edu>; Huang, Haiying <huang@uta.edu>
Subject: Rules for Operation of TDCs

Dear Erian, Don, and Haiying,

I think it would be helpful and would like to ask that we develop and implement a uniform set of Operating Rules for all our TDCs.

The rules should address:

- definition of voting members for the TDC
- definition of quorum and the quorum requirements for holding meetings and conducting business - typically 50%+1 of the voting members required to be present during the entire meeting proceedings
- rules of procedure/orderly conduct of business to be used - Robert’s Rules of Order are typically followed
- rule on whether the Chair votes or simply presides

- rule on whether the Chair can vote to break a tie
- votes required for a motion to pass - typically majority +1 of voting members present
- recording, approval, and retention of minutes of TDC meetings
- rules regarding the conduct of TDC meetings in person, hybrid, and/or online, and rules to ensure compliance with all the other rules when so conducting business

It makes no sense to have no rules or for each TDC to have its own rules.

Best,

Stefan

**Huang, Haiying**

**From:** Dancila, Dragos S
**Sent:** Tuesday, September 20, 2022 9:57 AM
**To:** Huang, Haiying
**Cc:** Adnan, Ashfaq; Armanios, Erian A; Benavides, Julio Cesar; Bozlar, Michael; Davidson, Paul; Iarve, Endel; Karbhari, Vistasp; Kilmain, Catherine H; Lawrence, Kent L; Luo, Cheng; Makeev, Andrew V; Michael, Nancy L; Nomura, Seiichi; Raihan, Md Rassel; Taylor, Robert M; Wang, Bo P
**Subject:** Re: Sept 14 meeting minutes and next TDC meeting

**Importance:** High

Add Dr. Makeev to the list of faculty present at the ASC meeting, which brings the count to 7. Isn't that 50% of the 14 permanent members of the TDC anyway? How can you even have quorum?

Stefan

On Sep 20, 2022, at 9:35 AM, Dancila, Dragos S <dancila@uta.edu> wrote:

Haiying,

You cannot possibly be serious.

Present at the ASC meeting and not able to attend the TDC meeting that you scheduled are:

Dr. Armanios
Dr. Bozlar
Dr. Dancila
Dr. Davidson
Dr. Iarve
Dr. Nomura

Are these 6 committee member voices that do not deserve the benefit of being present and a part of the TDC decision making process, and why? What is the mad rush about?

Stefan

On Sep 20, 2022, at 7:10 AM, Huang, Haiying <huang@uta.edu> wrote:

Dr. Lawrence and Dr. Wang will attend so we will have a quorum. If everything goes well, we may not need the full hour as scheduled. I will record the meeting for those who can not attend.

**From:** Dancila, Dragos S <dancila@uta.edu>
**Sent:** Monday, September 19, 2022 5:07 PM
**To:** Huang, Haiying <huang@uta.edu>
**Cc:** Adnan, Ashfaq <aadnan@uta.edu>; Armanios, Erian A <armanios@uta.edu>; Benavides, Julio Cesar <julio.benavides@uta.edu>; Bozlar, Michael <bozlar@uta.edu>; Davidson, Paul <paul.davidson@uta.edu>; Iarve, Endel <endel.iarve@uta.edu>; Karbhari, Vistasp <vkarbhari@uta.edu>; Kilmain, Catherine H <catherine.kilmain@uta.edu>; Lawrence, Kent L <lawrence@uta.edu>; Luo, Cheng <chengluo@exchange.uta.edu>; Makeev, Andrew V <makeev@uta.edu>; Michael, Nancy L <nancym@uta.edu>; Nomura, Seiichi <nomura@uta.edu>; Raihan, Md Rassel <mdrassel.raihan@uta.edu>; Taylor, Robert M <TAYLORRM@uta.edu>; Wang, Bo P <bpwang@uta.edu>
**Subject:** Re: Sept 14 meeting minutes and next TDC meeting

Haiying,

At least 5 if not 6 of the primary members are here at the ASC meeting in Tucson, AZ - could we reschedule the TDC meeting? Disengaging from the conference to attend a TDC meeting online in Teams is not a good solution and missing the TDC meeting is not a good solution either.

Regards,

Stefan

On Sep 16, 2022, at 7:17 AM, Huang, Haiying <huang@uta.edu> wrote:

All,

The minutes for the Sept-14-2022 meeting is uploaded <image001.png> TDC_SMO_09142022_minutes.docx. Please review and make changes if necessary.

You should have received the invitation for our next meeting scheduled at noon on Wed 9/21/2022. If you are a primary member, please RSVP by 12pm Tuesday 9/20/2022. The meeting will be held virtually because WH413 is not available and the projector in WH200 does not work most of the time.

Have a nice weekend.

Haiying Huang, PhD
Professor, Dept. of Mechanical and Aerospace Engineering
University of Texas Arlington
500 W. First Street, WH211
Arlington, TX 76019
817-272-0563
astl.uta.edu

**Huang, Haiying**

**From:** Armanios, Erian A
**Sent:** Tuesday, August 22, 2023 2:43 PM
**To:** Subbarao, Kamesh; Huang, Haiying
**Subject:** RE: [redacted] GTA matter

Kamesh,
I appreciate your placing collegiality above storms, making MAE so special!
Erian

---

**From:** Subbarao, Kamesh <subbarao@uta.edu>
**Sent:** Tuesday, August 22, 2023 1:40 PM
**To:** Huang, Haiying <huang@uta.edu>
**Cc:** Armanios, Erian A <armanios@uta.edu>
**Subject:** [redacted] GTA matter

Hello Haiying,

I appreciate the fact that you called for the meeting and we were able to air out our views. To reiterate something I said a few times to you earlier, I have nothing but the utmost respect for you. Your stance on fairness, and uniform treatment to all is very noble.

After hearing your perspective, I agree all this could have been avoided. I should have checked the GTA list and conferred with Adnan prior to forwarding the green sheet. In my defense, with the information I had at that time, my intentions were to only expedite the process, hence the communication to Ratan to first get a sense of why the swap didn't happen as I had imagined, and then suggesting [redacted] as a potential GTA. That unfortunately didn't go down well and the issue snowballed due to email exchanges that were further mis-understood. For all of this, I apologize it came to this, and promise to call you next time if such a situation presents again.

I hope we can put this behind us and work together on issues important to all of us.

Best regards
Kamesh

PS: With regards to [redacted], in Fall 2023 she is enrolled in AE 5302, COMS 2302, HIST 1301, and HIST 1302. Her overall GPA is 3.754. She took MAE 3315 in Fall 2021 with Dr. Catherine Kilmain and made an A in the class.

**Huang, Haiying**

**From:** Armanios, Erian A
**Sent:** Tuesday, August 29, 2023 10:03 AM
**To:** Huang, Haiying; Kumar, Ratan; Nomura, Seiichi; Kilmain, Catherine H; Michael, Nancy L; Amaya, Miguel A; Han, Zhen Xue; Subbarao, Kamesh
**Subject:** RE: Fall 2023 Enrollment reports - 08/29/2023

Take this with a big grain of salt from “1” to “6” & “2” to “10”, respectively. Enrollment entails a complex web, including timely appointment for interviews, issuance of visas, to name two. We have been focusing on timely completion of Quality applications, “23” to “38” & “18”to “37”, respectively, reflect quantity. I have asked to include graduation rate , as a measure of quality.
Erian

---

**From:** Huang, Haiying <huang@uta.edu>
**Sent:** Tuesday, August 29, 2023 9:14 AM
**To:** Armanios, Erian A <armanios@uta.edu>; Kumar, Ratan <ratan.kumar@uta.edu>; Nomura, Seiichi <nomura@uta.edu>; Kilmain, Catherine H <catherine.kilmain@uta.edu>; Michael, Nancy L <nancym@uta.edu>; Amaya, Miguel A <mamaya@uta.edu>; Han, Zhen Xue <han@uta.edu>; Subbarao, Kamesh <subbarao@uta.edu>
**Subject:** RE: Fall 2023 Enrollment reports - 08/29/2023

Notice that ME PhD enrollment increased by 500% and ME BS2PhD increased by 400% 😊

| | | a. Applied | | | | b. Admitted | | | | d. Matriculated | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2022 Fall | 2023 Fall | | | 2022 Fall | 2023 Fall | | | 2022 Fall | 2023 Fall | | |
| | | | | (+/-) | (% Change) | | | (+/-) | (% Change) | | | (+/-) | (% Cha |
| Doctoral | Aerospace Engr BS-to-PHD | 5 | 6 | 1 | 20.00% | 2 | 3 | 1 | 50.00% | 2 | 2 | 0 | 0 |
| | Aerospace Engr PHD | 6 | 6 | 0 | 0.00% | 3 | 3 | 0 | 0.00% | 2 | 2 | 0 | 0 |
| | Biomedical Engr BS-to-PHD | 11 | 11 | 0 | 0.00% | 4 | 8 | 4 | 100.00% | 2 | 7 | 5 | 250 |
| | Biomedical Engr PHD | 10 | 30 | 20 | 200.00% | 7 | 14 | 7 | 100.00% | 2 | 7 | 5 | 250 |
| | Civil Engineering BS-to-PhD | 24 | 31 | 7 | 29.17% | 12 | 8 | -4 | -33.33% | 11 | 7 | -4 | -36 |
| | Civil Engineering PHD | 61 | 63 | 2 | 3.28% | 30 | 20 | -10 | -33.33% | 19 | 11 | -8 | -42 |
| | Computer Engineering BS-to-PHD | 12 | 7 | -5 | -41.67% | 5 | 0 | -5 | -100.00% | 3 | 0 | -3 | -100 |
| | Computer Engineering PHD | 10 | 6 | -4 | -40.00% | 7 | 2 | -5 | -71.43% | 4 | 2 | -2 | -50 |
| | Computer Science BS-to-PhD | 76 | 67 | -9 | -11.84% | 28 | 39 | 11 | 39.29% | 14 | 24 | 10 | 71 |
| | Computer Science PHD | 56 | 71 | 15 | 26.79% | 23 | 27 | 4 | 17.39% | 7 | 20 | 13 | 185 |
| | Electrical Engr BS-to-PhD | 13 | 13 | 0 | 0.00% | 2 | 0 | -2 | -100.00% | 2 | 0 | -2 | -100 |
| | Electrical Engr-PhD | 28 | 31 | 3 | 10.71% | 11 | 7 | -4 | -36.36% | 6 | 5 | -1 | -16 |
| | Industrial Engineering-PHD | 27 | 23 | -4 | -14.81% | 14 | 11 | -3 | -21.43% | 8 | 10 | 2 | 25 |
| | Industrial Engr BS-to-PHD | 1 | 2 | 1 | 100.00% | 1 | 1 | 0 | 0.00% | 1 | 0 | -1 | -100 |

---

**From:** Armanios, Erian A <armanios@uta.edu>
**Sent:** Tuesday, August 29, 2023 9:02 AM
**To:** Kumar, Ratan <ratan.kumar@uta.edu>; Nomura, Seiichi <nomura@uta.edu>; Kilmain, Catherine H <catherine.kilmain@uta.edu>; Michael, Nancy L <nancym@uta.edu>; Amaya, Miguel A <mamaya@uta.edu>; Han, Zhen Xue <han@uta.edu>; Huang, Haiying <huang@uta.edu>; Subbarao, Kamesh <subbarao@uta.edu>
**Subject:** FW: Fall 2023 Enrollment reports - 08/29/2023

Good morning!
FYI
Regards and be well

Erian

---

**From:** Islam, Tarikul <tarikul.islam@uta.edu>
**Sent:** Tuesday, August 29, 2023 7:53 AM
**To:** Sattler, Melanie L <msattler@uta.edu>; Armanios, Erian A <armanios@uta.edu>; Componation, Paul J <componation@uta.edu>; Jiang, Hong <hong.jiang@uta.edu>; Cho, Michael <michael.cho@uta.edu>; Meletis, Efstathios <meletis@uta.edu>; Crouch, Peter E <peter.crouch@uta.edu>; Peterson, Lynn <peterson@uta.edu>; Das, Gautam <gdas@cse.uta.edu>; Tiernan, Carter <tiernan@uta.edu>; Agor, Jeremy S <agor@uta.edu>; Larson, Lin <Lin.larson@uta.edu>; Mayer, Susan C <mayer@uta.edu>; Rosenberger, Jay Michael <jrosenbe@uta.edu>; Lee, Wei-Jen <wlee@uta.edu>; McAlister, Karen <karen.mcalister@uta.edu>
**Cc:** Elliott, Susan <susan.elliott@uta.edu>; Islam, Tarikul <tarikul.islam@uta.edu>
**Subject:** Fall 2023 Enrollment reports - 08/29/2023

Dear all,

Attached are the two enrollment reports:

1. Current Year to day enrollment report: Students who have already registered for Fall 2023 courses – **9,938** (on Aug 28, 2023)
2. Weekly Admission Funnel report: shows application, admitted, matriculated, and enrolled as of August 29, 2023

Thank you,
Tarikul

**Huang, Haiying**

**From:** Armanios, Erian A
**Sent:** Tuesday, October 24, 2023 9:44 AM
**To:** Huang, Haiying
**Cc:** Kilmain, Catherine H
**Subject:** RE: Summary withdrawal of enrollment for Fall 2023 semester

Good morning Haiying,
This abrupt decision is of great concern regarding [redacted] wellbeing. We need to listen, appreciate the background and express first and foremost our focus on his wellbeing and mental health. As such, having plans for him at this stage, is premature and unwise, at best. From my experience, I suspect a strong need for [redacted] to take a break before, hopefully he could restart. In spite of the major disruption associated with his sudden and complete withdrawal, our message should be " how may be of help?".
Cathy: I would appreciate background and context.
Regards,
Erian

---

**From:** Huang, Haiying <huang@uta.edu>
**Sent:** Tuesday, October 24, 2023 9:12 AM
**To:** Armanios, Erian A <armanios@uta.edu>
**Cc:** Kilmain, Catherine H <catherine.kilmain@uta.edu>
**Subject:** FW: Summary withdrawal of enrollment for Fall 2023 semester

Good morning, Erian,

Trust you are doing well. Please see messages below. [redacted] is taking two lecture courses and one 3-credt research course with [redacted]. He is also a CA for [redacted] Lab course. He felt overwhelmed with the work and wants to quit everything.

Lanie told me that UG CA only need to register for 3 credit hours to be eligible. I am thinking [redacted] might be able to handle it if he can keep only one course and continue working as a CA. Would like check with you first before talking to [redacted] about it.

I am available via Teams if you need more detail.

Thanks!

Haiying

---

**From:** Kilmain, Catherine H <catherine.kilmain@uta.edu>
**Sent:** Monday, October 23, 2023 12:26 PM
**To:** Ryan, Wendy Lee <wendy.ryan@uta.edu>; Huang, Haiying <huang@uta.edu>; Gordon, Delania <lanie@uta.edu>
**Subject:** Fw: Summary withdrawal of enrollment for Fall 2023 semester

All -

Please see below.

Dr. Huang, I will contact you this afternoon to discuss in more detail.

Best,
Cathy

---

**From:** [redacted]
**Sent:** Monday, October 23, 2023 12:12 PM
**To:** Kilmain, Catherine H <catherine.kilmain@uta.edu>
**Subject:** Summary withdrawal of enrollment for Fall 2023 semester

Good afternoon Dr. Kilmain,

This email is to notify you and the department of my intent to summarily withdrawal from enrollment from all courses and CA/GTA positions, including AE 5397-033, AE 5342-001, and AE-5331-004, as well as MAE-3181-002/006 respectively, effective as of this email.

Have a good semester,
[redacted]

[redacted]

UTA THE UNIVERSITY OF TEXAS AT ARLINGTON

OFFICE OF THE PROVOST

March 27, 2023

Haiying Huang
College of Engineering
Department of MAE

Dear Professor Huang,

After thorough review of the materials submitted for your 2022-23 comprehensive periodic evaluation, I am pleased to inform you that you have met the performance expectations for your position.

Ratings in each of the areas of professional performance were as follows:

| | |
|---|---|
| Teaching: | meets expectations |
| Research: | exceeds expectations |
| Service: | exceeds expectations |
| Administration: | n/a |
| Overall evaluation: | exceeds expectations |

Having completed this evaluation, you will not be scheduled for another CPE for six years.

Thank you for your contributions to your Department, your College, and to the University of Texas at Arlington.

Warm Regards,

Tamara L. Brown
Provost & Senior Vice President for Academic Affairs

cc: Peter Crouch, Dean, College of Engineering
Erian Armanios, Chair, Department of MAE
Minerva Cordero, interim Vice Provost for Faculty Affairs

The University of Texas at Arlington Box 19118 701 S. Nedderman Dr. Arlington, Texas 76019-0118
T 817-272-2103 F 817-272-3400 uta.edu/provost

UNIVERSITY OF TEXAS ARLINGTON

# Tenured Faculty Evaluation - Tenured Faculty Annual Review

| Part A: Faculty Data | | | |
|---|---|---|---|
| Evaluation Period: | 2022 through 2023 | | |
| Name: | Huang, Haiying | | Academic Unit College of Engineering |
| Academic Rank: | Professor | Start Date: September 1, 2006 | Year Tenured: 2010 |

Part B: Workload Apportionment (as it applies to the year under evaluation)

| Teaching | Research or Creative Activity | Service | Administration (if applicable) | Overall |
|---|---|---|---|---|
| 25 | 40 | 10 | 25 | 100 |

Part C: Peer Evaluation of Faculty Performance (if applicable)

| | Teaching | Research or Creative Activity | Service | Administration (if applicable) | Overall |
|---|---|---|---|---|---|
| | | | | | |
| Comments: | **Teaching:**<br><br>**Research/Creative Activity:**<br><br>**Service:**<br><br>**Administration:** | | | | |

Part C Submitted by:

Part D: Chair or Equivalent, and Dean

Note: The order of completion for items D1, D2, D3, and E1 may vary across colleges and schools, depending on college or school policy.

| **D1 Chair, Director, or School equivalent** | | | | | |
|---|---|---|---|---|---|
| | **Teaching** | **Research or Creative Activity** | **Service** | **Administration (if applicable)** | **Overall** |
| | Exceeds expectations | Exceeds expectations | Exceeds expectations | Exceeds expectations | Exceeds expectations |
| **Comments:** | **Teaching:** Prof. Huang implemented flipped-classroom modules for two courses: MAE1312 and MAE5314. Practicing flipped classroom gave Prof. Huang opportunity to interact with the students more closely. Through these interactions, she has gained better understanding of their academic background and thought process. These understandings will lead to further refinement of teaching methodologies. She mentored one adjunct professor who taught two combined sections of MAE1312 Engineering Statics and was the course coordinator for MAE1312 in Fall 2022. Prof. Huang was UTA Maverick Advantage Faculty Engagement (MAFE) fellow in 2022. This yearlong program engages, educates, prepares, and supports faculty on understanding the Maverick Advantage. | | | | |

| | | |
|---|---|---|
| | **Research/Creative Activity:** Prof. Huang advised six PhD students and graduated one PhD student. She led three federal funded research projects totaling $1.47M. She published two papers in refereed journals and co-authored three conference papers with her students. She is commended for her scholarly, cross-disciplinary research work.<br><br>**Service:** Prof. Huang was the committee chair of the Structural Mechanics and Structural Optimization Technical Discipline Committee (TDC). She led the effort to review and restructure the graduate courses offered by the TDC, including defining the course pre-requisites and changing the course description and number for advanced graduate courses. She served as a member for four department committees (Mechanics TDC, MECAP, AECAP, and MAECAP). She was also the peer observer for Prof. Frank Lu. Prof. Huang mentored Dr. Linda Wang on her NSF CAREER proposal, which was awarded. Prof. Huang was appointed as an ABET program evaluator. As a part of the training, she visited one university as an ABET observer.<br><br>**Administration:** As Associate Chair, Prof. Huang spearheaded two major initiatives: implementing a departmental portal to collect pre-application information from PhD prospects and working with TDC chairs and MAECAP to implement a two-year graduate course offering plan. The departmental effort has led to the increase in new PhD students coming in fall 2023. The two-year graduate course offering allows for better planning for the students and ensure the breadth and depth of courses offered. Prof. Huang co-led the departmental ABET team on collecting data, analyzing data, and preparing the ABET self-study reports for the ABET mock visit. She is encouraged to continue building consensus among faculty for new initiatives, seek their input and buy-in | |

| | |
|---|---|
| I confirm that I met with this faculty to discuss workload in accordance with school and university policy. | Agreed upon workload for following year:<br>Teaching: 25<br>Research/Creative Activity: 40<br>Service: 10<br>Administration: 25 |

Part D1 Submitted by: Erian Armanios

| | |
|---|---|
| **D2 Dean** | Having reviewed the evaluation indicated above, I concur |
| **Comments:** | Great Performance |

D2 Submitted by: Peter Crouch

| | |
|---|---|
| **D3 Provost (only applicable for Comprehensive Periodic Evaluations)** | Having reviewed the evaluation indicated above, I |
| **Comments:** | |

D3 Submitted by:

Part E: Faculty Response I would like to express my greatest appreciation for Dr. Armanios, our faculty, and staff. Without your inputs, wisdom, and supports, it would be impossible to achieve what we have achieved this year. I look forward to work with everyone in the coming year on two priorities: 1) review and restructure, if necessary, the PhD curriculum, and 2) cultivate teaching excellency.

| | |
|---|---|
| **E1 Faculty Member** | **I acknowledge having received and read this evaluation and any appended documentation.** |

Part E Submitted by: Haiying Huang

Message

| | |
|---|---|
| **From**: | Huang, Haiying [huang@uta.edu] |
| **Sent**: | 2/1/2024 8:33:59 AM |
| **To**: | Chakravarthy, Animesh [animesh.chakravarthy@uta.edu]; Taylor, Robert M [TAYLORRM@uta.edu]; Adnan, Ashfaq [aadnan@uta.edu]; Lu, Frank K [franklu@uta.edu]; Tong, Albert Y [tong@uta.edu] |
| **CC**: | Armanios, Erian A [armanios@uta.edu] |
| **Subject**: | FW: Doctoral program review kick-off-meeting |
| **Attachments**: | BS2PhD Degree Plan.docx |

Good morning, esteemed TDC Chairs,

I hope you will be able to attend Friday's doctor program review meeting. As Dr. Nomura mentioned at yesterday's meeting, we are facing some challenges in the course enrollment and qualifying exams. I hope we can address these challenges collectively at the meeting. The participation of the doctoral "core faculty" is critical for this purpose. Please encourage the "core faculty" at your TDC to attend.

Please send me the "core faculty" excel file ASAP. I have received it from fluids and Thermal TDCs. Thanks, Albert and Frank!

See you tomorrow.

Haiying

---

**From:** Priester, Kathleen Merz <priester@uta.edu>
**Sent:** Wednesday, January 31, 2024 4:47 PM
**To:** Hampton, Dorothy L <dlhampton@uta.edu>
**Cc:** Huang, Haiying <huang@uta.edu>
**Subject:** FW: Doctoral program review kick-off-meeting

Dorothy,
We have 14 attending as of now, 5 declined. I just sent a reminder to those that have not responded. I would go ahead and order lunch for 20 (probably two sandwich trays, a few veggie wraps, chips, and a dessert tray.
Thanks,
Kathy P

Message

**From**: Huang, Haiying [huang@uta.edu]
**Sent**: 2/26/2024 12:00:17 PM
**To**: Armanios, Erian A [armanios@uta.edu]
**Subject**: materials for Wed's discussion
**Attachments**: Enrollment-Sp18-Sp24.xlsx; Five methods for managing conflict.pdf; 37msp_tools_conflict_styles_37.pdf

Good morning, Erian,

I trust you had a nice weekend. In preparation for this Wed's meeting, I am sending you the enrollment data for our graduate courses.

The graduate program review meetings had been focused on addressing a persistent challenge, i.e., some of our graduate courses do not make. In spring 2024, 10 out of 25 courses offered did not make. 3 were core courses. In a survey conducted at the 2nd graduate program review meeting, 75% (12 out of 16) of faculty who responded either strongly agreed (5) or agreed (7) that "Some of the courses that did not make in the last two semesters are essential for our PhD programs". 3 were neutral. Only 1 disagreed. While this challenge is not a recent phenomenon, our recent drop on MS enrollments could further exacerbate the problem. The attached enrollment data from sp2018 to sp2024 give you more details.

From our Friday's conversations, it was clear that there were differing perspectives between yourself, some ME/AE CAP members, and myself regarding the approach taken to address this challenge. To reconcile these differences constructively, I propose adopting a structured conflict resolution framework. From my past experiences, a structured framework for decision making provides consistency, comprehensiveness, and fairness when dealing with difficult and important decisions. Through this approach, I am optimistic that we can reach a mutually satisfactory resolution and foster a stronger working relationship moving forward.

If you agree to this approach, I would appreciate the opportunity to discuss and agree upon a specific framework at the beginning of our Wed's meeting. I am attaching two documents that are related to the Thomas-Kilmann Conflict Mode Instrument. If you prefer or have experience with other frameworks, please let me know so I can study them before Wed's meeting.

I look forward to a productive meeting on Wed. I have no doubt that both of us want to improve our graduate program to better serve the needs of our students and faculty.

Haiying Huang, PhD
Professor and Associate Chair, Dept. of Mechanical and Aerospace Engineering
University of Texas Arlington
500 W. First Street, WH211
Arlington, TX 76019
817-272-0563
astl.uta.edu

**From:** "Love, Amber Hannah" <amber.love@uta.edu>
**Sent:** Tuesday, September 3, 2024 9:49 AM CDT
**To:** "20234443+uta@efc.maxient.com" <20234443+uta@efc.maxient.com>
**Subject:** FW: [Maxient] IR #00056153 Harassment Retailiation - On-Campus Off-Campus Online - 03/21/2024 12:30 PM
**Attachment(s):** IR00056153.pdf *9kb*

**From:** Haiying Huang (via Maxient) <notifications@maxient.com>
**Sent:** Tuesday, May 21, 2024 5:27 PM
**To:** Love, Amber Hannah <amber.love@uta.edu>
**Subject:** [Maxient] IR #00056153 Harassment Retailiation - On-Campus Off-Campus Online - 03/21/2024 12:30 PM

[External]

#00056153
Secondary recipient (you were copied)

## Harassment, Discrimination and Retaliation On-Line Complaint Form

**Reporting Party**

Type of Complaint
**Harassment**
**Retailiation**
Urgency of this report
**Normal**
Date of incident
**2024-03-21**
Time of incident
**12:30 PM**
Location of incident
**On-Campus**
**Off-Campus**
**Online - by email**

**Involved Parties**

**Erian Armanios** () Male Respondent (alleged perpetrator)

**Questions**

If this is a discrimination or harassment complaint, please indicate the protected status(es) that is/are the basis of the alleged behavior.
**Race/Ethnicity, Nationality, Sex/Gender**

Describe the incident(s)/event(s) including date, times, locations, and any potential witnesses to the behavior.
**I questioned Dr. Armanios why he trusted my male colleagues more than me on 2/23/2024 and shared with him my knowledge of discriminative actions in the department on 2/28/2024. The Chair requested my resignation on 3/1/2024, citing that he needs someone more experienced and that I am hurting the collegiality of the department. I believe my termination is a retaliation because I questioned the chair's and some colleague's discriminative behaviors. He then terminated me without gave me any reason on 3/21/2024. I believe my termination is a retaliation because I questioned the chair's and some colleague's discriminative behaviors.**

Describe the impact the behavior has had on you.
**financial losses, emotional distress, damage to reputation and future leadership opportunities**

Have you taken any action to stop the behavior?
**Yes**

If you have taken action to stop the behavior, what actions have you taken and what was the outcome?
**I questioned Dr. Armanios why he trusted my male colleagues more than me on 2/23/2024 and shared with him my knowledge of discriminative actions in the department on 2/28/2024. He retaliated by terminating me without any justification.**

**I emailed Dr. Armanios and asked him to resolve the issue with the help of the faculty Ombudsman. He did not respond.**

Please add any additional information that supports your complaint.

What remedy are you seeking?
**I would like to request an investigation to establish the facts. I will then seek proper remedies based on the findings.**

Are there additional complainants other than yourself (if you are reporting as a complainant)?
**No**

For information on UTA's Privacy Policy, please see:

**Supporting Documentation**
**No additional documents were attached to this report.**

**Submitted By**
Your full name
**Haiying Huang**
Your position/title
**Professor of Mechanical and Aerospace Engineering**
Your email address
huang@uta.edu
Your phone number
**8172720563**
Your physical address
**500 W. First Street, WH315F**
***[UNAUTHENTICATED]***

**Routing Information**
Primary recipient:
**Michelle Willbanks (Director EOS, TITLE IX COORDINATOR)**
Copied recipients:
- Amber Hannah Love

Text msg recipients: None
Originating IP address: 129.107.152.218
Submitted through IR layout #40
Processed by routing rule #87. Routed to Michelle Willbanks, Director EOS, TITLE IX COORDINATOR.

**Message sent by Maxient**
**Replies will be sent to the submitter ([illegible]).**

UNIVERSITY OF TEXAS ARLINGTON

## Title IX Office

August 22, 2024

Erian Armanios
Sent electronically to armanios@uta.edu

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2023444301

Attached please find a **draft** of the EOS investigation report in the above referenced case. The release of this investigation report is associated with an EOS complaint per UTA EI-P04 (https://policy.uta.edu/doctract/documentportal/08D89616FAD6C6A425EEC76FFA2FBFD8).

A complainant and respondent have the right to review the investigation report and make any comments desired for a period of 3 days. The deadline for comments in this case is August 27, 2024. Responses must be submitted in writing to the Investigator and may not be submitted by the Advisor. The Investigator in this case is Hannah Love and she can be reached at amber.love@uta.edu. Investigators will consider all timely responses.

Once the deadline for comments has passed a notification of the final outcome of the case will be sent to the complainant and respondent.

Amber Hannah Love
Title IX Investigator

CC: Haiying Huang
Michelle Willbanks

to accept outcomes that may not agree with their position if they see that they have been genuinely listened to, and that their feedback has been considered when reaching a decision.

Rather than addressing the needs of faculty's concern, discussed at the 2/23/2024 meeting, Dr. Huang printed out a summary of the 'Thomas-Kilmann model' for conflict resolution. Dr. Armanios did respond by underscoring again that the conflict is not between him and Dr. Huang, but between her and the faculty and that he was expecting from her a plan to address faculty concerns as discussed at the 2/23/2024 meeting, to reconcile differences and move forward.

Dr. Huang alleged statement 'we should part ways' of Dr. Armanios or that he asked her to submit her resignation on Friday 3/1/2024, is not true. He told her "we cannot continue this way." He emphasized his conflict of commitment by sharing with her, his other time commitments, and workload by going through his schedule the day before. He underscored that he can't continue to commit time to mitigate increasing conflicts between her and the faculty. Engagement of faculty and seeking diversity of inputs, in reaching consensus, has been the strength of the department. He emphasized to Dr. Huang that her approach is undermining this core value, and that faculty work "with" rather than "for" the department's leadership. And that she needs to focus on regaining this trust. Her reading the situation through a distorted 'glass cliff' lens, reflects sadly her inability to comprehend that leadership is about **engagement** rather than **imposition**. The "glass cliff" reference where women are promoted to higher positions during times of crisis to set them up for failure, is utterly wrong in this situation as evidence by facts! The department has a stellar teaching, research and service records, and Dr. Huang was offered the Associate Chair position as an opportunity to progress, shine and continue this stellar performance.

Dr. Huang's allegation about asking her to submit her resignation on Friday 3/1/2024 is clearly contradicted by the trail of emails from her on 3/5/2024 to the MAE Committee Chair and his verbal reply indicated on 3/6/2024 as she continues to carry out her associate chair duties pertaining to the PhD programs. Do notice in Dr. Huang's 3/5/2024 the last sentence:

*Let me know when you plan to have the MAECAP meeting. The week of 3/18 works for me but I will be traveling in the week of 3/25,*

Clearly indicating that she is carrying her Associate Chair duties on 3/5 and beyond, as well as an acknowledgment of Dr. Huang's process, underscored in the 3/6/2024 MAE Committee Chair: *I personally don't think it's a good idea to continue with a framework that came from a contentious process.*

The email trail between Dr. Huang and Dr. Armanios, 3/14/2024 through 3/22/2024 (provides further evidence that Dr. Huang was still carrying on her duties as Associate Chair. Of significance is the fact that Dr. Huang ignored Dr. Armanios's request for a plan to address faculty concerns as discussed at the 2/23/2024 meeting, to reconcile differences and move forward. Do notice the sequence:

retaliated by terminating me without any justification. I emailed Dr. Armanios and asked him to resolve the issue with the help of the faculty Ombudsman. He did not respond."

**Parties to the Investigation**

**Complainant – Dr. Hiaying Huang**

**Respondent – Dr. Erian Armanios**

**Witnesses:**

Dr. Nora Ameri
Dr. Alan Bowling
Dr. Paul Davidson
Dr. Stefan Dancila
Dr. Zhen Han
Dr. Catherine Kilmain
Dr. Andrew Makeev
Dr. Nancy Michael
Dr. Seiichi Nomura
Dr. Brian Dennis
Dr. Rassel Raihan
Dr. Kamesh Subbarao

## Complainant

**Dr. Hiaying Huang**

> **Investigator's Note: In response to reviewing the written account of her interview with the EOS/IX team, Dr. Huang returned the interview notes with significant additions and revisions. Her submission, altered for formatting but otherwise unedited, is replicated below.**

Dr. Huang alleges that Dr. Armanios removed her from her Associate Chair position based on her sex, race, and national origin and the reasons that Dr. Armanios provided for her termination are pretexts. She also alleges that Dr. Armanios retaliated against her because she questioned Dr. Armanios why he does not support her work and why he trusted those who complained about her more than he trusted her, and because she reported harassment of her by some male colleagues and the disparate treatment of female faculty. Dr. Huang reported a long history of issues that occurred during her tenure as the associate chair. She believes these incidents establish a pattern of disparate treatments of her by Dr. Armanios as compared to her male colleagues and pervasive harassment of her by these colleagues.

The main event that led to Dr. Huang's termination was the doctoral "core" faculty meetings she conducted. In an email sent on 4/26/2024 explaining the reasons for her termination, Dr. Armanios told Dr. Huang that "the main issue is with the faculty" and "I can't afford to continue devoting time and effort to mitigate rising conflicts at every step." Dr. Huang subsequently talked to faculty who attended these meetings and confirmed that Dr. Armanios did not talk to

committees and Dr. Subbarao was the graduate advisor for many years. Neither of them nor the previous associate chair, Dr. Wilson, took initiatives to address these challenges. Dr. Armanios tasked Dr. Huang to resolve some of the challenges within a year because the department will have the graduate program review in spring 2025.

3. **Lack of support from superior**: in multiple occasions, Dr. Armanios backtracked the decision he and Dr. Huang agreed upon when there was resistance from male colleagues. Dr. Armanios took the position of the male colleagues before even talking to her. He rejected Dr. Huang's suggestion to adopt a structured conflict resolution framework to make the meeting more efficient and then blamed her for taking too much of his time trying to resolve the conflict.
4. **High expectations**: Dr. Armanios frequently compared Dr. Huang to Dr. Wilson, who was a white male, one of the most senior faculty in the department, and had served as an administrator for decades. Dr. Armanios commented that he never received faculty complaints when Dr. Wilson was the associate chair. He also said Dr. Wilson never questioned his decisions when Dr. Huang asked questions about the teaching load assignments of assistant professors.
5. **Constant criticisms:** some of Dr. Huang's male colleagues constantly criticized Dr. Huang's decisions and frequently complained to Dr. Armanios without talking to her first. Dr. Armanios criticized Dr. Huang's character, telling her that her style is too direct, and she is a poor communicator. During summer 2023, he told her that he received complaints about her without giving her any specifics every time they met. This kind of conversation stopped when she started asking for the specifics.
6. **Harassment from male colleagues and superior:** Dr. Brian Dennis convinced Dr. Armanios to remove Dr. Huang from committees. He worked behind the scenes to sabotage her work. Dr. Stefan Dancila frequently interrupted her meetings and complained that she imposed her ideas on faculty. The graduate advisors declined to collaborate and then complained that she did not work with them. Dr. Subbarao used bullying language in emails and acted aggressively toward Dr. Huang in front of Dr. Armanios. Dr. Armanios did not say anything about his bullying behaviors. Instead, he praised Dr. Subbarao for "placing collegiality above storms." Dr. Armanios used passive-aggressive, demeaning, and dismissive language in emails, with other colleagues copied. Dr. Armanios was dominating, accusatory, and gaslighting at the 2/23/2024 and 2/28/2024 meetings with Dr. Huang.
7. **Lack of authority:** Drs. Subbarao and Robert Tyler challenged Dr. Huang's authority to enforce the rules and guidelines. Dr. Armanios sided with them and overruled her decisions. The graduate advisors, especially Dr. Seiichi Nomura, refused to collaborate with Dr. Huang, even though she was the associate chair responsible for the graduate programs. He was disrespectful to Dr. Huang at the graduate advisors meetings.
8. **Retaliation:** Dr. Armanios requested Dr. Huang's resignation one week after she questioned his disparate treatment of her and two days after she reported harassments of her and disparate treatment of other female faculty. His attitude toward Dr. Huang changed after she raised concerns that he assigned the only associate chair office to Dr. Subbarao, a more junior male counterpart.
9. **Short tenure**: Dr. Huang was an associate chair for less than two years, despite her perfect performance review.

She requested to meet with Dr. Armanios and invited Dr. Subbarao to join. At the meeting, she explained to Dr. Armanios that she was trying to do her job. She shared the concern that Dr. Subbarao was suggesting his student could lie to circumvent the rule. She was concerned that this would set a precedence that made the rule unenforceable. She told Dr. Armanios that this was not the first time that Dr. Subbarao was caught lying. She told Dr. Armanios that he lied to get the office. Dr. Armanios said "you and Kamesh (Subbarao) have a trust problem". He asked her if she had talked to Dr. Subbarao about it. Dr. Huang told him that she told Dr. Subbarao that they needed to be completely honest with each other for them to work together. Dr. Armanios then downplayed Dr. Subbarao's lie and said that it was simply because Dr. Subbarao wanted that office. When they were almost finished talking, Dr. Subbarao joined the meeting.

He sat across the table from Dr. Huang and started to ask whether the rule had been approved by the faculty and who decides a reason is compelling or not. The meeting got heated. He pointed his finger at Dr. Huang and said: you think you are a rule's person but you did not sign your student's qualifying exam paper last year and I still allowed your student to take the exam. Dr. Huang replied that if she did not follow the rule and he wants to kick the student out of the exam, she will accept that. Dr. Armanios then joined in and agreed with Dr. Subbarao that this is not the right thing to do. Dr. Armanios said turn the page.

She insisted that Dr. Subbarao should send her a written justification because this set precedence for future requests. Dr. Subbarao said "I am not going to do that." When walking out, Dr. Huang told Dr. Armanios that she would let Dr. Armanios decide to handle the case. Dr. Armanios said he did not agree, and she replied, "I do not agree either". When Dr. Huang was back at her office, she received an apologizing email from Dr. Subbarao. She accepted the apology and asked him again to send her a written justification. Dr. Armanios replied to thank Dr. Subbarao for "placing collegiality above storms". Dr. Huang felt that Dr. Armanios was passive-aggressively reprimanding her for causing the storms. After another request, Dr. Subbarao finally sent Dr. Huang a written justification and Dr. Huang followed through to request Dr. Armanios's approval. Dr. Armanios replied that he has already approved the paperwork in UT share. Dr. Huang felt Dr. Armanios was again passive-aggressively communicating to her that he had overwritten the rule they agreed upon.

On 8/24/2024, Dr. Huang went to dinner with one of Dr. Armanios's former students, Dr. Andrew Makeev. Dr. Makeev told Dr. Huang that Dr. Armanios told him "Haiying (Huang) has changed" and "if she is not happy, why does she stay on the job." On 8/29/2023, Dr. Huang commented that "the ME PhD enrollment increased by 500% and ME BS2PhD increased by 400%" in an email. Since the goal of the PreApp was to increase PhD enrollment, she was very proud of this achievement. Dr. Armanios replied to dismiss the achievements and copied the graduate and undergraduate advisors. On 10/24/2023, Dr. Huang contacted Dr. Armanios regarding a student who wanted to quit. Prior to contacting him, she had talked to the AE graduate advisor, Dr. Kilmain, and they had come up with a plan. Dr. Huang wanted to check with Dr. Armanios before acting. She mentioned at the end of the email that she is available in

process and that I would relay it to MAECAP. The members can decide, based on that information, if any further action needs to be taken and what that action might be. That's where I left things. From her email, I can see she would like us to help her finish this initiative. I personally don't think it's a good idea to continue with a framework that came from a contentious process.

I'm copying Erian so he is aware of this latest development. She's anticipating a meeting with MAECAP but that's going to be contingent on whether the members want to go down this road and whether Erian thinks it's a good idea to continue with this. I personally think it makes more sense to start fresh later, after we get feedback from the current graduate review and ABET. I don't know why we are talking about changing things now when we don't even have the results of the review.

## Conclusion and Recommendations

**UTA EI-P04 Nondiscrimination Policy** details that "that no person shall, on the basis of race, color, national origin, religion, age, sex, sexual orientation, disabilities, genetic information, and/or veteran status, be denied employment with or admission to the University; or be excluded from participation in, denied the benefits of, or subject to discrimination under, any program or activity that the University sponsors or conducts." Dr. Huang alleged that Dr. Armanios removed her from her Associate Chair appointment after she reported disparate treatment of women (teaching load). Additionally, Dr. Huang felt harassed and bullied by other faculty, and she indicated feeling that the loss of her position had been due to her national origin and gender.

Dr. Armanios noted his 30-year support of Dr. Huang dating back to his service on her dissertation committee. He indicated that his decision to remove her from the Associate Chair position was purely pragmatic—handling complaints from faculty about Dr. Huang's leadership, communication style and methods of implementing change were consuming too much of his administrative time.

Dr. Huang named faculty that she felt bullied and harassed her on the basis of her gender and in one case national origin. The Investigator interviewed those named individuals as well as other parties that either the Respondent or Complainant suggested could supply information relevant to considering Dr. Huang's allegations.

Dr.s Dennis and Dancila were critical of Dr. Huang's actions both in meetings related to curriculum changes and in faculty meetings during which votes were taken. The Investigator found no evidence that the concerns they voiced were grounded in Dr. Huang's gender or national origin. Dr. Huang felt undermined by Dr. Armanios when certain initial decisions she had championed and believed he supported were not upheld after faculty raised concerns. Dr. Armanios and others pointed to the policies controlling faculty governance and curriculum changes as well as to Dr. Huang's deviations from approved processes as grounds for not proceeding with Dr. Huang's proposed changes.

Dr. Armanios replied that they will meet on Wed 2/28/2024.

During the weekend, Dr. Huang thought things through and decided to have two meetings with Dr. Armanios, one on the curriculum review and one on his support of her work. She decided to discuss the curriculum review first as she wanted to provide an answer to the faculty as to why she cancelled the meeting at the last minute. Feeling that Dr. Armanios was very dominating at the 2/23/2024 meeting, Dr. Huang emailed two documents on conflict resolution and the graduate enrollment data to Dr. Armanios on Monday 2/26/2024. She suggested that they first discuss the conflict resolution framework at the Wed's meeting and follow the framework for discussions.

Dr. Huang's feeling that Dr. Armanios was "very dominating" at the 2/23/2024 meeting, reflects the core difficulty she has dealing with faculty's feedback at the curriculum review and prior meetings. Dr. Armanios shared with Dr. Huang that her reading faculty feedback as resistance has escalated, and the matter has reached a level of being contentious. He underscored that she needs to address that and unequivocally look at the merits of their input and engage them accordingly. He also re-iterated, from his experience, that faculty are willing to accept outcomes that may not agree with their position if they see that they have been genuinely listened to, and that their feedback has been considered when reaching a decision.

On Wednesday 2/28/2024, Dr. Huang printed out two copies of the one-page summary of a conflict resolution framework and brought them to the meeting. Seeing Dr. Armanios had some paper with him, she thought he also printed a copy and commented that "oh, look like you also printed it out" before handing him the one pager. Dr. Armanios took it and put it aside. He said, "I am not going to use that". Dr. Huang asked, "why not?" He said, "because I did not have time to study it."

Rather than addressing the needs of faculty's concern, discussed at the 2/23/2024 meeting, Dr. Huang printed out a summary of the "Thomas-Kilmann model" for conflict resolution. Dr. Armanios did respond by underscoring again that the conflict is not between him and Dr. Huang, but between her and the faculty and that he was expecting from her a plan to address faculty concerns as discussed at the 2/23/2024 meeting, to reconcile differences and move forward.

On Friday 3/1/2024, Dr. Huang met with Dr. Armanios in the morning. He told her how busy he was. He said they should part ways. He told her he needed someone who was more experienced. He mentioned something about the collegiality of the department and told Dr. Huang that she "is tearing the department apart". Dr. Huang said she was not surprised and asked Dr. Armanios if he is familiar with the term "glass cliff". She told him that she wanted to talk to the Dean before handing in her resignation."

Please review those paragraphs and also your records on the date you notified Dr. Huang of the removal of her appointment as Associate Chair.

Dr. Huang alleged statement "we should part ways" of Dr. Armanios or that he asked her to submit her resignation on Friday 3/1/2024, is not true. He told her "we cannot continue this way". He emphasized his conflict of commitment by sharing with her, his other time commitments, and workload by going through his schedule the day before. He underscored that he can't continue to commit time to mitigate increasing conflicts between her and the faculty. Engagement of faculty and seeking diversity of inputs, in reaching consensus, has been the strength of the department. He emphasized to Dr. Huang that her approach is undermining this core value, and that faculty work "with" rather than "for" the department's leadership. And that she needs to focus on regaining this trust. Her reading the situation through a distorted "glass cliff" lens, reflects sadly her inability to comprehend that leadership is about **engagement** rather than **imposition**. The "glass cliff" reference where women are promoted to higher positions during times of crisis to set them up for failure, is utterly wrong in this situation as evidence by facts! The department has a stellar teaching, research and service records, and Dr. Huang was offered the Associate Chair position as an opportunity to progress, shine and continue this stellar performance.

Dr. Huang's allegation about asking her to submit her resignation on Friday 3/1/2024 is clearly contradicted by the trail of emails from her on 3/5/2024 to the MAE Committee Chair and his verbal reply indicated on 3/6/2024 (Appendix A) as she continues to carry out her associate chair duties pertaining to the PhD programs. Do notice in Dr. Huang's 3/5/2024 the last sentence:
*Let me know when you plan to have the MAECAP meeting. The week of 3/18 works for me but I will be traveling in the week of 3/25,*
Clearly indicating that she is carrying her Associate Chair duties on 3/5 and beyond, as well as an acknowledgment of Dr. Huang's process, underscored in the 3/6/2024 MAE Committee Chair: *I personally don't think it's a good idea to continue with a framework that came from a contentious process.*

The email trail between Dr. Huang and Dr. Armanios, 3/14/2024 through 3/22/2024 (Appendix B) provides further evidence that Dr. Huang was still carrying on her duties as Associate Chair. Of significance is the fact that Dr. Huang ignored Dr. Armanios's request for a plan to address faculty concerns as discussed at the 2/23/2024 meeting, to reconcile differences and move forward. Do notice the sequence:

1. Email on Thursday 3/14/ 2024 from Dr. Armanios: *Before embarking on this task, there are issues that need to be addressed resulting from our last meeting.*
2. Dr. Huang's reply five days later, on Tuesday (3/19/2024): *It will take some time to resolve the issue you raised at our last meeting. Since PhD recruitment is time sensitive, If possible, I would like to send out the email to the faculty this week*
3. Dr. Armanios's reply one day later, on Wednesday (3/20/2024): *Because this is time sensitive, we need to address the issues raised in our last meeting first. Let's meet today ..*
4. Dr. Huang's reply the same day, Wednesday (3/20/2024): *I do not think I am ready to meet in person and discuss the issue you raised in our last meeting yet. Is there some ways we can communicate by email and try to resolve the PhD recruitment process or the issue?*
   Still ignoring Dr. Armanios's request for a plan! Dr. Huang's unwillingness to be responsive despite reminders urging her, reflects a persistence for driving her own agenda, disregarding feedback and in this case a request from the Department Chair. As such, Dr. Armanios reached the decision to relieve Dr. Huang from her duties as Associate Chair on Thursday 3/21/2024
5. Dr. Huang's reply one day later, on Friday 3/22/2024 acknowledges the date of the decision: *Who will be the replacement and when do you plan to announce the change to the department?*

## Appendix A

1. Email from Dr. Huang to the MAE Committee Chair, Tuesday 3/5/2024
2. Email from MAE Committee Chair, Wednesday 3/6/2024

## Appendix B

1. Email on Thursday 3/14/ 2024 from Dr. Armanios:
2. Dr. Huang's reply five days later, on Tuesday 3/19/2024
3. Dr. Armanios's reply one day later, on Wednesday 3/20/202
4. Dr. Huang's reply the same day, Wednesday 3/20/2024
5. Dr. Armanios decision to relieve Dr. Huang from her duties as Associate Chair on Thursday 3/21/2024
6. Dr. Huang's reply one day later, on Friday 3/22/2024

## Dr. Huang's Formal Complaint Allegations

I am deeply saddened by Dr. Huang's utterly wrong belief that her being relieved of her duties as Associate Chair is "*a retaliation because I questioned the chair's and some colleague's discriminative behaviors*"! To place my deep sadness into context, I would offer my long history of relentless support of Dr. Huang starting from the time I have known her as graduate student at Georgia Tech (GT) in the mid- 90s. I was a member of her PhD Thesis Committee, wrote subsequently letters of support for her application to a Post Doctoral position at GT and to the US Immigration and Naturalization Service for her permanent residency petition. Upon joining UTA as department Chair in 2009, I strongly recommended her for early tenure and promotion to the rank of Associate Professor, and four years later to promotion to the rank of Professor. I nominated her for the COE Excellence in Research Award, the COE Award for Distinguished Record of Research, the COE Award for Outstanding Research Achievement or Creative Accomplishment, and of course for the Executive Leadership in Academic Technology, Engineering and Science (ELATES) program, that led to her appointment as Associate Chair.

Attached in Appendix A, copies of support letters for her application to a Post Doctoral position at GT and to the US Immigration and Naturalization Service for her permanent residency petition; nomination for the COE Excellence in Research Award, the COE Award for Distinguished Record of Research, the COE Award for Outstanding Research Achievement or Creative Accomplishment, the Executive Leadership in Academic Technology, Engineering and Science (ELATES) program, and recommendation for her appointment as Associate Chair. Due to confidentiality Appendix A does not include my recommendation for Dr. Huang's early tenure and promotion to the rank of Associate Professor, and four years later to promotion to the rank of Professor.

Since the specific content associated with the dates cited in the Notice of Formal Complaint (2/23/2024, 2/28/2024, 3/21/2024) is not included and in the interest of time to meet the preferred 7/8/2024 date, I am replying to the one cited specific allegation, namely:

Dr. Huang alleges that "... *He retaliated by terminating me without any justification. I emailed Dr. Armanios and asked him to resolve the issue with the help of the faculty Ombudsman. He did not respond.*"

This is simply false. I replied to Dr. Huang's email on Friday April 26, 2024, at 9:58 AM. To which Dr. Huang responded on Friday April 26, 2024, at 10:25 AM, as evidenced in Appendix B.

Mindful of MAE faculty time, I am limiting my list of witnesses to the following:

1. Dr. Seiichi Nomura and Dr. Ratan Kumar, in their capacity as ME Graduate Advisors
2. Dr. Alan Bowling, Chair of MECAP
3. Dr. Andrew Makeev, who participated in several meetings initiated by Dr. Huang
4. Dr. Kathy Kilmain, AE Graduate Advisor, and Dr. Nora Ameri; both faculty members would also attest to my staunch support of women faculty.

Feel free to contact all MAE women faculty to confirm my staunch support for their professional development

# APPENDIX A

Support Writings over the years for Dr. Huang:

1. Application to a Post Doctoral position at GT,
2. US Immigration and Naturalization Service for permanent residency petition,
3. Nomination for the COE Excellence in Research Award,
4. Nomination for the COE Award for Distinguished Record of Research,
5. Nomination COE Award for Outstanding Research Achievement or Creative Accomplishment,
6. Nomination to the Executive Leadership in Academic Technology, Engineering and Science (ELATES) program,
7. Recommendation for appointment as Associate Chair, and
8. ABET Successful nomination.

September 26, 1999

Professor Robert G. Loewy
Chairman
School of Aerospace Engineering
Georgia Institute of Technology
Atlanta, GA 30332-0150

Ref: Recommendation Letter for Dr. Haiying Huang

Dear Professor Loewy:

It is my pleasure to recommend Dr. Huang for a Post Doctoral Position in the School of Aerospace Engineering.

I have known Dr. Huang as a member of her Ph.D. Thesis Committee. The solution she has developed in her thesis is new and bound to be a benchmark against which other numerical simulations are validated. The anisotropic nature of composites introduces coupling of deformation modes and makes it challenging to cast crack growth predictions in closed-form. Her ability to implement a dislocation formulation to this end reflects unusual technical command of mathematical tools in general and anisotropic elasticity in particular.
The point to make about Haiying is her dedication, hard working nature and ability to perform with little or no supervision. She will be a valuable addition to our program in fracture of composites. I strongly recommend her for the position.

Sincerely,

Erian Armanios
Professor,
School of Aerospace Engineering, and
Director,
Georgia Space Grant Consortium

October 7, 1999

Mr. James J. Burzynski
Center Director
United States Immigration and Naturalization Service
Texas Services Center
P. O. Box 852135
Mesquite, TX 75185-2135

Dear Mr. Burzynski:

I am writing this letter to express my support for Dr. Haiying Huang's petition for the permanent residency of the United State of America, under the category of National Interest Waiver.

I have known Dr. Haiying Huang since she came to Georgia Institute of Technology as a Ph.D. student five years ago. Serving on her thesis committee gave me ample opportunity to evaluate her research results and technical competency. It is my strong belief that Dr. Huang's research in composite materials is outstanding and is beneficial to our nation's interests.

I am the Director of the Georgia Space Grant Consortium and Professor in the School of Aerospace Engineering, at the Georgia Institute of Technology. The Georgia Space Grant Consortium, is administered by NASA and is part of the National Space Grant College and Fellowship Program. The program, established in response to the need for a coordinated effort to help maintain America's preeminence in aerospace science and technology, is a network of numerous industries, government agencies, non-profit organizations, and over 400 universities

I have 25 years of experience in the area of Aerospace Structures. This includes analysis and design of advanced composite structures, failure characterization and damage modeling of laminated composites, computational solid mechanics, elastic tailoring of composites, energy dissipation and use of active materials for flow control. I hold two patents and have published over 70 articles in refereed journals, conference proceedings and parts of books and edited three books on *Interlaminar Fracture of Composites*, on *Fracture of Composites* and *Fatigue and Fracture of Composites*. I am the editor of *Key Engineering Materials*, published by Trans Tech Publications and member of the editorial board for the *Journal of Composites Technology and Research* published by the American Society for Testing and Materials and the *Journal of the National Technical Association.*

Over the last fifteen years I have worked on several research programs funded by NASA, the National Science Foundation, the Army Research Office, the Air Force Office of Scientific Research, the National Rotorcraft Technology Center and industry totaling over $ 5 M. The

attached Biography provides details of awards and other accomplishments in my field of expertise.

The solution Dr. Huang has developed in her thesis is new and bound to be a benchmark against which other numerical simulations are validated. The anisotropic nature of composites introduces coupling of deformation modes and makes it challenging to cast crack growth predictions in closed-form. Her ability to implement a dislocation formulation to this end reflects unusual technical command of mathematical tools in general and anisotropic elasticity in particular. Advancements in composite mechanics are key to maintaining this nation's competitive edge in aerospace structures.

Dr. Huang's research work has been disseminated among the material research society through publications at peer-reviewed journals and proceedings of international conferences. Her extraordinary research ability not only contributes to the materials research here at Georgia Tech but also benefits the nation's aerospace technology as a whole.

Material research and development play an important role in today's aerospace technology. Our ongoing research is resulting in technologies that will make aerospace flight cost effective and safe. Dr. Haiying Huang has already established her solid credentials in the research of advanced materials. Her broad engineering background, exceptional analytical abilities, and strong problem resolution skills are unique. I believe it is to the nation's best interest to approve Dr. Huang's application for the permanent residency. She has my strongest recommendation.

Should you have any question, I can be reached at 404-894-8202 or by Email: erian.armanios@ae.gatech.edu.

Erian Armanios, Ph.D.
Professor of Aerospace Engineering, and
Director of the Georgia Space Grant Consortium

UNIVERSITY OF TEXAS ARLINGTON | MECHANICAL AND AEROSPACE ENGINEERING

**Date:** December 3rd 2014

**To:** CoE Awards Committee

**Re:** Dr. Haiying Huang's nomination for the College of Engineering Excellence in Research Award

I am pleased to nominate Professor Haiying Huang for the College of Engineering Excellence in Research Award. Prof. Huang is the head of MAE's Advanced Sensor Technology Lab. Since joining UTA in 2006, she has established an innovative and unique research program focusing on smart sensing and monitoring techniques. These techniques are central to damage assessment of composites and metallic structures as well as biomedical health monitoring.

In 2013-2014, Prof. Huang was awarded six grants from highly competitive programs such as the DOD Congressionally Directed Medical Research Program (CDMRP), the DOE University Coal Research (UCR) Program, DOD Defense University Research Instrument program (DURIP), to name a few. Totaling $2.2M, these projects reflect her broad, cross-disciplinary expertise and talent, ranging from intelligent prosthetic sockets, wireless high temperature sensors, optical fiber sensors, to the study of metal fatigue at early stages. Most of these projects are collaborative efforts involving researchers from different disciplines (e.g. orthopedics, materials science, polymer and physical therapy) with Prof. Huang as the driving, resourceful lead PI. Overall, Prof. Huang has received 24 grants totaling more than $4.5M in the past ten years.

Her peers consider her recent research in the area of passive wireless sensors groundbreaking. This technology has received sustained funding from multiple federal and state agencies, including the NSF CAREER award. It represents a paradigm shift that may fundamentally change the health monitoring of critical engineering structures as well as biological systems since they do not need a radio or a battery to operate and can form densely distributed sensor networks. Prof. Huang's group has validated the operational principles of microstrip patch antennas for wireless sensing of strain, cracks, temperature, shear stress and pressure. In addition, they have also demonstrated that antenna sensors can be multiplexed to form networks based on frequency partitioning. Prof. Huang's pioneering work has laid a solid foundation for this promising sensor technology, as summarized in a review paper recently published. Currently, Prof. Huang's group is expanding this sensor technology for high temperature applications and wearable sensing systems with support from the DOE UCR program and the DOD CDMRP. Her international standing is eloquently reflected by the number of invited talks on wireless sensor technologies at universities worldwide.

In addition to her work on wireless sensing technologies, Prof. Huang is performing fundamental researches on piezoelectric ultrasound transducers and early fatigue damage of metallic materials. She has published highly cited papers on the electro-mechanical conversion of piezoelectric wafer transducers. Her work establishes the theoretical foundation that underscores the importance of actuator bending and adhesive layer in piezoelectric wafer sensor on ultrasound generation- - -crucial for optimum design of ultrasound transducers. Prof. Huang's work on understanding early fatigue damage represents a new direction in addressing an age-old challenge. Collaborating with Dr. Meletis, Prof. Huang's group has convincingly demonstrated that the surface roughness of metallic materials is

strongly correlated to fatigue cycles throughout the entire fatigue life. This discovery points to a new area of research, namely, micro/nano-scale fatigue damage using surface profiling techniques. With recent support from the Air Force Office of Scientific Research (AFOSR) and the capital equipment purchased under the DOD DURIP grant, Prof. Huang is bound to make significant contributions to the study of early fatigue damage and the development of effective techniques for damage arrest and containment.

Prof. Huang has established a state-of-the-art research laboratory that performs frontier research across engineering disciplines. She has successfully integrated her research with education by developing a new course on Structural Health Monitoring (SHM) and providing hands-on research experience to undergraduate students. The students get a glimpse of the excitement of discovery and innovation leading to such prestigious recognitions as the 2014 Air Force summer intern fellowship, the 2012 Boeing Engineering Student of the Year award (first award in history given to an undergraduate student) and the 2012 Goldwater scholarship (first award in UTA's history).

Prof. Huang has published 92 journal and conference papers. According to Google Scholar, three of Dr. Huang's papers received high citation numbers. The success and productivity of her graduate students point to her ability to provide challenging, interdisciplinary, mentoring. In addition, Prof. Huang has five US/world patents granted and four patent applications under review.

Prof. Huang is the editor for a book series: Series in Sensors, CRC Press, Taylor & Francis Group. She has also worked diligently as an organizing committee member for several SHM and sensor conferences. In addition, she actively serves as a reviewer, conference organizer, committee member, session chair and consultant as well as serving on several committees within the University and the Department.

In summary, I strongly support Prof. Huang's nomination for the College of Engineering Excellence in Research Award. Her track record in research and innovation merit such recognition!

Sincerely,



Erian Armanios,
Professor and Chair

UNIVERSITY OF TEXAS ARLINGTON | MECHANICAL AND AEROSPACE ENGINEERING

**Date:** October 27, 2021

**To:** CoE Awards Committee

**Re:** Dr. Haiying Huang's nomination for the COE Award for Outstanding Research Achievement or Creative Accomplishment

I am thrilled to nominate Professor Haiying Huang for the COE Award for Outstanding Research Achievement or Creative Accomplishment. My nomination stems from her seminal work connecting longitudinal vibration, a well-known mechanical engineering concept, to Fabry-Perot resonator, a concept obscure to many mechanical engineers. The journal paper she published in *Mechanical Systems and Signal Processing* represents the pinnacle of basic research. Innovations happen at the intersection of disciplines and Prof. Huang work is an eloquent example bound to lead to major breakthroughs.

What is unique about Dr. Huang is that she challenges herself to conduct research on areas that are off the beaten path - a testament to her daring intellect and acumen. Being an Aerospace Engineer, she carved out several niche research areas in sensor research and development, a field dominated by electrical and computer engineers. Her research works on optical fiber and microwave sensors were highly competitive in attracting federal funding. In this work, Prof. Huang imparted her knowledge in optics to a core concept in Mechanical and Aerospace Engineering. Her research challenges traditional concepts and forge path beyond established norms. An prominent example is her development of wireless sensors for structural health monitoring with applications to early detection of breast cancer

Remarkable is Professor Huang's ability to adapt to a changing research environment. Noteworthy is the volume of work presented included in her application, carried out in the past two years and in the middle of the Pandemic. Prior to the pandemic, her research was heavily experiment-oriented. The limited physical lab access prompted her to switch to simulation leading to novel results in a short period, as well. In addition to her own research work, she also dedicated her time to developing training materials for her lab team as they had to shelter in place. The training include a systematic well-being checkup that enabled opportunities to connect with them on a personal level.

Prof. Huang's standing within her research community is evidenced by the leadership roles she assumed in organizing the SPIE Smart Structures + Non Destructive (NDE) symposium, one of the two largest technical meetings in her field. The symposium consists of nine conferences covering topics from biomimetics, electroactive polymer actuators, to sensors and smart structures. Following her serving as the chair of the largest conference in the symposium for

two years, Prof. Huang is currently the co-chair of the entire symposium and will assume the symposium chair position within two years. Prof. Huang eloquently represents UTA's visibility, standing and leadership within the Smart and NDE community!

Professor Huang's creative approach to engineering research and education is a powerful example that celebrates the COE Award Outstanding Research Achievement or Creative Accomplishment. She is most deserving!

Sincerely,

Erian Armanios,
Professor and Chair

E: armanios@uta.edu

UNIVERSITY OF TEXAS ARLINGTON | MECHANICAL AND AEROSPACE ENGINEERING

**Date:** October 20, 2022

**To:** CoE Awards Committee

**Re:** Dr. Haiying Huang's nomination for the COE Award for Distinguished Record of Research

I am thrilled to nominate Professor Haiying Huang for the COE Award for Distinguished Record of Research. My nomination stems from her sustained record of seminal contributions in Structural Health Monitoring. Of note, is her work connecting longitudinal vibration, a well-known mechanical engineering concept, to Fabry-Perot resonator, a concept obscure to many mechanical engineers. The journal paper she published in *Mechanical Systems and Signal Processing* represents the pinnacle of basic research. Innovations happen at the intersection of disciplines and Prof. Huang work is an eloquent example bound to lead to major breakthroughs.

What is unique about Dr. Huang is that she challenges herself to conduct research on areas that are off the beaten path - a testament to her daring intellect and acumen. Being an Aerospace Engineer, she carved out several niche research areas in sensor research and development, a field dominated by electrical and computer engineers. Her research works on optical fiber and microwave sensors were highly competitive in attracting federal funding. In this work, Prof. Huang imparted her knowledge in optics to a core concept in Mechanical and Aerospace Engineering. Her research challenges traditional concepts and forge path beyond established norms. An prominent example is her development of wireless sensors for structural health monitoring with applications to early detection of breast cancer

Remarkable is Professor Huang's ability to adapt to a changing research environment. Noteworthy is the volume of work presented included in her application, carried out in the past two years and in the middle of the Pandemic. Prior to the pandemic, her research was heavily experiment-oriented. The limited physical lab access prompted her to switch to simulation leading to novel results in a short period, as well. In addition to her own research work, she also dedicated her time to developing training materials for her lab team as they had to shelter in place. The training include a systematic well-being checkup that enabled opportunities to connect with them on a personal level.

Prof. Huang's standing within her research community is evidenced by the leadership roles she assumed in organizing the SPIE Smart Structures + Non Destructive (NDE) symposium, one of the two largest technical meetings in her field. The symposium consists of nine conferences covering topics from biomimetics, electroactive polymer actuators, to sensors and smart structures. Following her serving as the chair of the largest conference in the symposium for two years, Prof. Huang is currently the co-chair of the entire symposium and will assume the symposium chair position within two years. Prof. Huang eloquently represents UTA's visibility, standing and leadership within the Smart and NDE community!

Professor Huang's creative approach to engineering research and education is a powerful example that celebrates the COE Award for Distinguished Record of Research. She is most deserving!

Sincerely,

Erian Armanios,
Professor and Chair

MECHANICAL AND AEROSPACE ENGINEERING | The University of Texas at Arlington Box 19018 500 W. First St., Woolf Hall 211 Arlington, Texas 76019-0018
T 817-272-2603 F 817-272-5010 http://www.uta.edu/mae/

**From:** Huang, Haiying
**To:** Armanios, Erian A
**Subject:** RE: Invitation to apply early for the ELATES at Drexel
**Date:** Tuesday, November 10, 2020 8:57:08 AM
**Attachments:** image001.jpg

---

Dr. Armanios,
Thanks a lot for your nomination.
Regards,
Haiying

**From:** Armanios, Erian A <armanios@uta.edu>
**Sent:** Tuesday, November 10, 2020 8:52 AM
**To:** 'Bing,Jennifer' <jlb453@drexel.edu>
**Cc:** Huang, Haiying <huang@uta.edu>; Crouch, Peter E <peter.crouch@uta.edu>; Peterson, Lynn <peterson@uta.edu>
**Subject:** RE: Invitation to apply early for the ELATES at Drexel

Dear Mrs. Bing,
Thank you for the good news. I am joining Dr. Huang in looking forward to her participation in the 2021-2022 ELATES program.
Regards,
Dr. Erian Armanios
Professor and Chair,
T: 817-272-2603
F: 817-272-5010
E: armanios@uta.edu
http://www.uta.edu/mae
cid:image001.jpg@01CB45CB.862B8D80

**From:** Bing,Jennifer <jlb453@drexel.edu>
**Sent:** Tuesday, November 10, 2020 8:30 AM
**To:** Armanios, Erian A <armanios@uta.edu>
**Cc:** Huang, Haiying <huang@uta.edu>
**Subject:** Invitation to apply early for the ELATES at Drexel
**Importance:** High

Dear Dr. Erian Armanios,
Congratulations! I'm pleased to inform you that your ASEE EDGE nomination for Dr. Haiying Huang was selected for early application to ELATES at Drexel. As you know, through our partnership with the ASEE EDGE initiative, we've reserved five fellowship slots for EDGE Dean nominees, and successful applicants will receive a $3,000 travel award from ASEE. Attached is the ELATES application preview guide that illustrates other required documents to complete Dr. Haiying Huang's application.
The application portal link can be found on our ELATES website here:
https://drexel.edu/provost/initiatives/elates/application/

- The **deadline for this early admissions** process is **Friday, November 20, 2020 for applicants.**
- The full application submission for the fellow and **nominators and recommenders is due on Monday, November 30, 2020.**
- ELATES will notify EDGE-nominated applicants of acceptance decisions in late December.

More information about ELATES including the application, is available here: drexel.edu/elates.

Please let me know if we can be of further assistance.

With kind regards,

Jenn

**Jenn Bing**
*Assistant Director, Program Management*
*ELATES at Drexel®*
Tel: 215.895.0415
drexel.edu/elates

**Follow us – ELATES at Drexel!**

LinkedIn Facebook Twitter

Support women leaders by making a gift to ELATES!

| | |
|---|---|
| **From:** | Armanios, Erian A |
| **To:** | Crouch, Peter E; Peterson, Lynn |
| **Cc:** | Jones, Erick C; Rodriguez, Patricia; Sol, Antoinette; Das, Gautam |
| **Subject:** | RE: 2021-22 ELATES at Drexel Fellowship Decision |
| **Date:** | Friday, May 14, 2021 9:29:29 AM |
| **Attachments:** | image001.jpg |

Peter,

As you know, part of the IAP underscored in my recommendation, is preparing Dr. Huang to assume the position of Associate Chair for the ME program. We currently have one Associate Chair for both the AE and the ME programs, Dr. Wilson. Our enrollment and specifics of each program ( ABET is an "ominous" specific) warrant another Associate Chair and is way overdue, as I am increasingly devoting significant time and effort for duties customary expected of an Associate Chair. To this end, I also nominated her in my capacity as ABET Commissioner, to be an ABET Program Evaluator (PEV) and I expect a successful nomination.

Regards and stay well,

Erian

**From:** Crouch, Peter E <peter.crouch@uta.edu>
**Sent:** Thursday, May 13, 2021 5:00 PM
**To:** Peterson, Lynn <peterson@uta.edu>; Armanios, Erian A <armanios@uta.edu>
**Cc:** Jones, Erick C <ecjones@uta.edu>; Rodriguez, Patricia <patricia.rodriguez@uta.edu>; Sol, Antoinette <amsol@uta.edu>; Das, Gautam <gdas@cse.uta.edu>
**Subject:** FW: 2021-22 ELATES at Drexel Fellowship Decision

Lynn

AS I was mentioning earlier….part of the EDGE program…..

Patricia

Need to schedule me a full day out ( probably two days…. Around March 17 2022!

Erian and Lynn and Gautam

We will have to work together and with Haiying to come up with a IAP pertinent to the College…… some sort of strategic planning I imagine…..Ideas?

Thanks

Peter

**From:** ELATES <elates@drexel.edu>
**Sent:** Thursday, May 13, 2021 4:50 PM
**To:** Crouch, Peter E <peter.crouch@uta.edu>
**Cc:** Huang, Haiying <huang@uta.edu>; Geraldine Gooding <G.Gooding@asee.org>
**Subject:** 2021-22 ELATES at Drexel Fellowship Decision

Dear Dr. Peter Crouch,

Thank you for participating in the early application through the ASEE EDGE Initiative. I am pleased to inform you that **Dr. Huang Haiying** has been accepted as a member of the 2021-2022 cohort of Fellows for the ***Executive Leadership in Academic Technology, Engineering and Science (ELATES at Drexel®)*** program. Your nomination, the letters of recommendation from her colleagues, and the evidence of institutional support were important factors in her being selected. Her selection places her among the very best and brightest of today's and tomorrow's women leaders in academic STEM

disciplines. The ASEE will contact you directly regarding the $3,000 travel award.

As you may remember from the application materials, demonstration of institutional support is an important criterion for a candidate's acceptance. Our experience has shown that without strong support from her Dean and school, a Fellow's experience is likely to be diminished, as are the benefits to the institution resulting from her participation.

Over the coming year, there will be opportunities for you to directly influence the quality of your Fellow's ELATES experience.

- In the coming months your Fellow may ask you to respond to a 360° leadership assessment instrument. If you are asked, it will be extremely important that you take the time to provide candid and honest feedback. Learning how you and others perceiver her leadership capabilities will provide her with an important opportunity for self-reflection, insight, adjustment, and/or clarification.
- Each Fellow works on an Institutional Action Project (IAP) addressing a need or priority of your institution. This project should be developed jointly with you or another senior staff person to ensure that it will be meaningful and productive for your institution as well as for her. If you have not already begun this process with her, we hope that you will make yourself available to oversee and support this institutional leadership opportunity for your Fellow.

As part of the application process, you have agreed to attend and participate in the **ELATES Leaders Forum**, which will be a full day on **March 17, 2022**. The Forum is a unique opportunity for Fellows and their institutional leaders to discuss the wide range of organizational change initiatives addressed during the Fellowship year. The core of the Leaders Forum is a poster symposium showcasing the outcomes of the Fellows' IAPs—the capstone of the ELATES Fellowship year. While at the Forum, time is set aside for you or your designee to meet alone with your Fellow to discuss next steps. This time together provides an excellent opportunity for mapping out how she can best utilize her new skills to benefit both her career and the future of the institution. Your presence at the Forum is not only important to your Fellow, it is an important and valued part of your institutional commitment to ELATES. If you will not be able to attend the Forum, please ensure that a very high-level designee is aware of, and committed to participate in, this important discussion with your Fellow.

We have sent your candidate notification of her acceptance and invoice for the program fee due **by May 20, 2021** in order to confirm her place in the upcoming class. Please note that if she withdraws after June 1, 2021, program fees will not be refunded. Fellows are required to attend all three in-person sessions and submit mandatory assignments to qualify for graduation. On the rare occasion that a Fellow is not able to meet these requirements, we will work with her to complete them later. However, Fellows who must return the following year to do so will incur additional travel and room and board fees.

Thank you again for your nomination and for your keen insights that helped the selection committee identify your candidate as one for whom this program would be meaningful. I look forward to your and your institution's participation in ELATES over the coming year and beyond.

If you have any questions, please do not hesitate to contact me at elates@drexel.edu.

Sincerely,

**Erin McNamara Horvat**
*Executive Director, ELATES at Drexel*
**Drexel University**
3141 Chestnut Street

Philadelphia, PA 19104

**From:** Armanios, Erian A
**To:** Huang, Haiying
**Subject:** RE: Welcome to ABET Program Evaluator Training
**Date:** Monday, November 29, 2021 8:49:55 AM

Good morning Haiying,
Congratulations! The training is professionally valuable and timely.
Stay well
Erian

**From:** Huang, Haiying <huang@uta.edu>
**Sent:** Monday, November 29, 2021 9:26 AM
**To:** Armanios, Erian A <armanios@uta.edu>
**Subject:** FW: Welcome to ABET Program Evaluator Training
Dr. Armanios,
Just want to let you know that we was selected to be the ABET evaluator. Thanks a lot for the opportunity.
Have a great week!

Haiying

**From:** abetams@abet.org <abetams@abet.org>
**Sent:** Wednesday, November 24, 2021 2:18 PM
**To:** Huang, Haiying <huang@uta.edu>
**Cc:** garra001@umn.edu
**Subject:** Welcome to ABET Program Evaluator Training

[External]

Dear Haiying Huang,

On behalf of ABET, congratulations on being selected to attend ABET Program Evaluator Candidate Training! You are among a very elite group of individuals selected to represent your professional society at this training.

ABET has collaborated with professional society members to design a training process that we hope you will find engaging and maximize your service as an ABET Program Evaluator.

Registration for the 2022 Program Evaluator Candidate (PEVC) Training cycle will not open until January 2022. You will receive notification at that time with instructions to register for one of the PEVC Training sessions. Note that registration closes seven weeks prior to each session.

Program Evaluator training includes online pre-work and face-to-face training. Once you have registered, additional information will be sent regarding the online pre-work and face-to-face training location and logistics.

If you have any questions, please contact the ABET Training Team at training@abet.org.

Sincerely,
ABET Training Team

415 North Charles Street
Baltimore, MD 21201
410.347.7700
training@abet.org

# APPENDIX B

Reply to Dr. Huang's allegation re: faculty Ombudsman:

1. Email Reply, 4/26/2024, 9:48 AM, and
2. Dr. Huang's Response 4/26/2024, 10:25 AM

**From:** Armanios, Erian A <armanios@uta.edu>
**Sent:** Friday, April 26, 2024 9:58 AM
**To:** Huang, Haiying <huang@uta.edu>
**Subject:** RE: PhD Recruitment Process
**Importance:** High

Good morning Dr. Huang,

Please understand that the main issue is with the faculty, mine is one of time. Faculty appreciate your hard work and dedication, and I do, as well. The issue is in the implementation process. I can't afford to continue devoting time and effort to mitigate rising conflicts at every step. I will be sharing with the faculty the change in Associate Chair today.
Let me re-iterate my appreciation of your hard work and dedication during your tenure and look forward to your contributions in other capacities within MAE and COE as Director of Engineering Education

Regards,

Dr. Erian Armanios
Professor and Chair,

T: 817-272-2603
F: 817-272-5010
E: armanios@uta.edu
http://www.uta.edu/mae

Mechanical & Aerospace Engineering
The University of Texas Arlington
Arlington, TX 76019-0018

Follow MAE on Social Media!

**From:** Huang, Haiying <huang@uta.edu>
**Sent:** Monday, March 25, 2024 9:21 AM
**To:** Armanios, Erian A <armanios@uta.edu>
**Subject:** RE: PhD Recruitment Process

Good morning, Dr. Armanios,

I do not think terminating me at this point reflects well on both of us or the department. I suggest we try to resolve the issue with the help of the UTA faculty ombuds person, Dr. Jacqueline Ann Fay. If you agree, please contact Dr. Fay. Her email is jacqueline.fay@uta.edu.

Either meeting with her separately or together works for me. Because of confidentiality, Dr. Fay cannot contact you.

I believe this process will make our relationship stronger.

Regards,

Haiying

**From:** "Love, Amber Hannah" <amber.love@uta.edu>
**Sent:** Tuesday, September 3, 2024 9:15 AM CDT
**To:** "20234443+uta@efc.maxient.com" <20234443+uta@efc.maxient.com>
**Subject:** FW: [Maxient] IR #00057248 Discrimination - On-Campus Off-Campus Online - 08/22/2024 8:15 AM
**Attachment(s):** IR00057248.pdf *11kb*

**From:** Love, Amber Hannah <amber.love@uta.edu>
**Sent:** Friday, August 30, 2024 11:10 AM
**To:** Willbanks, Michelle <michelle.willbanks@uta.edu>
**Subject:** Fw: [Maxient] IR #00057248 Discrimination - On-Campus Off-Campus Online - 08/22/2024 8:15 AM

Hi,

I sent you the final outcome letter that I have not sent out the parties pending your approval. In the meantime, Dr. Huang has submitted this complaint form. She's indicated in her second email the day after the comment period she anticipated filing more complaints but not against whom.

I'll wait for guidance on what steps you prefer to be taken next.

Hannah

---

**From:** Haiying Huang (via Maxient) <notifications@maxient.com>
**Sent:** Friday, August 30, 2024 11:05 AM
**To:** Love, Amber Hannah <amber.love@uta.edu>
**Subject:** [Maxient] IR #00057248 Discrimination - On-Campus Off-Campus Online - 08/22/2024 8:15 AM

[External]

#00057248
Secondary recipient (you were copied)

**Harassment, Discrimination and Retaliation On-Line Complaint Form**

**Reporting Party**

Type of Complaint
**Discrimination**
Urgency of this report
**Normal**
Date of incident
**2024-08-22**
Time of incident
**8:15 AM**
Location of incident
**On-Campus**
**Off-Campus**
**Online - by email**

**Involved Parties**

**University of Texas Arlington** (1000543128) Female Complainant (alleged victim)
**University of Texas Arlington** () Female Respondent (alleged perpetrator)

**Questions**

If this is a discrimination or harassment complaint, please indicate the protected status(es) that is/are the basis of the alleged behavior.
**Race/Ethnicity, Nationality**

Describe the incident(s)/event(s) including date, times, locations, and any potential witnesses to the behavior.
**Ms. Amber Hannah Love is the investigator of complaint IR00056152 and IR00056153 I filed against the department Chair, Dr. Armanios. On 8/22/2024, I received the draft of the investigation report. In the report, Ms. Love**
**1) Made a determination of no discrimination without reconciling different accounts of the same event by Dr. Huang and Dr. Armanios as well contradictory statements from witnesses.**
**2) Interviewed all white female faculty in the department and none of the Asian female faculty. The omission of the Asian female, who have more knowledge about the circumstances of complaint IR00056152 and IR00056153, is a strong indication of discrimination based on color and nationality.**
**3) Made false statement about my expectation of Dr. Armanios. She did not provide any fact on which she made the statement.**
**Based on the above facts, I am filing a complaint that Ms. Love discriminated against me based on my color and national origin by conducting a biased investigation. Ms. Low is a US born white female and I am a foreign-born colored female.**

Describe the impact the behavior has had on you.
**Deprivation of justice, emotional distress, and significantly interfere with my ability to do my work.**

Have you taken any action to stop the behavior?
**Yes**

If you have taken action to stop the behavior, what actions have you taken and what was the outcome?
**I submitted comments on the investigation report, pointing out the obvious bias of the investigation. The respondent replied and informing that she will review the comments.**

Please add any additional information that supports your complaint.
**The EOS should have access to the investigation report and my comments on the report.**

What remedy are you seeking?
**1. immediately remove Ms. Love as the investigator for complaint IR00056152 and IR00056153**
**2. Since the investigation has been compromised and the entire EOS office has a conflict of interest, I request a faculty hearing panel, organized by the provost's office, to review existing evidence, to conduct additional investigations if necessary, and to make recommendations for complaint IR00056152 and IR00056153 and any complaints related to these two complaints. I will file additional complaints against the faculty who gave false information during the investigation and had harassed me in the past.**

Are there additional complainants other than yourself (if you are reporting as a complainant)?
**I am reporting discrimination on behalf of three other Asian female faculty in the department (Dr. Linda Wang, Dr. Liwei Zhang, and Dr. Hyejin Moon)**

For information on UTA's Privacy Policy, please see:

**Supporting Documentation**

**No additional documents were attached to this report.**

**Submitted By**

Your full name
**Haiying Huang**
Your position/title

Your email address
huang@uta.edu
Your phone number
**8172720563**
Your physical address
**500 W. First Street**
***[UNAUTHENTICATED]***

**Routing Information**

Primary recipient:
**Michelle Willbanks (Director EOS, TITLE IX COORDINATOR)**
Copied recipients:
- Amber Hannah Love

Text msg recipients: None
Originating IP address: 12.50.17.19
Submitted through IR layout #40
Processed by routing rule #87. Routed to Michelle Willbanks, Director EOS, TITLE IX COORDINATOR.

---

**University of Texas at Arlington**
**Report Sexual Misconduct**

*Submitted on August 30, 2024 at 12:17:52 pm CDT*

| | |
|---|---|
| Nature | **Sexual Misconduct** |
| Urgency | **Non-critical** |
| Incident Date and Time | **2024-03-01 9:15 AM** |
| Incident Location | **Woolf Hall Dr. Armanios' office** |

Reported by

| | |
|---|---|
| Name: | **Haiying Huang** |
| Title: | **Professor** |
| Email: | **huang@uta.edu** |
| Phone | **8172720563** |
| Address: | |

Involved Parties

| | | | |
|---|---|---|---|
| **Haiying Huang ()**<br>Complainant (alleged victim) | Female | huang@uta.edu | 8172720563 |
| **Erian Armanios ()**<br>Respondent (alleged perpetrator) | Male | armanios@uta.edu | 1 817 272 2603 |
| **Brian Dennis ()**<br>Respondent (alleged perpetrator) | Female | dennisb@uta.edu | |
| **Alan Bowling ()**<br>Respondent (alleged perpetrator) | Male | bowling@uta.edu | |
| **Stefan Dancila ()**<br>Respondent (alleged perpetrator) | Male | dancila@uta.edu | |
| **Kamesh Subbarao ()**<br>Respondent (alleged perpetrator) | Male | subbarao@uta.edu | |
| **Andrew Makeev ()**<br>Respondent (alleged perpetrator) | Male | makeev@uta.edu | |
| **Nora Ameri ()**<br>Respondent (alleged perpetrator) | Female | nora.ameri@uta.edu | |

Questions

Description of Incident

**Dr. Armanios retaliated again the complainant by asking for her resignation on 3/1/2024 and subsequently terminating her on 3/26/2024 from the associate chair position after the complainant questioned him why he trusted her male colleagues (Dr. Bowling and Dr. Dennis) more than her on 2/23/2024 and shared with the respondent the discriminatory actions of some of her male colleagues (Dr. Dennis and Dr. Kamesh) and disparate treatment of female faculty in the department.**

**Dr. Armanios has consistently made decisions in favor of the male faculty when they complained about the complainant without seeking the input from the complainant, even though the complaints of these male faculty had no merit.**

**Based on these facts, the complainant is filing a complaint of gender-based discrimination on the part of Dr. Armanios and her male colleagues (Drs. Brian Dennis, Alan Bowling, Stefan Dancila, Kamesh Subbarao) as well as two other faculty members, Drs. Nora Ameri and Andrew Makeev, for interfering with EOS investigation of complaint IR00056152 and IR00056153.**

**The evidence supporting the complaint can be found in the investigation report of complaint IR00056152 and IR00056153 and the complainant's comments on the report.**

Location of Incident
**Woolf Hall, emails, EOS investigation report of complaint IR00056152 and IR00056153.**

Witnesses, please include any known contact information including e-mail, phone numbers or other ways to contact the witness. If student id is known include that as well.
**emails and EOS investigation report of complaint IR00056152 and IR00056153.**

Please type your name below to indicate your electronic signature for this report. If you are not a UTA employee and are making an anonymous report, you can type anonymous for signature. UTA employees who are not employed in the Health Center, CAPS or a designated confidential office should under Texas state law include your name.
**Haiying Huang**

If you are a complainant and wish to designate your report as anonymous, please check the box below. The university will do it's best to honor the victim/survivor's request for confidentiality, however, confidentiality is not guaranteed. Most university employees are considered "responsible employees" meaning they are mandated to report Title IX allegations. While a victim/survivor's conversation will be kept private (will not be shared unnecessarily with others), only a conversation with a confidential resource can be kept confidential (will not be shared with anyone without the express consent of the victim/survivor).
**I understand.**

If you are not the complainant please indicate whether the complainant has expressed a desire for confidentiality.

*Pending IR #00057252*
*Submitted from 12.50.17.19. Processed by routing rule #69. Routed to Michelle Willbanks, Director EOS, TITLE IX COORDINATOR.*
*Copies to: amber.love@uta.edu*

Mechanical & Aerospace Engineering
The University of Texas Arlington
Arlington, TX 76019-0018

Follow MAE on Social Media!

**From:** Willbanks, Michelle <michelle.willbanks@uta.edu>
**Sent:** Wednesday, October 2, 2024 3:30 PM
**To:** Armanios, Erian A <armanios@uta.edu>
**Subject:** EOS case filed PERSONAL AND CONFIDENTIAL

Dr. Armanios,
The Equal Opportunity Services/Title IX Office (EOS) has received a complaint filed by Haiying Huang on May 21, 2024. After investigation pursuant to UTA Procedure EI-PR-03"Unlawful Discrimination Investigative Procedure", EOS has determined there is not a violation of UTA EI-P04.
Both the respondent and complainant provided comment to the investigation report. The comments received are attached to the outcome letter. Dr. Huang's submitted two written responses and multiple attachments in her response to the report. The investigator will not go through all the comments provided by either the complainant or respondent in this letter.
Dr. Huang noted in her response that she felt UTA EI-P08 (Sexual Misconduct) should be the governing policy for her complaint based on the portion of her complaint that includes gender/sex. The notice of formal complaint and the investigation report noted for both parties that the investigation fell under UT EI-P04. In that the nondiscrimination policy references UTA EI-P08 for gender/sex issues the relevant definitions related to gender or sex discrimination were considered by the investigator.
Dr. Huang commented that she felt additional witnesses should have been interviewed. The investigator interviewed fourteen people and reviewed more than 200 documents and audio recording provided by the complainant and respondent. Additionally, all the information provided by either party in the comment period has also been reviewed and considered. The conclusion of the report that there is insufficient evidence based on a preponderance standard that UTA EI-P04 Nondiscrimination was violated stands.
Thank you.

Best,

**Michelle Willbanks**
Director EOS,Title IX Coordinator
University Administration Building
701 S. Nedderman Dr.
Arlington, TX 76019
817.272.4585
eoaa.uta.edu
titleix@uta.edu

UNIVERSITY OF TEXAS ARLINGTON

**From:** Meier, Alexandra
**To:** Huang, Haiying
**Subject:** EOS response
**Date:** Wednesday, October 9, 2024 11:13:43 AM

---

Greetings Dr. Huang,

My name is Alex Meier, and I am an EOS/Title IX Investigator at UTA. I am reaching out for two reasons. First, may I ask for your availability to meet to discuss the allegations in the Notice of Formal Complaint sent to you yesterday, October 8, 2024. Second, I wanted to touch base with you as I have been made aware that you have several concerns as well that you would like to bring forward to the EOS office. If you would like to file a complaint with our office please do so here: https://cm.maxient.com/reportingform.php?UnivofTexasArlington&layout_id=40. Doing so will enable me to create a case for you in our system. Please do not hesitate to reach out with questions or concerns.

Respectfully,

**ALEX MEIER (SHE/HER)**
**EOS/Title IX Investigator**

**EOS/Title IX Office**
Alexandra.meier@uta.edu
**Office:** 817-272-3796
Titleix@uta.edu

Office of Legal Affairs
University Administration Building
701 S. Nedderman Dr., Suite 241
Arlington, TX 76019

## Contents

**Summary** .......... 1
**Complainant** .......... 2
**Respondent** .......... 7
**Witnesses and Evidence** .......... 11
**Conclusion and Recommendations** .......... 27

## Summary

This report addresses allegations of violations of University Policy – EI-P04 Non-Discrimination Policy

> It is the policy of The University of Texas at Arlington ("the University") that no person shall, on the basis of race, color, national origin, religion, age, sex, sexual orientation, disabilities, genetic information, and/or veteran status, be denied employment with or admission to the University; or be excluded from participation in, denied the benefits of, or subject to discrimination under, any program or activity that the University sponsors or conducts. Retaliation against persons who oppose a discriminatory practice, file a charge of discrimination, or testify for, assist in, or participate in an investigative proceeding relating to discrimination is prohibited. Constitutionally protected expression will not be considered discrimination or harassment under this policy.

Complaints of racial, religious, and disability discrimination are investigated in accordance with UTA Procedure EI-PR-03 Unlawful Discrimination Investigative Procedure.

**Retaliation:** Any adverse action (including, but is not limited to, intimidation, threats coercion, harassment, or discrimination) threatened or taken against someone because the individual has made a report or filed a Formal Complaint, or who has supported, or provided information in connection with a report or Formal Complaint, participated or refused to participate in a Grievance Process under this policy or engaged in other legally protected activities.

**Assigned Civil Rights Investigator**: Alex Meier

**Alleged Violations:** It is alleged that Dr. Huang retaliated against Dr. Alan Bowling, for his participation as a witness in a previous EOS Investigation. It is alleged that on October 2, 2024, Dr. Huang sent an email to Dr. Armanios and Dr. Crouch, quoting Dr. Bowling's statement given during a previous EOS interview. It is alleged that Dr. Huang called Dr. Bowling "dishonest" and "unethical." It is alleged that Dr. Huang used the information Dr. Bowling provided during his witness statement in an attempt to harm Dr. Bowling's career and reputation.

**Parties in the Investigation:**
**Complainant** – Dr. Alan Bowling
**Respondent** – Dr. Haiying Huang
**Witness** – Dr. Erian Armanios
**Witness** – Dr. Peter Crouch
**Witness**—Dr. Albert Tong

## Complainant

**Dr. Bowling**

**Investigator's Note: The investigator has removed parts of Dr. Bowling's statement deemed irrelevant to the allegations.**

The issues between Drs. Bowling and Dr. Huang began in May 2023 with their participation in the Mechanical Engineering Committee on Academic Programs (MECAP). The Equal Opportunity Services (EOS) office explored these issues as part of an investigation of a complaint filed by Dr. Huang against Dr. Armanios, the Chair of the Department of Mechanical and Aerospace Engineering (MAE), alleging sex discrimination. The EOS office requested Dr. Bowling be a witness in this previous case. Dr. Bowling met with the EOS office on July 12, 2024, and his statement regarding that case is included below:

> "Dr. Bowling chairs the Mechanical Engineering Committee on Academic Programs (MECAP). He was asked to be the chair in March 2023; he has been a member of the committee since 2008. During that conversation [in which Dr. Bowling was asked to assume the chairmanship], Dr. Armanios informed him that Dr. Huang [sic] wanted to join MECAP as a voting member. Dr. Bowling agreed that she could attend the meetings as a non-voting member.
>
> Many requests were submitted to MECAP last year by the Mechanical and Aerospace Engineering (MAE) Department chair, the MAE Associate Chairs (including Dr. Huang), and other faculty. In May 2023, a request was submitted to add a set of core classes to the catalog that would represent topics in the Design and Manufacturing Technical Design Committee (D&M TDC). This request was submitted by the chair of the D&M TDC, who was also a voting member of MECAP. This request had been stalled in MECAP for a year or more before Dr. Bowling became chair.
>
> Dr. Huang seemed amenable to the core courses, resulting in a vote taken on June 21, 2023, which removed the D&M topics from a combined listing within Dr. Huang's topic area and established it as its own topic area. She also raised the issue that too many "A" grades were being given in their proposed core courses. The perception of an easy "A" was causing mass migration to those courses, depleting others to the point that they would not have enough students to "make" and, therefore, not be taught. This change was significant to both the students and the faculty.

During the Summer of 2023, other requests were submitted to MECAP that intersected with the D&M TDC request, requiring a more comprehensive resolution to address them all coherently. Before MECAP reached a resolution, Dr. Huang sent an email requesting that the entire faculty attend a meeting on February 2, 2024, to discuss and eventually vote on issues in the department. She remarked at a MECAP meeting that she would resolve the core course issue in her meetings. Dr. Bowling received inquiries from committee members and other faculty, asking what was happening and if she was attempting to bypass MECAP. This action gave the appearance that she was trying to go around the official process. She held two or three meetings before abruptly canceling the last one.

During the MECAP meetings, Dr. Huang crossed the line when discussing disagreements, which created a negative environment. Dr. Bowling felt that Dr. Huang's comments went beyond disagreement over the ideas presented to criticizing him and how he managed the committee, particularly stating that he was wasting everyone's time. These criticisms became frequent in the meetings but were unwarranted, given the number of requests being processed and completed. On February 19, 2024, he requested that Dr. Huang cease attending the meetings. On February 28, 2024, the six voting members of MECAP met and, with one abstention, voted unanimously in favor of adding modified versions of the originally proposed D&M TDC core courses to the catalog as a fifth topic area.

Dr. Bowling mentioned he has not heard any faculty voice concerns about discrimination from Dr. Armanios."

**Investigator's Note: Before Dr. Bowling approved his above witness statement for the previous EOS report, Dr. Bowling expressed fear of retaliation by Dr. Huang during his meeting with EOS/Title IX and within multiple emails with the previous EOS Investigator.**

More recent problems began when Dr. Huang attempted to rejoin MECAP:

On September 20, 2024, Dr. Huang emailed Dr. Armanios, and copied Dr. Bowling, Michelle Willbanks, and Dr. Peter Crouch, asking to be reinstated to MECAP. She wrote Dr. Armanios stating, "...Since I am no longer an associate chair, I am requesting you to reinstate me as the voting member of the MECAP representing the mechanics TDC. I understand that you may need to review the ME/AECAP membership given the graduate faculty policy. Until we have a new bylaw and policy in place, …" Dr. Nomura represents the mechanics TDC on MECAP and has done so for many years. Dr. Huang used her associate chair position to gain entry into MECAP by enlisting Dr. Armanios to convince Dr. Bowling to allow her attendance. In her email, Dr. Huang asked Dr. Armanios to override the mechanics TDC and Dr. Nomura and replace him with her as their representative on MECAP.

On September 24, 2024, Dr. Armanios replied, "…Referring to the 2020 bylaws, currently under revision, membership of the MECAP "...encompasses representatives from the DC (Discipline Committee) and undergraduate and graduate advisors." The practice has been for the DC Chair to be the representative. If you wish to represent the Structural Mechanics and Structural

Optimization Committee, simply express your interest to Prof. Adnan, DC Chair, for a consensus. …" Dr. Huang must appeal to her TDC to rejoin MECAP. Dr. Bowling then reminded Drs. Huang and Adnan of their TDC's representation on MECAP stating, "…One of our first discussions in MECAP was determining the committee's proper makeup. Members agreed that we could do double duty, so Dr. Nomura represented the mechanics TDC and the graduate advisor. Dr. Michael was the only member not representing a TDC because we needed an undergraduate advisor. You were also considered an extra, attending only because of an agreement between Dr. Armanios and myself. That agreement ended last Spring. I will wait for the new bylaws to see if they suggest a different policy…" It is absolutely fine for the chairs of MECAP and the TDCs to discuss their representation in MECAP. The discussion in this email does not violate any MAE rules, policies, or accepted behavior, and it does not attack Dr. Huang in any way.

On September 24, 2024, Dr. Haung replied, "…MECAP cannot make its own rules. Until there is a new bylaw, the operation of MECAP has to adhere to the existing bylaw, which states that "Membership encompasses representatives from the Discipline Committees (DCs) and undergraduate and graduate advisors…" It is perfectly acceptable for MECAP to make policy decisions where the bylaws are unclear. The departmental bylaws are unclear on whether an MECAP member can perform double duty, so MECAP has the right to choose what to do, which is common practice. Dr. Huang falsely argues in her email that MECAP cannot adopt policies independently, which implies Dr. Nomura could not do double duty.

Dr. Huang then falsely argued that Dr. Nomura should represent the graduate advisor, and her TDC must choose someone else to represent them on MECAP, namely her. Dr. Huang mistakenly interprets this email discussion as Dr. Bowling's attempt to block her from joining MECAP. Dr. Bowling cannot block Dr. Huang from joining MECAP if her TDC chooses her, which she should have inferred from Dr. Armanio's comments in his September 24, 2024, email to her. In a September 25, 2024, email she claimed, "…I am reporting the discrimination of me, including sex discrimination, by Dr. Alan Bowling based on the following facts: …Dr. Bowling is blocking the reinstatement of my MECAP membership citing a practice that deviates from the department bylaw, our past practices, and current AECAP practice. I urge you, the supervisor of Dr. Bowling, to take immediate corrective actions, including reinstatement my MECAP membership and suspend Dr. Bowling from his MECAP chair duties until an impartial investigation is completed. …" In the email, it appeared that Dr. Huang tried to remove Dr. Bowling from his position as Chair of MECAP, making it possible for her to replace him. However, her TDC had not yet voted on her request to serve as their representative. On the same day, September 25, 2024, Dr. Huang sent a follow-up email to Dr. Armanios' that detailed an outline of a formal complaint she threatened to file against Dr. Bowling for blocking her from rejoining MECAP.[1]

Dr. Huang's email disparaged Dr. Bowling's character, and copied his dean, Dr. Crouch, and several other university officials. Dr. Huang maligned Dr. Bowling's character to his supervisors and disparaged him publicly, which was consistent with her earlier behavior on MECAP.

[1] The email correspondence is provided in the Evidence section of the report.

For example, a virtual Broadening Participation in Engineering (BPE) committee meeting was held on September 27, 2024, where issues affecting minorities and women in the College of Engineering are often discussed. Dr. Bowling has been a member of BPE for many years. Dr. Huang joined the meeting about halfway through and talked at length about sex discrimination and how engineering is a male-dominated field rife with it. Dr. Huang went on to mention how "...some men try to keep women from committees to keep you from getting your voice heard." Her comments directly referenced her false allegations against Dr. Bowling; she knew Dr. Bowling was in attendance. This was interpreted as an attempt to grow sympathy for herself from others within the group.

In response to her threats and actions, Dr. Bowling filed a formal complaint of harassment and retaliation against Dr. Huang on Monday, September 30, 2024. On Wednesday, October 2, 2024, she sent another email maligning Dr. Bowling to his supervisors, Dr. Armanios and Dr. Crouch. The email, sent October 2, 2024, with subject line "dishonest and unethical behaviors of... Alan Bowling..." referred to Dr. Bowling and stated the following five points:

1. "Dr. Bowling misrepresented the department policy on a proper channel for graduate curriculum review and sabotaged the work of close to 20 faculty members who participated. No department policy specifies a proper channel for graduate curriculum review.
2. Dr. Bowling falsefully accused me of bypassing the proper channel for graduate curriculum discussions. The UTA catalog states that a graduate program is governed by a committee of graduate studies consisting of all full members of the graduate faculty. My practice of involving doctoral "core" faculty in graduate curriculum matter is consistent with this policy.
3. Dr. Bowling misrepresented my 1/26/2024 email during the EOS investigation (see attachment)
4. Dr. Bowling misrepresented my MECAP membership is his 2/19/2024 email. In his testimony to EOS, he stated that he "agreed that she could attend the meetings as a non-voting member."
5. Dr. Bowling provided conflicting explanation on why he expelled me from MECAP. In his 2/19/2024 email, he stated that I am not a member of MECAP and 'your position creates a conflict of interest because of your authority.' In his witness testimony, Dr. Bowling stated that he requested me to cease attending the MECAP meetings because I 'crossed the line when discussing disagreements.' He did not provide any evidence to support this allegation."

In the above email, Dr. Huang quoted Dr. Bowling's testimony from the previous EOS investigation word-for-word. In effect, she attempted to use his testimony against him, an act classified as retaliation.

As a result of the formal filing, Dr. Bowling met with Mr. Colin Sanor, Senior Human Resources (HR) Business Partner, on October 4, 2024, and the EOS office on October 7, 2024, to discuss the impact of Dr. Huang's retaliation against him. Dr. Huang was notified that Dr. Bowling had formally filed a case against her via a Notice of Formal Complaint (NOFC) on October 8, 2024,

after which, she immediately contacted Dr. Armanios, Dr. Bowling, and Dr. Crouch, requesting that Dr. Bowling be disciplined and reported:

> "…I am reporting the retaliation of Dr. Alan Bowling against me because I reported his dishonest and unethical activities on 10/02/2024 (see attachment). I just received a charge letter from EOS stating that Dr. Bowling filed a retaliation complaint against [sic] me (Case Number: 2024066201).
>
> Per UTS131, all U. T. System employees have a personal and professional obligation to report dishonest or unethical conduct. Additionally, UTS131 states that "No U.T. System employee shall take any disciplinary or retaliatory action against any individual for, in good faith, reporting, or causing to be reported, suspected wrongdoing, or for assisting in an authorized investigation of alleged wrongdoing." Dr. Alan Bowling's EOS complaint is a clear violation of this policy.
>
> Your prompt reporting of Dr. Bowling's retaliation act and his violation of UTS131 is greatly appreciated."

Dr. Huang was unaware that Dr. Bowling filed his complaint, of retaliation, on September 30, 2024, before she sent the "dishonest and unethical" email, she sent on October 2, 2024. The retaliation Dr. Huang alleged in the email above cannot exist. The email above confirms that Dr. Huang is eagerly searching for anything she can use against Dr. Bowling, regardless of the truth.

Because of the discussions and events presented above, Dr. Bowling felt he was harassed and retaliated against by Dr. Huang for his role in the previous EOS investigation-her sex discrimination complaint against Dr. Armanios. He feels Dr. Huang will not stop filing complaints, publicly disparaging him to his supervisors and colleagues, and looking for ways to harass and retaliate against him. Her repeated requests to his dean and chair to discipline and report him are meant to harass and threaten him, creating a hostile working environment for Dr. Bowling. Furthermore, Dr. Huang did not have to copy Dr. Bowling on her emails to his supervisors except to threaten and bully him, which is made worse because she had a position in the Dean's office, making her a member of the upper administration more powerful than him.

Dr. Bowling was concerned that if Dr. Huang's comments against him were not investigated, they would stand, forcing him to defend himself continually. She copied Dr. Bowling on her emails to give them an air of legitimacy, although the claims are false. She spread these criticisms publicly, making it difficult for Dr. Bowling to defend himself to everyone. These actions by Dr. Huang created a hostile working environment for Dr. Bowling, where he must constantly defend and repair his reputation against false allegations.

Dr. Bowling felt his race and gender, black male, might be a reason for Dr. Huang's ill-treatment of him. He felt her behavior turned bad toward him when he was appointed as the MECAP Chair. Although Dr. Bowling never heard Dr. Huang use racial slurs or disparage black people in her speech, she publicly engaged in personal attacks in front of peers, which undermined his abilities as chair of MECAP. As mentioned earlier, Dr. Huang formed her own faculty committee to make decisions about departmental policies, naming herself as chair to override MECAP's

decisions. She also requested Dr. Armanios to remove Dr. Bowling as MECAP chair in her email on September 25, 2024. In 14 days or two weeks, from September 25, 2024, to October 8, 2024, Dr. Huang formulated three separate and distinct discrimination complaints against Dr. Bowling following receipt of his testimony from her prior allegation of sex discrimination against Dr. Armanios. This extreme behavior was typically an indicator of retaliation and potentially racist ideology.

Dr. Bowling felt he would face immediate and severe consequences if he displayed the same behavior toward Dr. Huang that she displayed toward him. Still, Dr. Huang has faced no consequences for her recent behavior. Because of this lack of consequences, Dr. Bowling would like some physical distance from Dr. Huang as her office is one door down from his office, and he must walk by her office daily. Her extreme behavior before and after his formal complaint made Dr. Bowling feel there may be some risk of confrontation. Dr. Bowling felt that in any confrontation with Dr. Huang, he would automatically be assumed to be at fault because of societal stereotypes of black males. Dr. Bowling was concerned that many people, including students who often wait in the hallway, would spread rumors quickly without knowing anything about the situation. Dr. Bowling would like Dr. Huang to be relocated to the Dean's office, UTARI, or somewhere other than Woolf Hall to reduce the opportunities for a chance encounter. Dr. Huang should be relocated because the chain of recent emails clearly showed she was the aggressor.[2]

## Respondent

**Dr. Huang**

**Investigator's Note: The investigator has removed parts of Dr. Huang's statement that the investigator deemed irrelevant to the allegations.**

On October 2, 2024, Dr. Huang emailed Dr. Armanios and copied Dr. Crouch to report the dishonest and unethical behaviors of three faculty members, Drs. Bowling, Dennis, and Subbarao. She received the report for her previous EOS complaint against Dr. Armanios and felt that Dr. Bowling and the other two faculty members intentionally provided false or misleading information to the investigator. After completing the UTA compliance training, she learned she was responsible for reporting dishonest and unethical behavior to her supervisors. Based on the UTA compliance training, she felt Dr. Bowling's behavior should be reported to her supervisor as a code of conduct violation.

For her previous EOS complaint against Dr. Armanios, she submitted detailed comments pointing out the inconsistencies in Dr. Bowling's and other witnesses' testimony. Dr. Huang felt there was a culture of dishonesty, fostered by Dr. Armanios, in the department and she wanted to use the proper channels to get to compliance.

In her October 2, 2024, email, Dr. Huang addressed five examples of Dr. Bowling's "dishonest and unethical" behavior.

---

[2] Relevant emails to Dr. Bowling's statement are provided in the Evidence section of the report.

1. Dr. Bowling misrepresented the department policy on a proper channel for graduate curriculum review and sabotaged the work of close to 20 faculty members who participated. No department policy specifies a proper channel for graduate curriculum review.
2. Dr. Bowling falsefully accused me of bypassing the proper channel for graduate curriculum discussions. The UTA catalog states that a graduate program is governed by a committee of graduate studies consisting of all full members of the graduate faculty. My practice of involving doctoral "core" faculty in graduate curriculum matter is consistent with this policy.

Dr. Huang elaborated, explaining that the department's doctoral "core" faculty had three meetings to discuss the graduate curriculum in February 2024. These meetings were approved by Dr. Armanios in January 2024. After discussions and multiple votes at the third meeting on February 16, 2024, the attendees agreed on a new course requirement for the B.S. to PhD (BS2PhD) programs. A fourth meeting was scheduled on February 23, 2024 to discuss course selections for each "core" area. In anticipation of finalizing the graduate curriculum review at the fourth meeting, on February 19, 2024, Dr. Huang requested Drs. Dennis and Bowling to hold a joint curriculum committee meeting on February 28, 2024 so she can present the proposed curriculum changes to the committees. Dr. Bowling is the Chair of the curriculum committee for the Mechanical Engineering program (i.e., MECAP) while Dr. Dennis is the Chair of the one for the Aerospace Engineering program (i.e., AECAP). The proposed curriculum changes need to be approved by the respective curriculum committee before becoming official.

On February 19, 2024, prior to Dr. Huang sending the meeting request to Drs. Dennis and Bowling, Dr. Bowling notified Dr. Huang that she was, "according to the bylaws," not supposed to be on MECAP and her presence "can inhibit other faculty from speaking freely because of your authority over different processes in the department." Dr. Huang forwarded Dr. Bowling's email to Dr. Armanios, referencing their agreement in May 2023 that she would be a non-voting member of MECAP. On February 20, 2024, Dr. Armanios informed Dr. Huang that, as "ex-officio members", her attendance was at the invitation of the MECAP Chair, Dr. Bowling, and his discretion. Dr. Huang felt that this is yet another example that Dr. Armanios sided with and believed male colleagues over her, even when the male colleague's request does not have any merit.

On February 21, 2024, Dr. Zhen Han stopped by Dr. Huang's office in the afternoon and told her that Dr. Bowling discussed with Dr. Dennis her participation in MECAP meetings. He said Dr. Dennis encouraged Dr. Bowling to ask Dr. Armanios to stop her from attending MECAP meetings. He said Dr. Dennis offered to accompany Dr. Bowling to meet with Dr. Armanios if Dr. Bowling were unwilling to make the request. When asked why Dr. Dennis wanted to exclude her from MECAP meetings, Dr. Han said that Dr. Dennis wanted to block the proposed graduate curriculum changes. He said Dr. Dennis felt that AECAP would have no choice but to pass it if MECAP passed it. Dr. Huang emailed Dr. Armanios on February 22, 2023 and requested a phone call for the next day.

One February 23, 2024, Dr. Huang shared her concern with Dr. Armanios that Drs. Dennis and Bowling were maneuvering to block the proposed curriculum changes, even before they were finalized. Dr. Armanios informed her that she was not supposed to discuss the curriculum changes at the doctoral "core" faculty meetings. He told her that she was creating a second channel and "this has to stop!" Felt that Dr. Armanios again favored her male colleagues over her, Dr. Huang asked him why he trusted Drs. Dennis and Bowling more than her. The meeting was cut short because Dr. Huang had another meeting to attend.

On February 28, 2024, Dr. Huang and Dr. Armanios met again to continue the discussion. Dr. Armanios told Dr. Huang that Drs. Dennis and Bowling complained that she bypassed the proper channel for curriculum discussion. The meeting lasted three hours and she felt Dr. Armanios, "blamed all the conflict on [her]." At the end of the meeting, Dr. Huang agreed that she will contact Drs. Dennis and Bowling to get their input and to have another doctoral "core" faculty meeting to address faculty concerns. While waiting for Dr. Armanios' approval of the messages to be sent to the doctoral "core" faculty and Drs. Dennis and Bowling, Dr. Huang received an email from Dr. Armanios on February 29, 2024, suggesting they meet again for 15 minutes on March 1st, 2024.

On March 1st, 2024, Dr. Armanios asked for Dr. Huang's resignation. He told Dr. Huang that he needed someone who is more experienced and that she is "tearing the department apart". Following the meeting, Dr. Huang canceled future doctoral "core" faculty meetings.

On March 5, 2024, Dr. Huang contacted Drs. Bowling and Dennis and asked for their support to continue the curriculum discussion. Dr. Bowling told Dr. Huang that he "Really don't want to discuss much more." Dr. Dennis agreed to collaborate initially, but he sent an email to Dr. Bowling and Armanios on March 6, 2024, stating "I personally don't think it's a good idea to continue with a framework that came from a contentious process." The graduate curriculum review, participated in by close to 20 doctoral "core" faculty members, was aborted. Dr. Huang believed that Dr. Bowling's misrepresentation of the bylaws and complaint was the reason that Dr. Armanios interrupted the graduate curriculum review, which rendered the work of close to 20 doctoral "core" faculty fruitless.

3. Dr. Bowling misrepresented my 1/26/2024 email during the EOS investigation (see attachment).

Dr. Huang believed that the contrast between what Dr. Huang wrote in her 1/26/2024 email and Dr. Bowling's characterization of this email supports her belief that Dr. Bowling's intentionally misled the investigator.

4. Dr. Bowling misrepresented my MECAP membership is his 2/19/2024 email. In his testimony to EOS, he stated that he "agreed that she could attend the meetings as a non-voting member."

Dr. Huang believed that Dr. Bowling intentionally misrepresented her membership status in his 2/19/2024 email because he specifically stated that "I think you aren't supposed to be on this committee" and "looked at the bylaws and you aren't included on the MECAP committee." However, he admitted in his testimony that he "agreed that she could attend the meetings as a

non-voting member." Additionally, there is nothing in the bylaws supports his statement that "you aren't included on the MECAP committee."

5. Dr. Bowling provided conflicting explanation on why he expelled me from MECAP. In his 2/19/2024 email, he stated that I am not a member of MECAP and "your position creates a conflict of interest because of your authority." In his witness testimony, Dr. Bowling stated that he requested me to cease attending the MECAP meetings because I "crossed the line when discussing disagreements". He did not provide any evidence to support this allegation.

Dr. Huang believed that the shifting reasons provided by Dr. Bowling suggested that Dr. Bowling made up false reasons to exclude her from MECAP meetings. She stated that, before Dr. Bowling's request, Dr. Bowling or Dr. Armanios never expressed any concern to her regarding her presence at the MECAP meetings. Dr. Bowling did not provide any evidence or corroboration from other committee members to support his allegation. Dr. Huang believed Dr. Bowling intentionally misled the investigator to support Dr. Armanios's pretexts for her termination. She suggested the investigator interviewing Dr. Albert Tong, who she believed to have attended all the MECAP meetings that she attended, or Dr. Frank Lu, who she believed to have attended the last one or two MECAP meeting(s) she attended. Dr. Huang did not believe Dr. Nomura or Dr. Nancy Michaels would provide truthful testimonies for this investigation as Dr. Nomura provided false or misleading information in the previous investigation and Dr. Micheals withheld information that she discussed the graduate curriculum review with Dr. Dennis from the investigator.

Additionally, Dr. Bowling stated in his testimony that he only agreed to accept Dr. Huang as a non-voting member of MECAP instead of as a voting member in March 2023. Dr. Huang believed his refusal to accept her as a voting member was sex discrimination because a similarly situated white male, Dr. Wilson, was a voting member of the curriculum committees while serving as the associate chair at that time. Dr. Huang believed that Dr. Bowling's request to exclude her from MECAP meetings was a continuation of sex discrimination against her to isolate her and to keep information from her to do her job. She believed Dr. Bowling, colluding with Dr. Dennis and with support from Dr. Armanios, created a hostile work environment that significantly interfered with her ability to do her job.

Within the email, Dr. Huang cited that per EI-PO-01, UTA employees "are prohibited from engaging in Dishonest or Fraudulent Activity and it is UTA's expectation that Dishonest or Fraudulent Activity will be promptly identified and investigated." She explained that UTA Standards of Conduct Guide for Employees stated that managers should create a departmental culture that promotes the highest standards of ethics and encourages the department to report unethical behavior or incidents of non-compliance with applicable laws, policies, rules, or regulations. EI-PO-07 Standards of Conduct Policy states that supervisors "are responsible for fostering respect for the values embodied in the Standards of Conduct and the Principles of Community and for promoting compliance with them."

Based on these policies, Dr. Huang urged Dr. Armanios to report Dr. Bowling's dishonest and unethical activities to compliance for investigation.

Dr. Huang believed Dr. Bowling's retaliation complaint mischaracterized her report to Dr. Armanios. There is a difference between calling Dr. Bowling "dishonest and unethical", as Dr. Bowling alleged, and reporting Dr. Bowling's dishonest and unethical behavior. Dr. Huang believed that Dr. Bowling filed the retaliation complaint in retaliation for her filing the report.

Dr. Huang stated that the compliance office had not contacted her yet. She believed that Dr. Armanios improperly disclosed her complaint to Dr. Bowling, which she believed was retaliation against her for filing the report. Dr. Huang believed there was a system failure as Dr. Armanios should have simply reported the incident to Compliance per policy and he should not have disclosed her email to Dr. Bowling.

## Witnesses and Evidence

**Witnesses**

**Dr. Erian Armanios**
**Investigator's Note: The investigator removed information from Dr. Armanios' statement that was not relevant to the allegations.**
A prior investigation, conducted by the Equal Opportunity Services (EOS)/Title IX Office, which was initiated following a formal complaint filed by Dr. Huang. The complaint alleged that Dr. Armanios and department colleagues had engaged in behavior that potentially violated UTA's Nondiscrimination Policy (UTA EI-P04). As part of the investigation, Dr. Bowling provided a statement as a witness.

A draft report marked "personal and confidential" was issued to Dr. Huang and Dr. Armanios on August 22, 2024. The report concluded that there was no evidence supporting Dr. Huang's claims of discrimination under UTA Policy EI-P04. This conclusion was affirmed in the final report dated October 10, 2024.

Dr. Bowling served as Chair of the Mechanical Engineering Committee (MECAP), while Dr. Huang participated as a non-voting member in her capacity as Department Associate Chair. However, her dual role created a conflict of interest (COI), given her authority and interference with the committee's agenda. Consequently, Dr. Bowling requested that Dr. Huang cease attending MECAP meetings. Dr. Armanios reiterated that committee chairs have the prerogative to invite non-voting members based on their expertise, but the COI highlighted by Dr. Bowling justified the exclusion of Associate Chairs. Starting February 20, 2024, MECAP would carry out its duties without Associate Chair participation.

The issue of Dr. Huang's membership in MECAP resurfaced on September 24, 2024, through a series of emails between Dr. Huang and Dr. Bowling. Dr. Huang repeatedly questioned Dr. Bowling's decision, citing her interpretation of the bylaws, which do not explicitly address situations of dual committee roles. She argued that her membership should be reinstated. On

September 25, 2024, Dr. Huang escalated the matter by emailing Dr. Armanios, accusing Dr. Bowling of discrimination, including sex discrimination, and urging him "to take immediate corrective actions, including reinstatement [her] MECAP membership and suspend Dr. Bowling from his MECAP chair duties until an impartial investigation is completed."

Dr. Huang's interpretation failed to consider that in the absence of explicit guidance in the bylaws, committee chairs are granted discretion to act based on established precedents. By default, all faculty members belong to a disciplinary committee. Graduate advisors are members of a discipline committee, and members of MECAP or AECAP, as well. These committees make decisions on curricula that impact their advisement of student advisors. Dr. Huang's persistent email exchanges and demands for action against Dr. Bowling constitute harassment, hindering him in performing his duties, creating a stressful work environment, and potentially amounting to discrimination against him.

On October 2, 2024, Dr. Huang further accused Dr. Bowling of "dishonest and unethical behaviors," claiming violations of UTA's Standards of Conduct and EI-P01 Dishonest or Fraudulent Activities Policy. She cited statements made by Dr. Bowling during his witness testimony in the EOS/Title IX investigation. These statements, however, were extracted from the August 22, 2024, draft report, which Dr. Bowling did not have access to. Dr. Huang's use of information within that report undermined the integrity of UTA's investigative processes and violating due process standards. Such actions are unethical and may contravene the university's policies.

Dr. Armanios did not observe Dr. Huang making discriminatory remarks about Dr. Bowling's race or ethnicity. However, according to the final report dated October 10, 2024, Dr. Huang tends to identify colleagues by their race and gender first. This practice is at odds with the departmental norms, which prioritize faculty members' contributions over their demographic characteristics. It's important to note that other female faculty members in the department do not share Dr. Huang's perspective or approach.

Despite Dr. Huang's behavior, Dr. Bowling has consistently demonstrated professionalism, ensuring that MECAP and meetings run smoothly. His restraint and leadership have fostered a functional and collaborative department environment.

**Dr. Peter Crouch**

Dr. Crouch is the Dean of Engineering at UTA and holds a supervisory position over Drs. Huang and Bowling, through the MAE department chair. Months ago, Dr. Huang spoke with Dr. Crouch and asked for his advice. She also stated that she felt the MAE leadership was not treating faculty fairly or appropriately. Dr. Huang raised several concerns and Dr. Crouch told her to get 10-12 faculty members, about a third of the department, to agree and bring the matter back to him. The original statement was, "If you need me to do something, bring others to my door." She maintains that there were people who were grossly mistreated. The actual number of people who claim to be mistreated seems few. Dr. Crouch explained that he could not act on her statement alone. She never came back to Dr. Crouch. As a result of all the ongoing issues,

the only way he has learned of anything to do with the situation has been through Chief Legal Officer, Shelby Boseman.

At first, Dr. Huang brought a grievance against the college. Dr. Crouch was given three weeks to respond. He initially responded to Mr. Boseman and said it would take him months to investigate her claims. Mr. Boseman said, “Do your best.” Dr. Crouch found it fascinating, that the EOS investigations take as long as they need to.

The only concrete thing Dr. Huang had in her grievance was that faculty teaching loads were not applied fairly to junior faculty. Dr. Crouch then went to folks in the college and did an internal investigation on teaching workloads. At the level Dr. Crouch could complete in three weeks, he looked at the teaching loads relative to different departments and found that MAE didn’t stand out at all. At the level he could afford to investigate in three weeks, there were no issues.

Another thing she complained about had to do with the graduate program. Dr. Crouch’s response was to look to the upcoming fall graduate program review to ascertain if anything was going on. He drafted a response to the grievance Dr. Huang clearly didn’t like that, so she escalated it to other types of grievances.

Dr. Huang assisted the college in helping faculty improve their pedagogy. That is something she is interested in doing and she is good at it. Dr. Crouch pays her a stipend to do that. She takes the money as a course release.

Dr. Crouch and his Associate Dean, Dr. Lynn Peterson, deduced that Dr. Huang did not understand academic administration. When Dr. Crouch extrapolated that to her actions within the department, he was not surprised at what happened. Dr. Armanios and Dr. Crouch spent a lot of time and money to send Dr. Huang to an elite program for potential administrators. The program was an East Coast university for potential female administrators. Dr. Armanios and Dr. Crouch spent time working with Dr. Huang on what administration was all about. Clearly, this has had little effect on Dr. Huang.

When professors teach for ~ 20 years, they start to wonder, ‘What is next?’ They look at Dr. Crouch and say, ‘You are in administration. Why can’t I do that?” Dr. Crouch gently tells them that an administrative position differs significantly from a faculty member. Dr. Armanios and Dr. Crouch suggested that Dr. Huang do a one-year course, which was paid for by the College, to help introduce female faculty members to leadership. Obviously, the course did not enable Dr. Huang to deal with people with different views.

Regarding the alleged retaliation by Dr. Huang, Dr. Crouch did not sense that Dr. Huang was retaliating. Dr. Huang discussed with Dr. Crouch and Dr. Peterson what she could do in her role to help improve pedagogy. She went away and came back to inform Dr. Crouch and Dr. Peterson that she simply needed to tell people what do. Dr. Crouch told her, “You need people to want to do what you are asking of them.” She felt that Dr. Crouch could just tell people at

random what to do. She felt that she knew what was right for the department and that she alone knew what needed to happen. She did not understand that what happens in the department is a function of many people who want to do the same thing. It is not an autocracy. She felt that Dr. Armanios' way of leadership was not participatory enough for her liking. Every department head has a different style, and she did not like his.

Dr. Crouch, as Dean, is inclusive and participatory when feasible. Dr. Huang believes that Dr. Armanios is not like Dr. Crouch. Dr. Armanios successfully steered the department for many years. The department mechanisms work well. Dr. Huang was frustrated by the fact that nobody wanted to do things the way she did, including the senior faculty in the department. Dr. Huang is demonstrating that she is frustrated. She needs to try to understand that people operate as they do. In the grievance sent to Dr. Crouch, he wasn't given any time to do justice to the minutia of her grievances, that people should act as she wants them to. The answer is they don't. That's part of living in a community. You must go with what the community wants to do unless you are in the military. Dr. Crouch is not the general and he cannot tell people what to do. Dr. Crouch seeks input then does what he believes in general is the best course of action.

Because of Dr. Huang's position, she attended Dr. Crouch's leadership council meetings every two weeks. Compared to Dr. Armanios' leadership, she sees a different way of operating. To cap it all, Dr. Armanios is retiring on December 31, 2024, so that's why Dr. Huang is also going after department leadership.

Dr. Bowling was a senior faculty member and one of the few African American faculty members. Dr. Crouch's every dealing with Dr. Bowling has been extremely agreeable. Dr. Bowling led the student ombuds team in the College of Engineering and he still does. That is an indication of the type of person he is. He is a remarkable person and Dr. Crouch has never, in eight years, had any run-in with Dr. Bowling. The fact that she found an issue with Dr. Bowling is clearly her problem and not his.

Previous leadership in the college has been much more dictatorial. Dr. Crouch has attempted to bring the college into a new era. That past era was responsible for deans looking at the freshman class and saying, "Look to your left and right and know that only one of you will survive this degree in engineering." That is never said anymore. Dr. Crouch has been a dean for 30 years. Before UTA he was at Arizona State and the University of Hawaii. He has seen and experienced culture change. Part of his job is to bring a different culture. Dr. Crouch, at UTA, changed the chair of civil engineering and electrical engineering and put in female leadership as part of his attempt to change the culture. Change is happening, but Dr. Huang feels frustrated and impatient because the culture is just not changing fast enough for her.

**Dr. Albert Tong**
Dr. Tong has been with the UTA Aerospace and Mechanical Engineering department for 40 years. Dr. Bowling and Dr. Huang are both high achievers, but they are not in Dr. Tong's area.

Dr. Tong interacts with Dr. Bowling and Dr. Huang administratively on departmental committees. Dr. Armanios came in when Dr. Tong worked as a graduate advisor for 2 years and it was not Dr. Tong's "cup of tea", so he stepped down. Dr. Armanios was okay with that.

When Dr. Huang became the Associate Chair, she wanted to make changes. She wanted things to change for graduate admissions and curriculum. Something happened but he did not know what, and she stepped down. It was not her wish from his understanding. That was his impression, but he did not know anything. Dr. Tong thought she was really "gung-ho" in her position as Associate Chair and it surprised Dr. Tong when she stepped down. Dr. Huang was pushing her suggested changes within the committee.

The faculty had heated discussions at a couple of committee meetings. He would not characterize any of those interactions as discriminatory. They were just disagreements, nothing more.

**Investigator's Note: The Investigator also contacted two witnesses provided by Dr. Huang, Dr. Zhen Han and Dr. Brian Dennis. Dr. Han and Dr. Dennis declined to participate.**

**Evidence**

**Dr. Bowling Evidence Related to Complainant Section of Report- Provided October 11, 20224**

**Email from Dr. Crouch to Dr. Huang with cc to Dr. Armanios, Dr. Bowling, Shelby Boseman, and Tamara Brown-October 8, 2024**
"I have forwarded this email to the office of Equal Opportunity Services
Peter Crouch"

**Email from Dr. Huang to Dr. Armanios with cc to Dr. Bowling and Dr. Crouch-October 8, 2024**
"I am reporting the retaliation of Dr. Alan Bowling against me because I reported his dishonest and unethical activities on 10/02/2024 (see attachment). I just received a charge letter from EOS stating that Dr. Bowling filed a retaliation complaint again me (Case Number: 2024066201).

Per UTS131, all U. T. System employees have a personal and professional obligation to report dishonest or unethical conduct. Additionally, UTS131 states that "No U. T. System employee shall take any disciplinary or retaliatory action against any individual for, in good faith, reporting, or causing to be reported, suspected wrongdoing, or for assisting in an authorized investigation of alleged wrongdoing." Dr. Alan Bowling's EOS complaint is a clear violation of this policy.

Your prompt reporting of Dr. Bowling's retaliation act and his violation of UTS131 is greatly appreciated."

**Email from Dr. Armanios to Dr. Huang with cc to Jewel Washington, Shelby Boseman, and Dr. Crouch-October 3, 2024**

"I am referring the matter to Ms. Jewel Washington, Vice President for Talent, Culture and Engagement, and Mr. Shelby Boseman, Chief Legal Officer, for their advice and guidance on the appropriate course of action."

**Email from Dr. Huang to Dr. Armanios with cc to Dr. Crouch-October 2, 2024**
"Following relevant UTA policies, I am reporting the following dishonest and unethical behaviors of Drs… Alan Bowling… that violate the UTA standards of conducts and EI-PO-01 Dishonest or Fraudulent Activities Policy…

**Alan Bowling:**

1. Dr. Bowling misrepresented the department policy on a proper channel for graduate curriculum review and sabotaged the work of close to 20 faculty members who participated. No department policy specifies a proper channel for graduate curriculum review.
2. Dr. Bowling falsefully accused me of bypassing the proper channel for graduate curriculum discussions. The UTA catalog states that a graduate program is governed by a committee of graduate studies consisting of all full members of the graduate faculty. My practice of involving doctoral "core" faculty in graduate curriculum matter is consistent with this policy.
3. Dr. Bowling misrepresented my 1/26/2024 email during the EOS investigation (see attachment)
4. Dr. Bowling misrepresented my MECAP membership is his 2/19/2024 email. In his testimony to EOS, he stated that he "agreed that she could attend the meetings as a non-voting member."
5. Dr. Bowling provided conflicting explanation on why he expelled me from MECAP. In his 2/19/2024 email, he stated that I am not a member of MECAP and "your position creates a conflict of interest because of your authority." In his witness testimony, Dr. Bowling stated that he requested me to cease attending the MECAP meetings because I "crossed the line when discussing disagreements". He did not provide any evidence to support this allegation…

Per EI-PO-01, UTA employees "are prohibited from engaging in Dishonest or Fraudulent Activity and it is UTA's expectation that Dishonest or Fraudulent Activity will be promptly identified and investigated." UTA Standards of Conduct Guide for Employees states that managers should create a departmental culture that promotes the highest standards of ethics and encourages the department to report unethical behavior or incidents of non-compliance with applicable laws, policies, rules, or regulations. EI-PO-07 Standards of Conduct Policy states that supervisors "are responsible for fostering respect for the values embodied in the Standards of Conduct and the Principles of Community and for promoting compliance with them."

Based on these policies, I urge you to immediately report these dishonest and unethical activities to the compliance for investigation."

**Email from Dr. Huang to Shelby Boseman, Michelle Willbanks, and Dr. Armanios with cc to Dr. Bowling and Dr. Crouch-September 25, 2024**

"Dr. Armanios, thank you very much for your immediate action.

Mr. Boseman and Ms. Willbanks, please see below in blue the prima facie statement. Attached are the documents relevant to this case. Since the case is pretty straight forward, I am expecting a speedy investigation and determination.

Complainant: Haiying Huang (Asian female from China)

Respondent: Alan Bowling (African American Male), chair of Mechanical Engineering Committee on Academic Program (MECAP)

Incident Description: On 2/19/2024, the respondent, Alan Bowling, informing the complainant, Haiying Huang, that "you aren't supposed to be on this committee" and "Your position creates a conflict of interest". On 2/20/2024, his supervisor, Erian Armanios, approved the respondent's request to expel the complainant from the committee. The respondent provided a different reason for the complainant's expulsion during the investigation of IR00056152 and IR00056153, in which the respondent stated that he requested the complainant to "cease attending the meetings" because the complainant "crossed the line when discussing disagreements" without providing any evidence or mentioning COIs. Additionally, the respondent admitted that he agreed that the complainant "could attend the meetings as a non-voting member" when he was asked to assume the committee chairmanship in March 2023. Therefore, the respondent misrepresented the complainant's membership status in his 2/19/2024 email. Furthermore, on 9/24/2024, the respondent attempted to block the reinstatement of the complainant's membership using an excuse that deviates from the department bylaw and the practice of a sister committee (i.e., AECAP) in the department.

Allegations:

1. Discrimination Based on Gender, Race, and national origin: The complainant alleges that the actions taken by the respondent were motivated by discriminatory intent based on her gender (female), race (Asian), and national origin (P.R. China)
2. Inconsistent Justifications: The respondent provided inconsistent reasons for the expulsion, indicating a lack of legitimate justification.
3. Misrepresentation: The respondent misrepresented the complainant's MECAP membership status, undermining her position unfairly.
4. Deviation from Policy: the excuse that the respondent used to block the reinstatement of the complainant's membership deviates from the department bylaw and the practice of a sister committee (AECAP), further suggesting discriminatory motives.

Supporting Evidence:

- 20240219 Bowling Request to expel Huang.pdf: the respondent misrepresented the complainant's member status and cited the COIs as the reason for her expulsion from the committee.

- Bowling Testimony from EOS ROI of IR00056152 and IR00056153_Redacted.pdf: the respondent's witness testimony, in which he provided a different reason for the expulsion and admitted that the complainant was a non-voting member of the committee.
- MAE ByLaws: the department bylaw clearly states on page 4 that the CAP "Membership encompasses representatives from the Discipline Committees (DCs) and undergraduate and graduate advisors."
- 20240924 Bowling blocks Huang's reinstatement.pdf: email exchanges between the complainant and the respondent on the reinstatement. The respondent's argument to block the complainant's reinstatement deviates from the department bylaw and from the practice of its sister committee (AECAP).

Conclusion: The complainant believes that the adverse actions taken by the respondent, i.e., expelling the complainant from MECAP and refusing to reinstate her, constitute discrimination based on gender, race, and national origin, in violation of EI-PO-08 Sexual misconduct policy and EI-PO-04 Non-discrimination policy.

Remedy: 1) reinstate the complainant as a member of MECAP, 2) remove the respondent as the chair of MECAP, 3) discipline the respondent according to UTA's anti-discrimination policies and practices."

**Email from Dr. Armanios to Dr. Huang with cc to Dr. Bowling, Dr. Crouch, Michelle Willbanks, and Shelby Boseman-September 25, 2024**

"…While I read your claims, I fail to recognize their merits. As such, I am referring this matter to Ms. Michelle Willbanks, JD and Director of EOS/Title IX Coordinator, and Mr. Shelby Boseman, JD and Chief Legal Officer, for their advice and guidance on the appropriate course of action…"

**Email from Dr. Huang to Dr. Armanios with cc to Dr. Bowling and Dr. Crouch-September 25, 2024**

"…I am reporting the discrimination of me, including sex discrimination, by Dr. Alan Bowling based on the following facts:

1. Dr. Bowling provided inconsistent reason for his request to expel me from MECAP. He cited potential COIs as the reason in his email but he stated in his witness testimony that he requested me to "cease attending the meetings" because I "crossed the line when discussing disagreements". He did not provide any evident for this accusation.
2. Dr. Bowling misrepresented my MECAP membership status in his email requesting my exclusion.
3. Dr. Bowling is blocking the reinstatement of my MECAP membership citing a practice that deviates from the department bylaw, our past practices, and current AECAP practice.

I urge you, the supervisor of Dr. Bowling, to take immediate corrective actions, including reinstatement my MECAP membership and suspend Dr. Bowling from his MECAP chair duties until an impartial investigation is completed.

Per EI-PR-03, a supervisor 'must report any discrimination, harassment or retaliation that comes to their attention, regardless of whether a complaint is made.'"

**Email from Dr. Huang to Dr. Bowling and Dr. Armanios with cc to Michelle Willbanks, Dr. Crouch, and Dr. Ashfaq Adnan** -September 24, 2024
"The operation of MECAP has to adhere to the current bylaw until it is replaced by the new bylaw. You do not have the authority to make the decision you made."

**Email from Dr. Bowling to Dr. Huang and Dr. Armanios with cc to Michelle Willbanks, Dr. Crouch, and Dr. Adnan-September 24, 2025**
"If what I have said so far is insufficient, I have nothing more to say on this. I suggest you wait for the new bylaws to come out."

**Email from Dr. Huang to Dr. Bowling and Dr. Armanios with cc to Michelle Willbanks, Dr. Crouch, and Dr. Adnan-September 24, 2025**
"…Where in the bylaw says a committee can vote on its membership? In my opinion, the current MECAP membership violates the bylaw, which clearly states that "Membership encompasses representatives from the Discipline Committees (DCs) and undergraduate and graduate advisors." There is no clause in the bylaw that says MECAP members can do double duties.

Since we have disagreement on the interpretation of the bylaw, this needs to be discussed at the faculty meeting. As I said, it is not up to you or the MECAP members to decide. Dr. Nomura can not decide for himself. He needs the TDC members' approval and I do not remember he mentioned this at any TDC meeting."

**Email from Dr. Bowling to Dr. Huang and Dr. Armanios with cc to Michelle Willbanks, Dr. Crouch, and Dr. Ashfaq-September 24, 2024**
**"…**MECAP can discuss and vote on its operating procedures as long as they do not violate the bylaws or other university rules. Because the bylaws were unclear, we met, discussed, and agreed upon the proper membership. I told you what we agreed upon. If the new bylaws say something different, we will follow them…"

**Email from Dr. Huang to Dr. Bowling and Dr. Armanios with cc to Michelle Willbanks, Dr. Crouch, and Dr. Ashfaq-September 24, 2024**
"…It is not up to you or MECAP members to decide. This needs to be discussed at the faculty meeting and a change of bylaw if necessary.

AECAP has 5 members representing each TDC, a graduate advisor, and an undergraduate advisor. Why is MECAP so special? Why can you just have Nancy there to represent the D&M TDC? With 6 members, who will break the tie? I was the seventh member who would break a tie if needed…"

**Email from Dr. Bowling to Dr. Huang and Dr. Armanios with cc to Michelle Willbanks, Dr. Crouch, and Dr. Ashfaq-September 24, 2024**
"The current bylaws do not say that a member cannot do double duty."

**Email from Dr. Huang to Dr. Bowling and Dr. Armanios with cc to Michelle Willbanks, Dr. Crouch, and Dr. Ashfaq-September 24, 2024**
"MECAP cannot make its own rules. Until there is a new bylaw, the operation of MECAP has to adhere to the existing bylaw, which states that 'Membership encompasses representatives from the Discipline Committees (DCs) and undergraduate and graduate advisors.'"

**Email from Dr. Bowling to Dr. Huang and Dr. Armanios with cc to Michelle Willbanks, Dr. Crouch, and Dr. Ashfaq-September 24, 2024**
"One of our first discussions in MECAP was determining the committee's proper makeup. Members agreed that we could do double duty, so Dr. Nomura represented the mechanics TDC and the graduate advisor. Dr. Michael was the only member not representing a TDC because we needed an undergraduate advisor. You were also considered an extra, attending only because of an agreement between Dr. Armanios and myself. That agreement ended last Spring. I will wait for the new bylaws to see if they suggest a different policy."

**Email from Dr. Huang to Dr. Armanios with cc to Dr. Bowling, Michelle Willbanks, and Dr. Crouch-September 24, 2024**
"The EOS investigation is still ongoing so I am not going to comment on the disparate treatments of me or other female faculties. I believe the truth will prevail.

I am glad to hear that Dr. Dennis will step down as the AECAP and MAECAP chair. He has been conducting AECAP duties that were not ABET related. A consistent policy/practice was what I was asking for.

According to the bylaw, "The Chair will nominate and, in some cases, make assignments to" Department committees. This is the reason why I requested you to reinstate my MECAP membership. I can certainly ask Dr. Adnan to add this item to tomorrow's agenda. Each TDC has two CAP members. Dr. Adnan is a member of the AECAP. Currently, there is no one representing the Mechanics TDC at MECAP. Dr. Nomura is there as a graduate advisor not as a TDC representative."

**Email from Dr. Armanios to Dr. Huang with cc to Dr. Bowling, Michelle Willbanks, and Dr. Crouch-September 24, 2024**
"I am well and do hope you, as well.

The 2/20/2024 email you attached, provides the accurate reason.  It was the potential COI stemming from your position as Associate Chair that precluded you from participating in MECAP, **not your gender.**  You may have overlooked the specifics of the language "the potential COI would preclude the participation of Associate **Chairs.**  Accordingly, going forward, MECAP will carry out its duties without **their** participation. "That is, this decision stemming

from the prerogative of Prof. Bowling in his capacity as Chair of MECAP, was applied to **Both** Associate Chairs: Prof. Subbarao, male, and you!
Referring to the 2020 bylaws, currently under revision, membership of the MECAP "..encompasses representatives from the DC (Discipline Committee) and undergraduate and graduate advisors." The practice has been for the DC Chair to be the representative. If you wish to represent the Structural Mechanics and Structural Optimization Committee, simply express your interest to Prof. Adnan, DC Chair, for a consensus.

I did ask Prof. Dennis to keep serving as Chair of AECAP and MAECAP to avoid interruption while we focus on our ABET accreditation review, a top priority for COE and MAE. **My asking him was based upon focusing on a timely priority and avoiding interruption, not having different practices when a woman and a man is the Associate Chair**. With the site visit completed last week, I know Prof. Dennis will be relieved to hand over these responsibilities at the earliest.

In closing, I would urge you to pause and reflect on the fact that you're not the only woman faculty in MAE. Other MAE women faculty do not echo your accusations. As such, your belief of being 'singled out' based upon sex discrimination would be misplaced."

**Email from Dr. Huang to Dr. Armanios with cc to Dr. Bowling, Michelle Willbanks, and Dr. Crouch-September 20, 2024**
"I trust this email finds you well. Dr. Bowling's witness testimony confirmed that I was a non-voting member of MECAP. Therefore, you misrepresented my membership status in your email approving Dr. Bowling's request to exclude me from the MECAP meetings. His request is not supported by the department bylaw or any written policy. Since I am no longer an associate chair, I am requesting you to reinstate me as the voting member of the MECAP representing the mechanics TDC. I understand that you may need to review the ME/AECAP membership given the graduate faculty policy. Until we have a new bylaw and policy in place, however, singling me out is sex discrimination and is prohibited by EI-PO-08 Sexual Misconduct Policy.

In addition, Dr. Dennis continues to serve as the chair of AECAP and MAECAP. While the department bylaw does not specify the participation of associate chairs in committees, having different practices when a woman and a man is the associate chair is sex discrimination and is prohibited by EI-PO-08.

I look forward to a speedy action to correct these discriminatory practices."

**Email from Dr. Huang to Dr. Armanios and Dr. Bowling with cc to Dr. Kamesh-February 20, 2024**
"I am happy to not attend [sic] any MECAP meetings. I would suggest the MECAP chair to send out a meeting summary after each meeting so we are aware of what they have decided. For example, a major change to the ME BS2PhD program was approved by the MECAP. Both Dr. Nomura and I were not aware of the changes even though both of us were present at the meeting."

**Email from Dr. Armanios to Dr. Huang and Dr. Bowling with cc to Dr. Kamesh-September 20, 2024**
"The Chair of a committee has the prerogative to invite ex-officio members, due to their expertise or input as deemed helpful to the committee in carrying out its duties. Per the email below from Alan, in his capacity as Chair of MECAP, the potential COI would preclude the participation of Associate Chairs. Accordingly, going forward, MECAP will carry out its duties without their participation."

**Email from Dr. Huang to Dr. Bowling with cc to Dr. Armanios and Dr. Kamesh-February 19, 2024**
"Please bring this to Erian's attention. Erian, Kamesh, and I discussed this last year. The decision was we will attend the meeting but we will not vote."

**Email from Dr. Bowling to Dr. Huang-February 19, 2024**
"I know there was a lot of initial talk about the MECAP committee membership when I was appointed chair, but I think you aren't supposed to be on this committee. Your position creates a conflict of interest because of your authority, particularly with respect to GTA appointments and, most likely, other responsibilities. Your attendance can inhibit other faculty from speaking freely because of your authority over different processes in the department. I believe that is why the chair and associate chairs are omitted from most committees. I looked at the bylaws and you aren't included on the MECAP committee. Please check on this."

**Email from Dr. Huang to Dr. Bowling-February 19, 2024**
"Could you please send me the link for the MECAP meeting today?"

<u>**Evidence Provided by Dr. Huang along with her Statement-November 1, 2024**</u>

**Investigator's Note: The following evidence was provided by Dr. Huang and reviewed by the investigator. The documents are not attached to the report and are included in the evidence file.**

1. **MAE Bylaws from February 12, 2020**

**Investigator's Note: Dr. Huang provided multiple emails which were provided by Dr. Bowling previously. The duplicate emails have been removed for brevity. Emails not provided by Dr. Bowling have been included below.**

**Email from Dr. Huang to Dr. Armanios-February 28, 2024**
"Thanks for your time and wisdom. Do you mind giving me some feedback on the following two messages?

Dear Doctoral Core Faculty,

I again apologize that I had [sic] to cancel last Friday's meeting at the last minute. It was [sic] brought to my attention about 2 hours before Friday's meeting that some faculty have concerns [sic] about how the last three meetings have been conducted. After meeting with Erian this morning, I would like to have a meeting to review the process and the decisions [sic] we made so far. Let's meet [sic] again on Friday 3/8 at noon. Hopefully this will give sufficient advance notice so that everyone interested is able to make arrangements [sic] to attend. My intention for these meetings has always been to engage faculty in making decisions [sic] that are important for our graduate program. I am open to any suggestion on how we can do better.

Dear Alan and Brian,

Erian brought to my attention that both of you have concerns about the process of the graduate program review meetings. I would like to meet with you and ask for your suggestions on how to improve the process."

**Email from Dr. Huang to "Doctoral Core Faculty[3]"-March 1, 2024**
"I again apologize that I had to cancel Last Friday's meeting. I was informed by Dr. Armanios about 2 hours before the meeting that some faculty have concerns about the process and the scope of discussion at the graduate program review meetings. Due to this reason, I will not hold any additional meeting on the graduate program review.

From the bottom of my heart, I express my sincere gratitude to everyone who participated in the meetings and surveys."

**Email from Dr. Huang to Dr. Dancila Dragos with cc to Doctoral Core Faculty[4]-February 23, 2024**
"I apologize for any inconvenience. I hope I will be able to provide an explanation after my meeting with Erian on Wed.
Have a nice weekend."

**Email from Dr. Dragos to Dr. Huang with cc to Doctoral Core Faculty-February 23, 2024**
"I may be the only one who thinks this, but it would be considerate to also provide the compelling reason for the cancellation - I assume that it was not an arbitrary last minute decision for convenience. Some of us may have adjusted their schedules to make the meeting, if nothing else.
Thanks for the lunch."

**Email from Dr. Huang to Doctoral Core Faculty-February 23, 2024**

[3] To: Dancila, Dragos S; Bowling, Alan P; Chakravarthy, Animesh; Hullender, David A; Shiakolas, Panos S; Subbarao, Kamesh; Wang, Shuo Linda; Woods, Robert L; Ameri, Amir; Bozlar, Michael; Luo, Cheng; Shayesteh, Narges; Taylor, Robert M; Chudoba, Bernd; Dennis, Brian; Gopal, Vijay; Lu, Frank K; Maddalena, Luca; Zhang, Liwei; Adnan, Ashfaq; Iarve, Endel; Lawrence, Kent L; Wang, Bo P; Lin, Shiyao; Liu, Xin; Makeev, Andrew V; Nomura, Seiichi; Raihan, Md Rassel; Agonafer, Dereje; Amaya, Miguel A; Jain, Ankur; Kim, Daejong; Moon, Hyejin; Tong, Albert Y
Cc: Armanios, Erian A

"Today's meeting on graduate program review is cancelled until further notice.
Thank you all for your support [sic] and input [sic]."

**Email from Dr. Huang to Doctoral Core Faculty-February 19, 2024**
"We are expected to make major decisions on our doctoral programs this Friday, it is very important that you read this message in its entirety.To facilitate an effective meeting on Friday, I would like to emphasize the following:

1. Our current doctoral course requirements give great flexibility to our students and their supervisors. In an ideal world, every faculty and students will do the right thing and we will not even need any changes. In reality, this flexibility comes with a big price. Specifically,

a. many courses, some are essential, cannot make. In spring 2024, 10 out of 25 courses offered did not make. 3 were core courses.

b. enrollments were concentrated in a few courses. Excluding the two math courses, between spring 2018 and spring 2024, 50% of enrollments were concentrated in 9 out of 64 courses. Among them, 3 were electives. See <image001.png> Sp18-Sp24 Enrollment.xlsx for more details. I removed the course title and number to avoid appearing to "shame" a particular course or a TDC.

2. Our faculty are engaged in very diverse research topics. This is our strength but it also makes it challenging to satisfy everyone's needs. We will need to compromise in order to agree on degree requirements that work for most of us.

3. The decisions we made so far were originated from your inputs and/or survey results, and voted by majority at the meetings. Please continue to support this collective decision-making process by entering your inputs before the meeting and attend the meeting. You are welcome to work with a few colleagues and submit a collective proposal. But please do so before the meeting, not after the decision has been made.

4. Once the decision has been made by a majority, I hope everyone will get onboard, even if the decision is not what you original expected.
At the 2/16 meeting, majority of the attendances voted the following for the AE and ME BS2PhD programs:

a. A minimum of 36 credit hours (12 courses) is required, among them
b. 4 course from the course list in students' major area of study
c. 2 courses from the course list in students' minor area of study
d. 2 Math/Engineering Analysis courses
e. 4 elective courses related to the student's areas of interest, among which at most 2 courses can

be independent study.

For this Friday, we will 1) select the courses for the areas of study listed in the catalog; and 2) finalize the course requirements for BS2PhD, MS2PhD, and MS programs. To facilitate the

discussions, please provide your inputs in <image002.png> Faculty inputs for 02232024.docx for the following two questions:

1. Since BS2PhD requires "4 courses from the course list in a major area of study", how many courses should be listed in the course list? One point of reference is that current BS2PhD requires 2 core courses in areas that typically have 3-4 core courses. Some of these core courses did not make.

2. What criteria we should use to select these courses. See <image001.png> Sample Faculty Input Area X.xlsx for the faculty selection of courses for BS2PhD program in a particular area. To minimize bias, the course title and number are omitted. More information can be found in <image003.png> BS2PhD -Course Requirement and Faculty Selection.pptx.

Thanks to [sic] those who submitted the BS2PhD course [sic] plan, please watch out for a separate email with a survey link for your inputs on the course requirements for MS thesis, MS non-thesis, and MS2PhD.

I would like to express my sincere thanks to those who participated in the doctoral program review. Without your inputs and supports, we would not have gotten so far into the process.
I look forward to seeing everyone at this Friday's meeting. I am hopeful that we will accomplish what we are set out to accomplish."

**Email from Dr. Bowling to Dr. Huang-March 5, 2024**
"Didn't get a chance to call back, but honestly, for now I'm a bit worn out on this issue. Really don't want to discuss much more. If you want MECAP to consider some proposal, please send it. I'm going to finish up what we have to do and then enjoy spring break.
Have a great break."

**Email from Dr. Brian Dennis to Dr. Huang-March 26, 2024**
"I forwarded the data you sent me to Alan to get his input since MECAP makes up half the MAECAP committee. Alan basically replied that MECAP had no interest in getting involved, something that I did not know when we spoke on the phone. I respect Alan's input and decision and will not try to countermand it by forcing MECAP members to participate via MAECAP. For that reason, MAECAP will not participate in completing the proposal.

It seems you have something else going with the TDC chairs anyway so just continue with that I guess.
As I wrote before, MECAP and AECAP are available to review proposed catalog changes."

**Email from Dr. Huang to Dr. Dennis-March 25, 2024**
"I assume this applied to MAECAP as well. I am confused. I cancelled the 4th graduate program review meeting because Dr. Armanios told me that both you and Alan objected for me to discuss graduate curriculum at the meetings.

When I talked to your before spring break, you said you had no objection with the graduate program review meetings and agreed to have a MAECAP meeting to review the faculty comments/inputs.
I would like to understand the discrepancies and the reasons behind them. Could you please give me a call when you have time? My schedule is open today and tomorrow but will be traveling on Wed & Thur."

**Email from Dr. Dennis to Dr. Huang-March 25, 2024**
"Yes, that's correct."

**Email from Dr. Huang to Dr. Dennis-March 25, 2024**
"Thanks for getting back to me. My understanding is that both AECAP and MECAP are not interested in involving in the proposal development stage. Am I correct? Just want to be sure."

**Email from Dr. Dennis to Dr. Huang-March 25, 2024**
"I'm getting ready for a meeting that will last at least an hour and then I have classes in the afternoon but I don't want to hold you up.

After talking with Alan, we agree it's best if the proposal is not completed by MAECAP. AECAP is available to review proposed changes to the catalog. MECAP is prepared to do the same."

**Email from Dr. Huang to Dr. Dennis-March 25, 2024**
"Trust you had a nice weekend. Will you have time to give me a call today? Two of the TDC chairs prefer to have a TDC chairs meeting instead of a larger MAECAP meeting to discuss the course selections for the degree requirements. I would like to discuss with you first before scheduling the TDC Chairs meeting.

Your prompt response is greatly appreciated. The TDC Chairs would like to involve the TDC members on the process after the TDC chairs meeting, which I completely agree. As you know, it will get more difficult to schedule the TDC meetings close to the end of the semester. I would like have the TDC chairs meeting ASAP to leave enough time for the TDC meetings."

**Email from Dr. Huang to Dr. Dennis-March 21, 2024**
"Thanks a lot! I am free before 12pm and after 3pm.
Talk to you later!"

**Email from Dr. Dennis to Dr. Huang-March 20, 2024**
"Sorry for the late reply. I have back-to-back classes on Wednesday afternoon followed by office hours. I'll get in touch sometime tomorrow."

**Email from Dr. Huang to Dr. Dennis-March 20, 2024**

"Just want to follow up. Could you please give me a call when you have time? I have a meeting from 2-3pm but other time is open."

**Email from Dr. Hung to Dr. Dennis-March 18, 2024**
"Could you please give me a call when you have time? I talked to all TDC chairs before spring break. Would like to share their perspectives with you and plan for the next step."

## Conclusion and Recommendations

**UTA EI-P04** details that retaliation is, "Any adverse action (including, but is not limited to, intimidation, threats coercion, harassment, or discrimination) threatened or taken against someone because the individual has made a report or filed a Formal Complaint, or who has supported, or provided information in connection with a report or Formal Complaint, participated or refused to participate in a Grievance Process under this policy or engaged in other legally protected activities. An adverse action is one that materially affects a term or condition of an individual's employment, education, living environment or participation in a University activity or program. It includes any conduct which would deter a reasonable person from engaging in protected activity."

On September 30, 2024, Dr. Bowling filed a complaint alleging Dr. Huang retaliated against him for his participation as a witness in a previous EOS Investigation. It is alleged that on October 2, 2024, Dr. Huang emailed Dr. Armanios and Dr. Crouch, quoting Dr. Bowling's statement from a previous EOS interview. It is alleged that Dr. Huang called Dr. Bowling "dishonest" and "unethical." It is alleged that Dr. Huang used the information Dr. Bowling provided during his witness statement in an attempt to harm Dr. Bowling's career and reputation with the department chair and at UTA.

The conclusions in this report will not address information outside of the allegations-such as bylaws or MECAP participation, but rather will focus on Dr. Huang's alleged retaliation against Dr. Bowling for his previous participation in the EOS grievance process.

<u>Timeline of Events</u>

Dr. Huang v. Armanios-Discrimination Complaint

1. 5/31/24-Dr. Huang filed a Discrimination complaint against Dr. Armanios.
2. 7/12/24-Dr. Bowling met with EOS/Title IX office to provide a witness statement.
3. 8/22/24-EOS/Title IX Office released draft EOS report to Dr. Armanios and Dr. Huang which included Dr. Bowling's witness statement.

Dr. Bowling v. Dr. Huang-Retaliation Complaint

1. 9/20/24-Dr. Huang emailed Dr. Armanios, Dr. Bowling, Michelle Willbanks, and Dr. Crouch. Within the body of her email, she referred to Dr. Bowling's witness testimony.
2. 9/25/24-Dr. Huang emailed Dr. Armanios, Dr. Crouch, Mr. Boseman, and Michelle Willbanks, reporting alleged sex discrimination by Dr. Bowling because he allegedly blocked her reinstatement to MECAP. Dr. Huang encouraged Dr. Armanios to reinstate

her and suspend Dr. Bowling from MECAP chair duties until an impartial investigation was completed.

3. 9/25/24-Second email from Dr. Huang to Dr. Armanios and Dr. Crouch stating she would file a report against Dr. Bowling for blocking her from rejoining MECAP.
4. 9/30/24-Dr. Bowling filed a Retaliation complaint against Dr. Huang.
5. 10/2/24-Dr. Huang emailed Drs. Armanios and Crouch, calling Dr. Bowling's behavior "dishonest" and "unethical" and quoted Dr. Bowling's witness statements from the previous EOS investigation report (see evidence section of the report for full email).
6. 10/8/24-EOS/Title IX sends Notice of Formal Complaint to Dr. Huang of the Retaliation complaint filed by Dr. Bowling.
7. 10/8/24-Dr. Huang emailed Dr. Armanios, Dr. Crouch, and Shelby Boseman stating that Dr. Bowling reported her for alleged Retaliation and requested that they report Dr. Bowling for his alleged retaliation by filing a complaint against her.

<u>Evaluation of Retaliation</u>

On July 12, 2024, Dr. Bowling participated as a witness in an EOS investigation addressing Dr. Huang's allegations against Dr. Armanios (EOS/Title IX Case Number: 20234489). Within Dr. Bowling's witness statement, he criticized some of Dr. Huang's behaviors during MECAP meetings, which may have offended Dr. Huang; however, Dr. Bowling had the right to share his experience within the EOS/Title IX process. Dr. Bowling's participation in the process was a protected activity and his witness statement is protected information. There is no evidence that Dr. Bowling's witness statement included materially false information or was knowingly given in bad faith. Before Dr. Bowling approved his witness statement, Dr. Bowling expressed fear of retaliation by Dr. Huang during his meeting with EOS/Title IX and in multiple emails with the previous EOS Investigator, Hannah Love.

The EOS Investigator considered Dr. Huang's counterpoints, narrative, and evidence. During the EOS investigation, the investigator reviewed the evidence file containing multiple emails involving Dr. Bowling, Dr. Armanios, and Dr. Huang. The investigator also reviewed interview notes from Dr. Bowling and Dr. Huang along with witness statements from Dr. Armanios and Dr. Crouch. Dr. Huang raised concerns regarding Dr. Bowling's impact on her attempted reinstatement to MECAP and the fairness of the committee bylaws. Within Dr. Huang's emails, she quoted UTS131 as her justification for addressing Dr. Bowling's behavior and EOS witness statement. UTS 131 section 4.1 states, "All U. T. System employees have a personal and professional obligation to report, or cause to be reported, and to assist in any investigation by persons authorized or responsible for such matters, the following (collectively referred to as "wrongdoing"):

...

(c) conflicts of interests, or dishonest or unethical conduct;
(d) violations of the institution's code of conduct; and
(e) violations of other laws, rules, or regulations. Employees are expected to be truthful and cooperative in investigations of allegations of wrongdoing."

Furthermore, Dr. Huang also addressed UTS 131 Section 5.1 Prohibition Against Disciplinary Action which states, "No U. T. System employee shall take any disciplinary or retaliatory action against any individual for, in good faith, reporting, or causing to be reported, suspected wrongdoing, or for assisting in an authorized investigation of alleged wrongdoing. The prohibition against disciplinary action does not extend to disciplinary action for self-reported violations."

Dr. Huang reported that she acted according to UTS 131 by providing what she believed to be a good-faith report of Dr. Bowling's alleged wrongdoing. While the investigator does not want to diminish her experience or perspective, it is important to recognize the scope and focus of this report.

Two emails from Dr. Huang support a finding of Retaliation. First, on September 25, 2024, Dr. Huang encouraged Dr. Armanios to "suspend" Dr. Bowling from MECAP chair duties. Then, on October 2, 2024, Dr. Huang quoted Dr. Bowling's EOS witness statement and attempted to get him removed from a position of leadership on the basis of the statements made in Dr. Bowling's previous witness statement. Dr. Huang's dissemination of information, from Dr. Bowling's witness statement, was an attempt to negatively impact Dr. Bowling's employment at UTA and if successful, creating an adverse action. The attempted adverse action was requesting that he be removed from his chair position.

Retaliation "**includes any conduct which would deter a reasonable person from engaging in protected activity**." The comments Dr. Huang wrote in her emails, would deter a reasonable person from engaging in future protected activity, in this case participating in UTA EOS/Title IX investigations. Dr. Bowling participated in a protected activity as an EOS witness and emailing his statements to his supervisors in an attempt to have him disciplined would reasonably deter him from participating in the future. This would be akin to Dr. Bowling complaining to Dr. Huang's supervisors when she filed her original complaint and arguing that her statements therein should be used to discipline her. However, Dr. Bowling did not do this, but rather participated in the investigation process and provided his personal thoughts and experience, for which no evidence has been presented to discredit them other than Dr. Huang disagrees with them. Also, Dr. Huang's emails, about Dr. Bowling's witness testimony and alleged misconduct, were proximate to the time Dr. Bowling participated in the previous EOS complaint, supporting a finding of retaliation. Dr. Huang could have complained to EOS, the investigator, the EOS Director or even the Office of Compliance. Rather she chose to involve Dr. Bowling's supervisors, sent them his statements made in the investigation, and asked for action to be taken, which cannot be considered "good faith" as Dr. Huang states.

The investigator finds, based on a preponderance of the evidence, that Dr. Huang is responsible for Retaliation.

Post-Investigation Comments

Dr. Huang submitted the following post-investigation comments:

1. "The official charge letter only referenced the 10/2/2024 email that I sent to Dr. Armanios and copied to Dr. Crouch. The investigation report should only contain information relevant to the five allegations I made in the 10/2/2024 email.
2. The complainant and witnesses did not provide any evidence to refute the five allegations in my 10/2/2024 email. A good faith report on alleged wrongdoings is not retaliation.
3. EI-P04 and EI-PR-03 do not provide immunity to a [sic] witness who provided false statements to the investigator."

Dr. Bowling did not submit any post-investigation comments.

<u>EOS/Title IX Response</u>

The Title IX investigator reviewed Dr. Huang's post-investigation comments. Regarding comment one, the allegations provided in the Notice of Formal Complaint (NOFC) were limited to Dr. Huang's email sent on October 2, 2024. Second, the complainant and witnesses were not responsible for refuting information provided by the respondent.

Dr. Huang asserted that she made a good-faith report of alleged wrongdoing by Dr. Bowling. While Dr. Huang believed her report was in good faith, the investigator did not find evidence that the report was made in good faith. First, Dr. Huang didn't provide any evidence that Dr. Bowling had any discriminatory pattern or that he lied in his statements in the earlier EOS investigation. Second, Dr Huang was attempting an adverse action, which would benefit herself, by reporting Dr. Bowing and specifically requesting he be suspended from his Chair position. Dr. Huang's report would have been viewed differently if Dr. Huang had not directly quoted Dr. Bowling's statement from a protected activity.

The conclusion already provided the analysis by the Investigator of the complaint and various responses to it. That information will not be repeated here.

**Director of EOS/Title IX Coordinator Reviewed:**

*Michelle Willbanks* – electronic signature 2-4-2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

HAIYING HUANG,

Plaintiff,

v.

UNIVERSITY OF TEXAS ARLINGTON,

Defendant.

Civil Action No. 4:25-cv-00181-P

**PLAINTIFF'S AMENDED INITIAL DISCLOSURE PURSUANT TO FRCP 26(a)(1)**

HAIYING HUANG, by and through their attorneys White, Rose & Hilferty P.C., make the following initial disclosures pursuant Fed. R. of Civ. P. 26(a)(1):

A. Each individual likely to have discoverable information that Petitioners may use to support claims or defenses in this matter:

1. ***Haiying Huang- Plaintiff:***

Dr. Huang is likely to have discoverable information regarding Dr. Huang's claims of discrimination based on race, sex, and national origin, and retaliation, including: (1) alleged undermining of her authority; (2) removal from leadership roles and committees; (3) assignment of disproportionate workload compared to similarly situated colleagues; (4) Defendant's denial of promotional opportunities afforded to employees outside her protected class; and (5) Defendant's handling of discrimination complaints made by and against Plaintiff.

2. ***Stefan Dancila- Associate Professor:***

Dancila is likely to have discoverable information regarding Plaintiff's claims of

discrimination based on race, sex, and national origin, including: (1) selection of Plaintiff for Associate Chair Position; (2) alleged undermining of Plaintiff's authority; (3) removal of Plaintiff from leadership roles and committees; (4) assignment of disproportionate workload to Plaintiff compared to similarly situated colleagues; (5) Defendant's denial of promotional opportunities to Plaintiff afforded to employees outside her protected class; and (6) Defendant's handling of discrimination complaints made by and against Plaintiff.

3. ***Erian Armanios- Department Chair:***

Armanios is likely to have discoverable information regarding Plaintiff's claims of discrimination based on race, sex, and national origin, and retaliation, including: (1) selection of Plaintiff for Associate Chair Position; (2) alleged undermining of Plaintiff's authority; (3) removal of Plaintiff from leadership roles and committees; (4) assignment of disproportionate workload to Plaintiff compared to similarly situated colleagues; (5) Defendant's denial of promotional opportunities to Plaintiff afforded to employees outside her protected class; and (6) Defendant's handling of discrimination complaints made by and against Plaintiff.

4. ***Andrew Makeev- Professor:***

Makeev is likely to have discoverable information regarding Plaintiff's claims of discrimination based on race, sex, and national origin, including: (1) alleged undermining of Plaintiff's authority; (2) removal of Plaintiff from leadership roles and committees; (3) assignment of disproportionate workload to Plaintiff compared to similarly situated colleagues; (4) Defendant's denial of promotional

opportunities to Plaintiff afforded to employees outside her protected class; and (5) Defendant's handling of discrimination complaints made by and against Plaintiff.

5. ***Brian Dennis- Professor:***

Dennis is likely to have discoverable information regarding Plaintiff's claims of discrimination based on race, sex, and national origin, including: (1) selection of Plaintiff for Associate Chair Position; (2) alleged undermining of Plaintiff's authority; (3) removal of Plaintiff from leadership roles and committees; (4) assignment of disproportionate workload to Plaintiff compared to similarly situated colleagues; (5) Defendant's denial of promotional opportunities to Plaintiff afforded to employees outside her protected class; and (6) Defendant's handling of discrimination complaints made by and against Plaintiff.

6. ***Kamesh Subbarao- Graduate Advisor:***

Subbarao is likely to have discoverable information regarding Plaintiff's claims of discrimination based on race, sex, and national origin, including: (1) alleged undermining of Plaintiff's authority; (2) removal of Plaintiff from leadership roles and committees; (3) assignment of disproportionate workload to Plaintiff compared to similarly situated colleagues; (4) Defendant's denial of promotional opportunities to Plaintiff afforded to employees outside her protected class; and (5) Defendant's handling of discrimination complaints made by and against Plaintiff.

7. ***Seiichi Nomura- Graduate Advisor:***

Nomura is likely to have discoverable information regarding Plaintiff's claims of discrimination based on race, sex, and national origin, including: (1) alleged

undermining of Plaintiff's authority; (2) removal of Plaintiff from leadership roles and committees; (3) assignment of disproportionate workload to Plaintiff compared to similarly situated colleagues; (4) Defendant's denial of promotional opportunities to Plaintiff afforded to employees outside her protected class; and (5) Defendant's handling of discrimination complaints made by and against Plaintiff.

8. ***Ratan Kumar- Graduate Advisor:***

Kumar is likely to have discoverable information regarding Plaintiff's claims of discrimination based on race, sex, and national origin, including: (1) alleged undermining of Plaintiff's authority; (2) removal of Plaintiff from leadership roles and committees; (3) assignment of disproportionate workload to Plaintiff compared to similarly situated colleagues; (4) Defendant's denial of promotional opportunities to Plaintiff afforded to employees outside her protected class; and (5) Defendant's handling of discrimination complaints made by and against Plaintiff.

9. ***Nancy Michael- Undergraduate Advisor:***

Michael is likely to have discoverable information regarding Plaintiff's claims of discrimination based on race, sex, and national origin, including: (1) alleged undermining of Plaintiff's authority; (2) removal of Plaintiff from leadership roles and committees; (3) assignment of disproportionate workload to Plaintiff compared to similarly situated colleagues; (4) Defendant's denial of promotional opportunities to Plaintiff afforded to employees outside her protected class; and (5) Defendant's handling of discrimination complaints made by and against Plaintiff.

10. ***Robert Taylor- Design & Manufacturing Technical Discipline Committee Chair:***

Taylor is likely to have discoverable information regarding Plaintiff's claims of discrimination based on race, sex, and national origin, and retaliation, including: (1) alleged undermining of Plaintiff's authority; (2) removal of Plaintiff from leadership roles and committees; (3) assignment of disproportionate workload to Plaintiff compared to similarly situated colleagues; (4) Defendant's denial of promotional opportunities to Plaintiff afforded to employees outside her protected class; and (5) Defendant's handling of discrimination complaints made by and against Plaintiff.

11. ***Amber Hannah Love- Equal Opportunity Services Investigator:***

Love is likely to have discoverable information regarding Plaintiff's claims of discrimination based on race, sex, and national origin, and retaliation, including: (1) alleged undermining of Plaintiff's authority; (2) removal of Plaintiff from leadership roles and committees; (3) assignment of disproportionate workload to Plaintiff compared to similarly situated colleagues; (4) Defendant's denial of promotional opportunities to Plaintiff afforded to employees outside her protected class; and (5) Defendant's handling of discrimination complaints made by and against Plaintiff.

12. ***Michelle Willbanks- Equal Opportunity Services Director and Title IX Coordinator:***

Wilbanks is likely to have discoverable information regarding Plaintiff's claims of discrimination based on race, sex, and national origin, and retaliation, including: (1) alleged undermining of Plaintiff's authority; (2) removal of Plaintiff from

leadership roles and committees; (3) assignment of disproportionate workload to Plaintiff compared to similarly situated colleagues; (4) Defendant's denial of promotional opportunities to Plaintiff afforded to employees outside her protected class; and (5) Defendant's handling of discrimination complaints made by and against Plaintiff.

***13. Alan Bowling- Mechanical Engineering Committee on Academic Programming Chair:***

Bowling is likely to have discoverable information regarding Plaintiff's claims of discrimination based on race, sex, and national origin, and retaliation, including: (1) alleged undermining of Plaintiff's authority; (2) removal of Plaintiff from leadership roles and committees; (3) assignment of disproportionate workload to Plaintiff compared to similarly situated colleagues; (4) Defendant's denial of promotional opportunities to Plaintiff afforded to employees outside her protected class; and (5) Defendant's handling of discrimination complaints made by and against Plaintiff.

***14. Zhen Han- Professor of Instruction:***

Han is likely to have discoverable information regarding Plaintiff's claims of discrimination based on race, sex, and national origin, including: (1) selection of Plaintiff for Associate Chair Position; (2) alleged undermining of Plaintiff's authority; (3) removal of Plaintiff from leadership roles and committees; and (4) assignment of disproportionate workload to Plaintiff compared to similarly situated colleagues.

***15. Albert Tong Associate Professor:***

Tong is likely to have discoverable information regarding Plaintiff's claims of discrimination based on race, sex, and national origin, including: (1) alleged undermining of Plaintiff's authority; (2) removal of Plaintiff from leadership roles and committees; (3) assignment of disproportionate workload to Plaintiff compared to similarly situated colleagues; and (4) Defendant's denial of promotional opportunities to Plaintiff afforded to employees outside her protected class.

B. All documents and/or tangible things in the possession, custody or control of Petitioners that may be used to support any claim or defense in this matter: email correspondence and communications between parties regarding Plaintiff's discrimination complaints; email correspondence between Plaintiff and Defendant's employees; Plaintiff's payroll documents; Equal Opportunity Services investigation documents; and additional documents to be provided - Investigation ongoing.

C. Computation of damages claimed by Plaintiff:

1. Economic Damages:

   i. $21,656.69 (one month base salary) plus $4,000 ($400/month stipend x 10 months) lost past wages for 2024;

   ii. $22,598.10 (one month base salary) plus $4,000 ($400/month stipend x 10 months) anticipated lost wages for 2025;

   iii. $22,598.10 plus anticipated contractual raise (one month base salary), plus $4,000 ($400/month stipend x 10 months) anticipated lost future wages for

2026;

iv. $6,701.65, representing lost 8.5% contribution to retirement account;

2. Emotional Damages: $300,000;

3. Attorney's Costs and Fees: $75,000 to date and continuing, in an amount to be determined at trial.

D. Insurance agreements: Not applicable.

Plaintiff reserves the right to supplement these disclosures as new information, documents and/or tangible things become available.

Dated: New York, New York
March 3, 2026

**WHITE, ROSE, & HILFERTY, P.C.**
BY: */s/ Michael P. Hilferty*
**MICHAEL P. HILFERTY**
NYS Bar No. 4719498 (*Pro Hac Vice)*
**TUBA J. FAROOQUI**
NYS Bar No. 6101356 (*Pro Hac Vice*)
*Attorneys For Plaintiff*
757 Third Avenue, 20th Floor
New York, NY 10017
Telephone: (646) 452-8091
Facsimile: (646) 690-8897
mph@nycjobattorney.com
tfarooqui@nycjobattorney.com

**CHERRY JOHNSON SIEGMUND JAMES, PLLC**
BY: */s/ Mark D. Siegmund*
**MARK D. SIEGMUND**
State Bar No. 24117055
**WILLIAM D. ELLERMAN**
State Bar No. 24007151
8140 Walnut Hill Lane, Suite 830
Dallas, Texas 75231

Telephone: (254) 732-2242
Facsimile: (866) 627-3509
msiegmund@cjsjlaw.com
wellerman@cjsjlaw.com

3/4/2024

~~West~~ Dauphinot Law Firm (March 13
817-462-0676
$200. March 13 Wed. (Taylor)

*~~Sean Edward Persner 817-653-0567~~
Kilgore & Kilgore PLLC. 214-969-9099
(Beth) NO
*The Sanford firm. 972-372-9289

* Rob Wiley. 214-528-6500
~~Texas Aid legal Aid~~.
3/6 $250 Zoom meeting resignation
On Friday 3/1, Erian asked for my resig
Consult lawyer as regarding potential
Re: gender & racial discrimination
- Erian told Brian Lewin's that I got
the associate chair position because
I am minority | → Fan said Brian
said this not Erian
- I felt I have always been an outsider
- he trust his insider more than ...

Re: your work issue

From: Haiying Huang (haiying_huang@yahoo.com)

To: dem@kilgorelaw.com

Cc: reg@kilgorelaw.com; sks@kilgorelaw.com

Date: Thursday, March 7, 2024 at 10:41 PM CST

Thank you for following up with my inquiry. Please see my response below.

Looking forward to hearing back from you.

Haiying

Sent from my iPhone

On Mar 7, 2024, at 9:29 AM, Bess Masterson <dem@kilgorelaw.com> wrote:

Ms. Huang,

Thank you for letting us review your potential claim. I am sorry to hear about what happened. To determine whether we can help, please answer the following questions:

What is your race/national origin?
Asian/P.R.China

From what leadership position were you asked to resign?

Associate department chair

For what stated reason were you asked to resign?

I had a three hour meeting with the department chair discussing an issue on last Wed 2/28. On Friday 3/1, the chair asked for my resignation. He said he is very busy and the discussion on Wed worn him out. He said he wants someone with more experience.

Message

**From:** Huang, Haiying [huang@uta.edu]
**Sent:** 12/19/2024 12:05:31 PM
**To:** Willbanks, Michelle [michelle.willbanks@uta.edu]
**CC:** Crouch, Peter E [peter.crouch@uta.edu]; Cowley, Jennifer [jennifer.cowley@uta.edu]; Brown, Tamara [tamara.brown@uta.edu]; Cordero, Minerva [cordero@uta.edu]; Boseman, Shelby L [sboseman@uta.edu]
**Subject:** RE: TDC and AECAP leadership

Dear Ms. Wilbanks,

Thank you so much for responding so promptly. I greatly appreciate your support.

I believe that the seriousness of this matter warrants an emergency departmental meeting or announcement to reaffirm UTA's policies on discrimination and retaliation. It is imperative to address this issue promptly to ensure a safe environment for everyone in the department to raise discrimination concerns and to collaborate with the investigation without fear of retaliation.

I have also raised my concern about selecting Dr. Subbarao as the interim chair amid an ongoing title IX investigation against him in a separate email. On 12/02/2024, I reported to the title IX investigator that Dr. Subbarao questioned a witness about an incident I reported in the previous investigation. I believe his action amounts to witness intimidation that could deter a key witness from participating in the ongoing title IX investigation.

Thank you very much for your attention to this urgent matter. I look forward to your response.

Best Regards,

Haiying Huang
Professor of Mechanical and Aerospace Engineering

---

**From:** Willbanks, Michelle <michelle.willbanks@uta.edu>
**Sent:** Thursday, December 19, 2024 10:32 AM
**To:** Huang, Haiying <huang@uta.edu>
**Cc:** Crouch, Peter E <peter.crouch@uta.edu>
**Subject:** RE: TDC and AECAP leadership

Dear Dr. Huang,

Thank you for sharing. I understand your concerns. Let me and my team look into this, and I'll be in touch soon.

Best,

Michelle Willbanks
Director EOS,Title IX Coordinator
University Administration Building
701 S. Nedderman Dr.
Arlington, TX 76019
817.272.4585
eoaa.uta.edu
titleix@uta.edu

UNIVERSITY OF TEXAS ARLINGTON

**From:** Huang, Haiying <huang@uta.edu>
**Sent:** Wednesday, December 18, 2024 6:17 PM
**To:** Willbanks, Michelle <michelle.willbanks@uta.edu>
**Cc:** Crouch, Peter E <peter.crouch@uta.edu>
**Subject:** FW: TDC and AECAP leadership

Dear Ms. Willbanks,

I trust this email finds you well. I am requesting immediate protection from the title IX office to place Dr. Armanios on administrative leave.

Please see below an email Dr. Armanios sent to the entire department. It was his response to an email I sent to him raising my concerns about potential discrimination in committee appointments.

I believe Dr. Armanios retaliated against me for raising my discrimination concerns. In framing my legitimate concerns as divisive and sharing it with the entire department, I believe Dr. Armanios intended to discourage any future complaints of discrimination. By sharing this sensitive matter with the Department, especially Dr. Dennis, Dr. Armanios's action could exacerbate the hostile work environment I experienced in the past two years. As a faculty member, I have the right to communicate to my supervisor about discrimination concerns without fear of retaliation.

Dr. Armanios's action could also be perceived as interfering with the ongoing title IX investigation. Forwarding my email to the entire department could deter potential witnesses from collaborating with the investigation. I believe Dr. Armanios has already shared the report of the previous investigation with others. His disregard of confidentiality significantly elevates the risk of witness intimidation.

I strongly believe that Dr. Armanios needs to be placed on administrative leave immediately to prevent further discrimination/retaliation and to ensure that the investigation can be conducted fairly without undue influence or intimidation from him.

Thank you for your attention on this urgent matter.

Best Regards,

Haiying Huang
Professor of Mechanical and Aerospace Engineering

**From:** Armanios, Erian A <armanios@uta.edu>
**Sent:** Wednesday, December 18, 2024 3:37 PM
**To:** Adnan, Ashfaq <aadnan@uta.edu>; Agonafer, Dereje <agonafer@uta.edu>; Amaya, Miguel A <mamaya@uta.edu>; Ameri, Amir <amir.ameri@uta.edu>; Ameri, Nora <nora.ameri@uta.edu>; Armanios, Erian A <armanios@uta.edu>; Benavides, Julio Cesar <julio.benavides@uta.edu>; Bowling, Alan P <bowling@uta.edu>; Bozlar, Michael <bozlar@uta.edu>; Chakravarthy, Animesh <animesh.chakravarthy@uta.edu>; Chudoba, Bernd <chudoba@uta.edu>; Dancila, Dragos S <dancila@uta.edu>; Davidson, Paul <paul.davidson@uta.edu>; Dennis, Brian <dennisb@uta.edu>; Dogan, Atilla <dogan@uta.edu>; Ewing, David J <david.ewing@uta.edu>; Fernandez, Raul <fernandez@uta.edu>; Gopal, Vijay <vijay.gopal@uta.edu>; Haji-Sheikh, Abdolhossein <haji@uta.edu>; Han, Zhen Xue <han@uta.edu>; Hays-Stang, Kathy J <haysstang@uta.edu>; Huang, Haiying <huang@uta.edu>; Hullender, David A <hullende@uta.edu>; Iarve, Endel <endel.iarve@uta.edu>; Jain, Ankur <jaina@uta.edu>; Kilmain, Catherine H <catherine.kilmain@uta.edu>; Kim, Daejong

<daejongkim@uta.edu>; Kumar, Ratan <ratan.kumar@uta.edu>; Lawrence, Kent L <lawrence@uta.edu>; Lin, Shiyao <shiyao.lin@uta.edu>; Liu, Xin <xin.liu@uta.edu>; Lu, Frank K <franklu@uta.edu>; Luo, Cheng <chengluo@exchange.uta.edu>; Maddalena, Luca <luca@uta.edu>; Makeev, Andrew V <makeev@uta.edu>; Michael, Nancy L <nancym@uta.edu>; Moon, Hyejin <HYEJIN.MOON@uta.edu>; Nomura, Seiichi <nomura@uta.edu>; Raihan, Md Rassel <mdrassel.raihan@uta.edu>; Reifsnider, Kenneth <kenneth.reifsnider@uta.edu>; Santhanagopalan, Sunand <ssanthan@uta.edu>; Shen, Wen <wen.shen@uta.edu>; Shiakolas, Panos S <shiakolas@uta.edu>; Subbarao, Kamesh <subbarao@uta.edu>; Taylor, Robert M <TAYLORRM@uta.edu>; Tong, Albert Y <tong@uta.edu>; Vanga, Sneha Reddy <sneha.vanga@uta.edu>; Wang, Bo P <bpwang@uta.edu>; Wang, Shuo Linda <shuolinda.wang@uta.edu>; Woods, Robert L <woods@uta.edu>; Zhang, Liwei <liwei.zhang@uta.edu>; Baker, Michael L <mbaker@uta.edu>; Carpenter, David H <dhcarpenter@uta.edu>; Carter, J. David <david.carter@uta.edu>; Fatima, Ayesha <ayesha.fatima@uta.edu>; Gordon, Delania <lanie@uta.edu>; Gruebbel, Catherine E <gruebbel@uta.edu>; Hampton, Dorothy L <dlhampton@uta.edu>; MacNeil, Joseph D <david.macneil@uta.edu>; Markwardt, Travis Bryan <travis.markwardt@uta.edu>; Pinegar, Flora <pinegar@uta.edu>; Priester, Kathleen Merz <priester@uta.edu>; Ryan, Wendy Lee <wendy.ryan@uta.edu>; Stille, Danette <danette.stille@uta.edu>; Winfrey, Rex C <rex.winfrey@uta.edu>
**Cc:** Crouch, Peter E <peter.crouch@uta.edu>; Peterson, Lynn <peterson@uta.edu>
**Subject:** FW: TDC and AECAP leadership
**Importance:** High

Dear Colleagues,
As 2024 comes to a close, I find myself reflecting with gratitude on the enduring spirit that unites us, transcending what could otherwise divide us—whether by academic rank (Assistant, Associate, or Full Professor), appointment type (APT or tenure stream), birthplace, or gender. What truly binds us, and continues to do so, is our shared purpose: to provide our students with the best possible learning experience and to nurture their potential through excellence in education, powered by exceptional research.
I have been deeply moved by the many heartfelt messages you've shared with me since I announced my retirement. In return, I choose to dwell on what uplifts me: your remarkable accomplishments, which make our professional family MAE so special. I resolutely focus on the positive and leave the discouraging behind: Dwelling on the uplifting, zipping through the depressing!
May 2025 bring you good health, the wealth of family love, and the enduring respect of friends.
Warm regards,
Erian

Dr. Erian Armanios
Professor and Chair,
T: 817-272-2603
F: 817-272-5010
E: armanios@uta.edu
http://www.uta.edu/mae

Mechanical & Aerospace Engineering
The University of Texas Arlington
Arlington, TX 76019-0018

Follow MAE on Social Media!

**From:** Huang, Haiying <huang@uta.edu>
**Sent:** Wednesday, December 18, 2024 11:01 AM
**To:** Armanios, Erian A <armanios@uta.edu>
**Cc:** Subbarao, Kamesh <subbarao@uta.edu>; Crouch, Peter E <peter.crouch@uta.edu>
**Subject:** RE: TDC and AECAP leadership

Dr. Armanios,

I trust this email finds you well. Will Dr. Dennis continue to serve as the chair of MAECAP? Per Dr. Bowling, "the chair and associate chairs are omitted from most committees" because of conflicts of interest. I believe Dr. Dennis still serves as chairs of multiple committees after he became the associate chair.

Could you please share a list of all committee members? Based on the table below, US born faculty are overrepresented as CAP members and Chairs of CAPs & TDCs. Women, especially foreign-born women, are under-represented. Per the department bylaw, the appointment of committee positions should be reviewed annually. I would like to request a timely review of committee appointments to ensure that the committee members and leadership represent the demography of the faculty.

Best Regards,

Haiying Huang

| Total | All | US born | % | Female | % | Female + Foreign born | % |
|---|---|---|---|---|---|---|---|
| All | 47 | 10 | 21.3% | 8 | 17.0% | 6 | 12.8% |
| Excluding Assist Prof | 40 | 9 | 22.5% | 7 | 17.5% | 5 | 12.5% |
| Full | 19 | 4 | 21.1% | 1 | 5.3% | 1 | 5.3% |
| Associate | 8 | 0 | 0.0% | 3 | 37.5% | 3 | 37.5% |
| Assistant | 7 | 0 | 0.0% | 1 | 14.3% | 1 | 14.3% |
| APT | 13 | 6 | 46.2% | 3 | 23.1% | 1 | 7.7% |
| Tenure stream | 34 | 4 | 11.8% | 5 | 14.7% | 5 | 14.7% |
| CAPs | 13 | 5 | 38.5% | 2 | 15.4% | 0 | 0.0% |
| CAP &TDC chairs | 8 | 3 | 37.5% | 0 | 0.0% | 0 | 0.0% |

**From:** Armanios, Erian A <armanios@uta.edu>
**Sent:** Monday, December 16, 2024 10:17 AM
**To:** Adnan, Ashfaq <aadnan@uta.edu>; Dancila, Dragos S <dancila@uta.edu>; Davidson, Paul <paul.davidson@uta.edu>; Iarve, Endel <endel.iarve@uta.edu>; Lin, Shiyao <shiyao.lin@uta.edu>; Liu, Xin <xin.liu@uta.edu>; Huang, Haiying <huang@uta.edu>; Karbhari, Vistasp <vkarbhari@uta.edu>; Kilmain, Catherine H <catherine.kilmain@uta.edu>; Makeev, Andrew V <makeev@uta.edu>; Nomura, Seiichi <nomura@uta.edu>; Raihan, Md Rassel <mdrassel.raihan@uta.edu>; Wang, Bo P <bpwang@uta.edu>; Benavides, Julio Cesar <julio.benavides@uta.edu>; Bozlar, Michael <bozlar@uta.edu>; Michael, Nancy L <nancym@uta.edu>; Luo, Cheng <chengluo@exchange.uta.edu>; Taylor, Robert M <TAYLORRM@uta.edu>
**Cc:** Subbarao, Kamesh <subbarao@uta.edu>; Dennis, Brian <dennisb@uta.edu>
**Subject:** TDC and AECAP leadership

Dear Colleagues,
I trust you're well
I would like to extend my heartfelt thanks to Prof. Adnan for his exceptional dedication in chairing the Structural Mechanics and Structural Optimization DC. Prof. Adnan will now serve as the Chair of AECAP. Prof. Nomura has graciously accepted the role of Chair for the Structural Mechanics and Structural Optimization DC.
Regards and stay well
Erian

Dr. Erian Armanios
Professor and Chair,
T: 817-272-2603

Dr. Huang's Formal Complaint Allegations

I am deeply saddened by Dr. Huang's utterly wrong belief that her being relieved of her duties as Associate Chair is *"a retaliation because I questioned the chair's and some colleague's discriminative behaviors"*! To place my deep sadness into context, I would offer my long history of relentless support of Dr. Huang starting from the time I have known her as graduate student at Georgia Tech (GT) in the mid-90s. I was a member of her PhD Thesis Committee, wrote subsequently letters of support for her application to a Post Doctoral position at GT and to the US Immigration and Naturalization Service for her permanent residency petition. Upon joining UTA as department Chair in 2009, I strongly recommended her for early tenure and promotion to the rank of Associate Professor, and four years later to promotion to the rank of Professor. I nominated her for the COE Excellence in Research Award, the COE Award for Distinguished Record of Research, the COE Award for Outstanding Research Achievement or Creative Accomplishment, and of course for the Executive Leadership in Academic Technology, Engineering and Science (ELATES) program, that led to her appointment as Associate Chair.

While Dr. Huang made remarkable contributions to our graduate recruitment, she struggled in implementing other initiatives and appreciating the governance process

**Subject: Justification for Relieving Associate Chair from Duties**

Dear [Appropriate Recipient's Name],

I am writing to formally recommend relieving [Associate Chair's Name] from her duties as Associate Chair. This recommendation is based on several persistent complaints regarding her leadership style and conduct. The specific issues include:

1. **Authoritarian Attitude:**
   - [Associate Chair's Name] has consistently demonstrated an authoritarian approach, imposing decisions without seeking input from other committee members or faculty.
   - Her unwillingness to consider alternative viewpoints has hindered collaboration and stifled creativity within the department.
2. **Lack of Consensus Building:**
   - Instead of striving to build consensus, [Associate Chair's Name] has often disregarded the opinions and concerns of others.
   - A successful leadership role requires fostering an environment where diverse perspectives are valued and consensus is actively sought.
3. **Disregard for Robert's Rules:**
   - [Associate Chair's Name] has repeatedly violated established meeting procedures outlined in Robert's Rules of Order.

- These rules are essential for maintaining order, ensuring fair discussions, and respecting the roles of committees.

4. **Failure to Ensure Quorum:**
   - [Associate Chair's Name] has neglected her responsibility to ensure quorum during meetings.
   - This lack of diligence undermines the effectiveness of committee decisions and compromises our department's governance.

Furthermore, I am deeply saddened that [Associate Chair's Name] did not view faculty pushback as an opportunity to pause, reflect, and change course of action. Instead, she accused faculty members of discrimination based on gender, which further exacerbated the situation.

Considering the cumulative impact of these issues, I believe it is in the best interest of the department to relieve [Associate Chair's Name] from her current position. Doing so will allow us to restore a more collaborative and respectful leadership environment.

Please let me know if you require any additional information or clarification.

Thank you for your attention to this matter.

Sincerely,

[Your Name] [Your Position] [Department/Division]