**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| HAIYING HUANG,<br>*Plaintiff*, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. 4:25-cv-00181-P |
| UNIVERSITY OF TEXAS ARLINGTON,<br>*Defendant.* | §<br>§<br>§ | |

---

**DEFENDANT'S BRIEF IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO ENTER JUDGMENT AND FOR FRONT PAY, ATTORNEYS' FEES, AND AFFIRMATIVE INJUNCTIVE RELIEF**

---

**TO THE HONORABLE JUDGE MARK PITTMAN:**

Defendant, The University of Texas at Arlington ("UTA"), files this brief in support of the response in opposition to the Motion to Enter Judgment and For Attorneys' Fees and Costs, Front Pay, and Injunctive Relief, and respectively shows the Court the following:

**BACKGROUND**

Plaintiff, Dr. Haiying Huang, filed suit against UTA for race, sex, and national origin discrimination, harassment based on race, sex, and national origin, and retaliation after she was removed from a discretionary, administrative position within the Mechanical and Aerospace Engineering Department ("MAE") at UTA. Dkt. 31. After a three-day jury trial, a seven-person jury found that UTA was not liable for discriminating against Plaintiff on the basis of sex. The jury also found that UTA retaliated against Plaintiff when she was removed from said administrative position and that the retired chair of the MAE department had harassed her based on her sex. Dkt. 124. The jury awarded Plaintiff $65,000.00 in backpay and $10,000.00 in compensatory damages. *Id.*

During trial, UTA objected to the presentation of Plaintiff's testimony related to her front pay. Dkt. 119. For the entire duration of this lawsuit, Plaintiff evaded questions about her request for front pay. *Id.* At trial, Dr. Huang testified that she was seeking thirteen years of front pay for the associate chair position. She claimed that the associate chair position was "perpetual," that she planned on working at UTA until she turned seventy years old, and thus she would have been in the position for that long. *Id.* Plaintiff is not an economist, but she executed a post-trial affidavit adjusting her damages based on "cost of living" adjustments, "current rate of money," and other percentages that were never presented to UTA at any point during the course of this litigation. Dkt. 131 at 27–29. This Honorable Court has requested briefing regarding front pay, attorneys' fees,

and any other equitable relief Plaintiff believes to which she is entitled. Plaintiff seeks front pay three times the value of her backpay, along with hundreds of thousands of dollars in attorney's fees that, by law, Plaintiff is not entitled to.

Less than two business days before trial, Plaintiff sought to amend her pleadings to include claims related to the chair position within MAE as well as claims related to the failed settlement, which this Honorable Court already ruled was null and void due to a lack of meeting of the minds. Dkt. 107, Dkt. 111. Since the verdict, Plaintiff has filed a second lawsuit to bring the claims that were subject to the leave to amend. App'x 0083. As part of this lawsuit, she seeks front pay in addition to front pay from this lawsuit:

> For the permanent Chair non-selection, Dr. Huang seeks back pay and employment benefits she would have received but for the unlawful decisions, less appropriate earnings and offsets. She seeks instatement or other appropriate equitable relief and, if instatement is inappropriate, *front pay to the extent authorized and supported by the evidence*.

App'x 0104. Despite assertions to the contrary and an attempt to force UTA into a second round of discovery on associate chair front pay, Plaintiff seeks a triple recovery. This Court must curtail such blatant abuses of the process.

**A. <u>Attorneys' Fees</u>**

Under Title VII, a court *may* award attorneys' fees to the prevailing party. *See* 42 U.S.C. § 2000e-5(k). UTA contends that, given the grandiose errors made in the billing records, Plaintiff should not recover, and if she were to obtain an attorney's fees award, it be significantly reduced.

1. <u>Plaintiff's fees are unnecessarily and impermissibly inflated.</u>

Plaintiff's assertion that "Counsel exercised billing judgment and wrote off unproductive, excessive, or redundant hours, as well as purely clerical work performed by legal assistants" is undercut by the actual entries Dkt. 132 ¶ 2.8

Plaintiff seeks to recover over $200,000.00 in attorneys' fees for less than six months of

work at an hourly rate well above the average in the area. Courts within this district have found that a $450.00 an hour rate for an attorney with less than seven years of experience was excessive and $395.00 for an attorney with less than five years of experience was excessive. *Williams v. Sake Hibachi Sushi & Bar Inc.*, 574 F. Supp. 3d 395 (N.D. Tex. 2021)

In addition, the State Bar of Texas conducts a review of the average income and hourly rate of attorneys across Texas. In 2025, the average hourly rate across Texas was $368.00 an hour. App'x 000010. In the Dallas/Fort Worth Metropolitan Area, the average hourly rate was $388.00. App'x 000011. Every single attorney in this case far exceeds this average amount, no matter how much experience they have. UTA would suggest that an hourly rate of $300.00 for Ian Klein, $400.00 for Stefanie Klein and Anne Michels, and $500.00 an hour for Frank Hill is reasonable. With that adjustment, fees would be $158,024.50. However, as outlined below, many of the entries are not recoverable, further limiting what the Court should consider in granting the award,

2. <u>The fee request includes charges for work completely unrelated to this lawsuit.</u>

Several billing entries Plaintiff seeks to recover relate to her new charges of discrimination filed with the EEOC *after* the first trial setting. *See* Exhibit B, highlighted copy of Plaintiff's contemporaneous billing records reflecting work done on new EEOC charges. None of these EEOC charges are before the Court. It cannot be reasonably said, therefore, that those billing entries are recoverable. This is further compounded by the block billing issue. *See supra.* Work related to claims not before the court are intermixed with work that may actually be recoverable.

Second, Plaintiff cannot recover on failed motions, particularly the failed Motion for Leave to File Amended Complaint and the Motion to Enforce the Settlement Agreement. As this Honorable Court stated in its denial of the Motion for Leave.

Third, Plaintiff's attorneys' fees are unnecessarily inflated due to her refusal to dismiss her

race and national origin claims until the charge conference. This is evident by comparing the joint proposed jury charge, 22 pages, and the charge read to the jury, 12 pages. Plaintiff knew from her *opening statement* that they were only pursuing a case of, as Mr. Hill put it, "UTA punishing [her] for being a mouthy woman." At no point during the course of the three-day trial did Plaintiff attempt to put on any evidence that her was discriminated against or harassed based on a protected class other than her sex. Now, to seek fees related to her race and national origin claims that were never pursued is unreasonable at best, and disingenuous, at worst. *Kostic v. Tex. A&M University-Commerce* supports UTA's argument that Plaintiff should not recover on fees for claims in which she did not pursue or ultimately prevail. No. 3:10-CV-2265-M, 2015 WL 9997211 (N.D. Tex. Dec. 28, 2015), *report and recommendation adopted*, No. 3:10-CV-2265-M, 2016 WL 407357 (N.D. Tex. Feb. 3, 2016). There, this Court reduced the attorneys' fees, finding "the amount of fees sought is not reasonable in relation to the results obtained on Plaintiff's Title VII retaliation claim and insofar as it includes attorneys' fees that would have been expended solely on claims on which Plaintiff did not prevail. *Id.* at *7. Though Plaintiff's race and national origin claims are factually related to her claims based on sex, "percentage reductions" are appropriate when a plaintiff brings claims that did not ultimately go to the jury. *Id.* at *8.

Finally, "the Court should exclude all time that is excessive, duplicative, or inadequately documented." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); *see e.g., Kostic*, No. 3:10-CV-2265-M at *2 (collecting cases) (finding that "percentage reductions are appropriate when attorneys impermissibly engage in block billing or fail to exercise billing judgment.") (internal quotations omitted). The overwhelming majority of Plaintiff's billing entries contain block billing, in which each timekeeper only has one entry per day, with several subsets of discrete tasks combined into one entry. Dkt. 131. Despite touting his decades of experience practicing law, it is

apparent from the contemporaneous billing records that block billing appears to be the rule, not the exception at Hill Gilstrap, P.C. Accordingly, Plaintiff's fees should be proportionately reduced to account for vague descriptions, block billing, duplicative work, and inadequate documentation. *See Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, No. 3:09-CV-0752-D, 2011 WL 487754 at *13 (N.D. Tex. Feb. 11, 2011) (applying a 20% reduction for vague descriptions, a 25% reduction for block billing, and a 30% reduction for inadequate documentation that prevented analysis of duplicative work).

3. The costs are not reasonable.

Plaintiff's costs are unreasonable. Plaintiff states she needed copies for "two trials." Dkt. 132 ¶ 2.11. That vast majority of the exhibits that were used at the second trial were available at the first. Moreover, many of the additional exhibits were unused and patently inadmissible.

**B. Front Pay**

First, Plaintiff's claim that the relationship between her and UTA, via the MAE faculty, is "irreparably damaged" to be entitled to front pay, is disingenuous. *Plaintiff still works for UTA and is actively trying to influence changes to MAE, including through this lawsuit as well as new lawsuit against UTA filed just last week and arising from the same underlying events at issue here. See* Exhibit A.

1. Plaintiff should not be rewarded for her failure to properly disclose her calculation of damages.

UTA reiterates the position it took at trial—Plaintiff engaged in trial by ambush by utterly failing to properly disclose her front pay calculation, thereby preventing UTA from obtaining discovery on said front pay. Rule 37 is clear that a failure to properly produce evidence in discovery bars the Court from considering such evidence. *See* Fed. R. Civ. P. 37.

Plaintiff's live complaint does not mention front pay whatsoever. Dkt. 31. Neither do

Plaintiff's mandatory disclosures, verified responses to interrogatories, or any amendments thereto. Dkt. When asked at deposition about her damages, Plaintiff could never truly pinpoint how much she sought in front pay. Dkt. 119-3. What she did pinpoint was her emphatic belief that she was entitled to the interim chair position, and ultimately the permanent chair position after Dr. Armanios retired. *Id.* Plaintiff has now backtracked, stating affirmatively that "She does not seek additional compensation for a speculative promotion to chair, dean, or another higher-paid position." Dkt. 132 ¶ 3.11 That is because Plaintiff is well aware that she is not entitled to these damages. Nevertheless, Plaintiff's new lawsuit, filed mere days after taking this position, undercuts the relief requested here and demonstrates Plaintiff's blatant attempt to seek a double recovery. *See* Exhibit A. at ¶ 7.2. Now that this trial is over, Plaintiff has finally admitted that she really seeks front pay related to the chair position through her new lawsuit.

The Sixth Circuit excluded all evidence of front pay and refused to award front pay because the plaintiffs changed their methodology between discovery and trial. *Howe v. City of Akron*, No. 5:06 CV 2779, 2011 WL 3566868 (N.D. Ohio Aug. 12, 2011). In *Howe*, the plaintiffs forwent an expert's late-disclosed calculations on front pay and intended to utilize their own testimony. *Id.* at * 1. The plaintiffs during deposition testified to a wholly different damage model than what was presented to the court and the basis for said model. *Id.* at * 2. The court noted that the defendant "as placed in a position of having deposition testimony in which Plaintiffs admitted to not calculating their damages and now having trial testimony that is **dramatically** different." *Id.* at * 7 (emphasis in original). As a result, the district court excluded the evidence and there was thus no evidence to support an award of front pay. *Id.*

This situation is almost exactly like *Howe*. At deposition, Plaintiff testified that, while not pled, she planned on seeking future lost wages based on her belief that "if discrimination and

retaliation never happened, I would most likely be the interim chair of the department, and most likely even the -- the department chair of this department..” Dkt. 119-3. This sentiment was reiterated in response to UTA’s Motion for Summary Judgment. Dkt. 43 pg. 25. Only at trial, with new counsel, does Plaintiff take the position that she has “no information that leads [her] to believe that [she] would have been promoted to a higher position.”[1] Dkt 131, App’x 028.

Plaintiff attempts to save her failure by “graciously” offering UTA “a focused post-verdict process allowing UTA to test duration, offsets, increases, and present value, with limited supplemental evidence if needed.” Dkt. 132 pg. 12. Plaintiff cites no authority for her suggested “post-verdict process,” and describes a process that already exists—discovery. *Id.* The time to conduct such a process was months ago, not months *after* trial. By suggesting that the Court permit further discovery admits that Plaintiff failed to comply with the discovery rules. Plaintiff cannot be allowed to recover a calculation of damages that was “bait-and-switched” *at* trial.

2. <u>Plaintiff impermissibly provides expert opinion as to inflation and cost-of-living increases.</u>

In addition, Plaintiff engaged in improper expert testimony. In her post-trial affidavit—an affidavit that UTA has been denied the opportunity to explore—she added “cost of living increase” and “present day value” to calculate her front pay. Dkt. 131. She explicitly states that “it is [her] *opinion* that she would have remained in that position until retirement or I would have been promoted to an even higher salary and position in lieu.” *Id.*

3. <u>The request for front pay is excessive, as it is highly speculative and constitutes a windfall.</u>

Plaintiff seeks thirteen years of front pay for an administrative position at a university she is still employed at. Front pay is not a mechanism to guarantee supplemental income to an

---

[1] Given her testimony at deposition, UTA contends this statement renders the affidavit a sham affidavit.

employee who remains employed. Plaintiff states in her affidavit "there has been significant conflict involving several of the faculty members and me, including the filing of multiple grievances back and forth. I believe that those facts will render it to be at best a very inhospitable working environment for me, and in fact, would not be good for UTA either." Dkt. 131 App'x 028. She says this *while still being employed and actively trying to participate in the department.*

Even if Plaintiff remained in said associate position and her calculations are based on personal knowledge rather than expert opinion, they are still exorbitant.Other circuits have found professors who keep their jobs but pursue other adverse employment actions may not receive front pay. For example, the Sixth Circuit noted that there was "no need for reinstatement *or payment in lieu of reinstatement*" for a full professor who never lost her position. *Szeinbach v. Ohio State Univ.*, 820 F.3d 814 (6th Cir. 2016) (emphasis added). In *Szeinbach*, the plaintiff even hired an expert to testify that she would have received a certain amount of additional money had she gone to another university. *Id.*

Here, Plaintiff's front pay calculation is highly speculative. "The longer the proposed front pay period, the more speculative the damages become." *Peyton v. DiMario*, 287 F.3d 1121, 1129 (D.C. Cir. 2002). The court in *Peyton* rejected the holding that "a plaintiff's intention to remain at her employer until retirement, even if that intention is entirely reasonable, automatically entitles front pay for the remainder of her work life." *Id.* That is because "front pay is intended to be temporary in nature." *Id.* at 1130. Plaintiff's testimony that associate chair positions were lifetime appointments was directly contradicted by the current associate chair, Brian Dennis, and multiple trial exhibits. The requested inference of thirteen years of front pay for an at-will administrative appointment is unsupported by the record.

While courts have considerable latitude in granting front pay, they must "strongly

consider" whether a front pay award would result in a windfall. *Wilder v. Stephen F. Austin State Univ.,* 552 F. Supp. 3d 639, 663 (E.D. Tex. 2021) (citing *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 491 (5th Cir. 2007)). Thirteen years of front pay—particularly in light of a lawsuit that directly contradicts testimony—would absolutely be a windfall.

**C. <u>Injunctive Relief.</u>**

Plaintiff's proposed injunction is overbroad, unnecessary, and would force this court to engage in judicial oversight far beyond what is legally permissible.

1. <u>The Court does not have the power to issue the requested affirmative injunction.</u>

Institutional reform injunctions requiring policy changes are heavily disfavored in the Fifth Circuit. *M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 271 (5th Cir. 2018). In *Stukenberg*, injunctions "must directly address and relate to the constitutional violation itself," and "federal court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate the Constitution or does not flow from such a violation." *Id.* As a result, "institutional reform injunctions are disfavored, as they often raise sensitive federalism concerns and they commonly involve areas of core state responsibility." *Id* (internal citations omitted).

Plaintiff requests "additional findings identifying which challenged determinations and derivative entries continue or aggravate the adjudicated injuries." Dkt. 132 ¶ 4.19. This word-salad implies that Plaintiff wants this Court to act as a second factfinder, after the jury's verdict, and parse which sentences in an over 800-page report are false and/or harassing and how they should be corrected.[2]

The assertion that Plaintiff "[does] not ask the Court to select departmental leaders, dictate

[2] Nothing in the reports can be seen as retaliatory. The adverse action occurred before the EOS complaints, and there is no evidence of any adverse action taken since.

curriculum, or adjudicate every disagreement within MAE" is laughable. She explicitly asks that this Court micromanage a university department:

> Plaintiff requests an independent MAE workplace and policy assessment addressing sex-based harassment, retaliation, investigation integrity, *shared governance*, conflict resolution, *faculty grievances*, workload assignments, *committee authority*, and *related policy compliance*, with particular attention to practices that could permit recurrence of the established violations.

Dkt. 132 ¶ 4.16 (emphasis added). She demands that UTA hire outside parties to audit MAE and the EOS office for three years. Respectfully, that is adjudicating every disagreement within MAE. And, bluntly, UTA doubts that Plaintiff would respect such findings. Should an independent audit of state action be ordered and no deficiencies are found, Plaintiff should be ordered to reimburse the cost of such an onerous undertaking.

Injunctions requiring audits exceed the Court's reach. *In re Stewart*, 647 F.3d 553, 557-58 (5th Cir. 2011). *In re Stewart* is on point. The Fifth Circuit overturned an injunction against Wells Fargo that required Wells Fargo "1) to audit every proof of claim it has filed in this District in any case pending on or filed after April 13, 2007; 2) to provide a complete loan history on every account and to file that history with the appropriate court; and (3) to amend ... proofs of claim already on file to comply". *Id.* 556The Fifth Circuit noted injunctions "must also be grounded in Article III" and the power to oversee an injunction "is not a distinct grant of authority." *Id.* at 557-58. The injunction Plaintiff seeks is well beyond the scope of this Court's authority.

**PRAYER**

UTA respectfully requests that the court reject the request for front pay or limit such relief. UTA further requests that any attorneys' fees be limited. Finally, UTA requests the Court deny Plaintiff's request for injunctive relief.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**WILLIAM WASSDORF**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Stephanie A. Criscione Houser /s/*
**STEPHANIE A. CRISCIONE HOUSER**
Assistant Attorney General
Texas Bar No. 24109768
Melissa B. Hostick
Assistant Attorney General
Texas Bar No. 24128832
Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848
(512) 475-4104 Fax: (512) 320-0667
Stephanie.Criscione@oag.texas.gov
**LEAD COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that on September 25, 2026, a copy of the foregoing was served on all counsel of record through the ECF filing system.

*/s/ Stephanie A. Criscione Houser /s/*
Stephanie A Criscione Houser
Lead Counsel for Defendant