UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**HAIYING HUANG,**

Plaintiff,

v. **No. 4:25-cv-00181-P**

**UNIVERSITY OF TEXAS AT ARLINGTON,**

Defendant.

## MEMORANDUM OPINION, ORDER, AND FINAL JUDGMENT

Before the Court is Plaintiff's Motion to Enter Judgment and for Attorney's Fees and Costs, Front Pay, and Injunctive Relief ("Motion"). ECF No. 130. In her Motion, Plaintiff Haiying Huang ("Dr. Huang") asks the Court to enter judgment on the jury's award in this case, to award attorney's fees and costs, to award front pay, and to enter permanent injunctive relief. Having considered the Motion, the Parties' filings, and the applicable law, the Court will **GRANT** the Motion **IN PART**.

## BACKGROUND

This case went to trial on August 11, 2026. On August 14, the jury returned a verdict in favor of Dr. Huang. ECF No. 124. The jury found Defendant, the University of Texas at Arlington ("UTA"), liable for Dr. Huang's claims of retaliation and sex-based harassment under Title VII. The jury awarded Dr. Huang $75,000 total in damages: $65,000 for back pay and benefits, and $10,000 for emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life. ECF No. 124 at 15.

After trial, the Court ordered the Parties to brief Dr. Huang's entitlement to attorney's fees and costs, front pay, and any other equitable relief she requested. ECF No. 126. Dr. Huang filed the instant

Motion on September 11, ECF No. 130, and the issues raised in the Motion are now fully briefed.

## LEGAL STANDARD

### A. Attorney's Fees and Costs

When awarding attorney's fees, this Court follows a two-step process. First, the Court calculates the "lodestar" amount: the reasonable number of hours spent on the litigation multiplied by the reasonable hourly rate charged. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Second, the Court exercises its discretion to determine whether the lodestar amount should be adjusted up or down. *Alexander v. City of Jackson Miss.*, 456 F. App'x 397, 399 (5th Cir. 2011). Any adjustment must be based on the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). But there is a strong presumption that the Court should award the lodestar amount. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

### B. Front Pay

Title VII of the Civil Rights Act permits the Court to award front pay as an equitable remedy. 42 U.S.C. § 2000e-5(g)(1); *Bogan v. MTD Consumer Grp., Inc.*, 919 F.3d 332, 335 (5th Cir. 2019). Front pay should only be awarded when reinstatement to a previously-held position is "not feasible." *Id.* at 336 (citation omitted). The Court considers various factors in calculating a front pay award, such as (1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) the age and physical condition of the employee, (5) possible consolidation of jobs, and (6) the myriad other non-discriminatory factors which could validly affect the employer-employee relationship. *Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007) (citing *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 871 (5th Cir. 1991)).

### C. Injunctive Relief

Title VII also permits the Court to "enjoin" any "unlawful employment practice" a defendant intentionally engages in. 42 U.S.C. § 2000e-5(g)(1). Absent "clear and convincing proof" that the defendant

will not continue to engage in the unlawful practice, "a grant of injunctive relief is mandatory." *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 354 (5th Cir. 1977) (citation omitted). But the Court has "broad discretion to craft an injunction that will ensure the employer's compliance with the law." *Equal Emp. Opportunity Comm'n v. SkyWest Airlines, Inc.*, No. 3:22-CV-1807-D, 2025 WL 697660 at *8 (N.D. Tex. Mar. 4, 2025) (quotation omitted).

## ANALYSIS

Dr. Huang's Motion asks the Court to award attorney's fees and costs, award front pay, and enter permanent injunctive relief. The Court will address each request in turn.

### A. Attorney's Fees and Costs

Title VII permits the Court to "allow the prevailing party" a "reasonable attorney's fee." 42 U.S.C. § 2000e-5(k). Although fee-shifting under Title VII is discretionary, a jury found in favor of Dr. Huang after a multi-day trial. As far as the Court is concerned, Dr. Huang is a prevailing party who ought to receive reasonable attorney's fees.

Dr. Huang requests $218,172.50 in attorney's fees and $3,284.90 in costs. ECF No. 130 at 1. According to the affidavit of Frank Hill, Dr. Huang's lead attorney, this lodestar amount was calculated by multiplying the reasonable hours worked on this case by attorneys and legal assistants at Hill Gilstrap, P.C. by their reasonable hourly rates. ECF No. 131-1 at 2–3. The hourly rates span from $695 for Mr. Hill to $95 for Hill Gilstrap's legal assistants. ECF No. 131-1 at 3. Mr. Hill has excluded any work done by Dr. Huang's original attorneys and attests to having excluded any unproductive or redundant hours. ECF No. 131-1 at 2, 4.

UTA makes three primary objections to Dr. Huang's lodestar calculation. *First*, UTA objects to the hourly rates claimed by Hill Gilstrap. UTA notes that the requested rates for Dr. Huang's attorneys exceed the general average for both Texas and the Dallas-Fort Worth area. ECF No. 134 at 4. But the relevant rate is the "prevailing hourly rate in the community for similar work." *Combs v. City of Huntington, Texas*, 829 F.3d 388, 392 (5th Cir. 2016) (quotation omitted). While the

general average for Texas and Dallas-Fort Worth attorneys bear some relevance, they do not prove the reasonable rate for employment litigation in Fort Worth federal court. Mr. Hill has sufficiently shown that the hourly rates he proposes are reasonable both for this sort of litigation and for the skill and experience of Hill Gilstrap's attorneys and legal assistants. ECF No. 131-1 at 4. UTA has not shown that the rates claimed by Mr. Hill are unreasonable.

*Second*, UTA argues that the hours worked must be reduced because "the overwhelming majority of Plaintiff's billing entries contain block billing." ECF 134 at 5–6. The Court may indeed reduce the lodestar amount for block billing.[1] But it should only do so to the extent any block billing prevents the Court from determining whether the claimed hours are reasonable. *Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, No. 3:09-CV-0752-D, 2011 WL 487754 at *5 (N.D. Tex. Feb. 11, 2011) ("A reduction for block billing is not automatic."). Having reviewed the submitted entries, the Court agrees that many of Hill Gilstrap's time entries constitute block billing. But few of them are blatant enough to prevent the Court from assessing whether the hours are reasonable.[2] If this Court has reduced a fee award by 40% for billing entries that spanned entire months of work on a case, *Paris v. Dallas Airmotive, Inc.*,

[1] Block billing is a "time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Glass v. United States,* 335 F.Supp.2d 736, 739 (N.D. Tex. 2004) (citing *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,* 82 F.3d 1533, 1534 n. 15 (10th Cir. 1996)).

[2] Many of Hill Gilstrap's billing entries claim two or three hours for two or three specific tasks. These entries do not prevent the Court from assessing whether those hours were reasonably spent. For example, an attorney spent 2.30 hours on three tasks: reviewing the case file to re-familiarize themselves with it, conducting a telephone conference with the client regarding a motion for summary judgment, and drafting a motion to substitute counsel. ECF No. 131-2 at 10. Although this entry constitutes block billing, the Court is satisfied that these hours are not unnecessary or duplicative. Some of Hill Gilstrap's billing entries, on the other hand, do preclude assessment of their reasonableness. For example, an attorney billed 8.00 hours for "trial preparation." ECF No. 131-2 at 14. This entry is not descriptive enough for the Court to determine whether the hours spent are "reasonable." 42 U.S.C. § 2000e-5(k).

No. CIV.A. 3:97-CV-0208-L, 2004 WL 2100227 at *9 (N.D. Tex. Sept. 21, 2004), the Court finds only a modest percentage reduction warranted here.

*Third*, UTA claims that Dr. Huang should not recover fees for work done on Title VII claims she withdrew at trial. During the Parties' jury charge conference, Dr. Huang decided to withdraw her race and national origin claims and only submit her claims for retaliation and sex-based harassment to the jury. But, as UTA admits, ECF No. 134 at 5, these claims were factually related to the claims Dr. Huang prevailed on. A request for attorney's fees "should not result in a second major litigation." *Kostic v. Texas A&M Univ.-Com.*, No. 3:10-CV-2265-M, 2015 WL 9997211 at *7 (N.D. Tex. Dec. 28, 2015), *report and recommendation adopted,* No. 3:10-CV-2265-M, 2016 WL 407357 (N.D. Tex. Feb. 3, 2016). In awarding fees, the goal "is to do rough justice" based on the Court's "overall sense of a suit." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The Court declines to conduct a line-by-line audit of which hours were spent on which legal claim when each claim was based on the same underlying conduct.

The Court finds that Dr. Huang's calculation represents a reasonable lodestar amount. It will impose a 10% reduction in fees for unreasonable block billing. Dr. Huang asks for no further adjustment, ECF No. 132 at 9, and the Court finds none necessary. Accordingly, the Court awards $196,355.25 in reasonable attorney's fees and $3,284.90 in costs, for a total of **$199,640.15**.

**B. Front Pay**

The jury found that Dr. Huang was unlawfully removed from her position as an associate chair of UTA's Mechanical and Aerospace Engineering Department. ECF No. 124 at 2. Accordingly, in lieu of reinstatement to that position, Dr. Huang asks the Court to award front pay of either $297,323.28 or $269,569.14, depending on the application of a proposed cost-of-living increase and discount rate. ECF No. 130 at 1. Front pay compensates a plaintiff "for wages and benefits he would have received from the defendant in the future" if not for the unlawful action. *Julian v. City of Houston, Tex.*, 314 F.3d 721, 729 (5th Cir. 2002).

Given the jury's verdict in this case, the Court believes Dr. Huang entitled to either reinstatement or front pay as an equitable remedy.

The Court may award Dr. Huang front pay only if reinstatement to her previous position is infeasible. *Bogan*, 919 F.3d at 336. Dr. Huang contends that she could not serve in the same administrative leadership position that caused her to suffer the retaliation and sex-based harassment found by the jury in this case. ECF No. 132 at 14. The administration of the Mechanical and Aerospace Engineering Department, Dr. Huang says, continues to experience "significant faculty conflict" and "reciprocal grievances" between faculty members stemming from the events underlying this case. ECF No. 132 at 14.

For its part, UTA points out that Dr. Huang continues to work as normal as a professor in the Mechanical and Aerospace Engineering Department. ECF No. 134 at 6. But the relevant question is whether Dr. Huang could feasibly work in an administrative leadership position overseeing that department. The Court agrees with Dr. Huang that the record in this case shows that reinstatement is not feasible. Dr. Huang's ability to serve as associate chair has been irreparably damaged by the faculty conflict and hostile relationships underlying this case, including the pending complaints between Dr. Huang and other engineering professors she would oversee. ECF No. 131-3 at 28. The Court may therefore award front pay for the wages she would have earned had she remained associate chair.[3]

[3] UTA asks that Dr. Huang be precluded from recovering front pay because she failed to expressly plead a front pay request or make a front pay calculation prior to trial. But failure to request front pay in a complaint "does not preclude the award." *Reneau*, 945 F.2d at 870; *see* FED. R. CIV. P. 54(c) ("Every [] final judgment [other than a default judgment] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."). And as front pay is an equitable remedy determined by the Court, the Court does not believe that Dr. Huang's failure to provide a specific front pay calculation in discovery precludes the award. Dr. Huang's initial disclosures included lost future wages, and the Court ordered the Parties to brief Dr. Huang's entitlement to front pay, if any. ECF No. 126; *see* Fed. R. Civ. P. 37(c)(1) (providing that failure to include a specific damages calculation in a party's initial disclosures will not preclude evidence of those damages if the failure was "harmless").

On top of her salary as a professor, Dr. Huang's position as associate chair came with yearly pay of $28,000. ECF No. 131-3 at 28. Dr. Huang assumes that she would have remained associate chair until her planned retirement. To reach her front pay calculation, then, she multiplies this yearly pay by 13 years. ECF No. 131-3 at 28. Dr. Huang only supports this assumption with her personal knowledge that associate chairs stay in the position "for many years," and that her immediate predecessor remained in the position for "over 10 years." ECF No. 131-3 at 28. In response, UTA argues that 13 years of front pay would constitute a highly speculative windfall. ECF No. 134 at 9–10. The Court agrees.

Front pay is "necessarily speculative." *Reneau*, 945 F.2d at 870. But "[t]he longer the proposed front pay period, the more speculative the damages become." *Peyton v. DiMario*, 287 F.3d 1121, 1129 (D.C. Cir. 2002) (quotation omitted). Here, Dr. Huang has not offered evidence justifying the highly speculative assumption that she would have remained associate chair for the rest of her career. *See id.* (failing to find "any case which suggests that an employee's subjective intent to remain at a job until retirement, *by itself*, justifies [such] an award of front pay"). Evidence at trial indicated that the associate chair position is not a lifetime appointment. Conversely, associate chairs serve at-will with no fixed term. ECF No. 134 at 9. Dr. Huang had already served in that position for a year and a half at the time of her removal. ECF No. 131-3 at 27.

Given the nature of the position, the length of Dr. Huang's prior service in it, and the possibility that she may have been removed from the at-will position for some other, lawful reason, the Court finds that five years of front pay adequately compensates for Dr. Huang's removal. Front pay is "intended to be temporary in nature," not a windfall. *Peyton*, 287 F.3d at 1130 (quotation omitted). Accordingly, the Court awards **$140,000** in front pay.[4]

---

[4] Dr. Huang proposes via affidavit that the Court incorporate a 3% annual cost of living increase and 4.5% discount rate to its front pay award. Coming from Dr. Huang, whom the Parties agree is not an economist, those figures constitute improper expert testimony. The Court believes the fairest and

### C. Injunctive Relief

Title VII authorizes this Court to enjoin UTA from engaging in an unlawful employment practice "and order such affirmative action as may be appropriate." 42 U.S.C. § 2000e-5(g)(1). The jury in this case found that UTA unlawfully retaliated against Dr. Huang for her protected conduct and failed to take prompt remedial action when another faculty member harassed Dr. Huang because of her sex. ECF No. 124 at 2–3.

In light of that verdict, Dr. Huang asks the Court to enter a permanent injunction prohibiting UTA from further sex-based harassment or retaliation against Dr. Huang. She also asks for an injunction ordering UTA to do the following things:

1. Rescind findings and conclusions contained in several internal investigation reports concerning Dr. Huang;
2. Rescind a written warning contained in Dr. Huang's internal personnel file;
3. Provide written notice of the jury's verdict in this case to various people and offices at UTA;
4. Retain an external investigator at its own expense to review the investigations mentioned above and prepare a corrective action plan that includes, among other things, mandatory investigation integrity training for UTA personnel;
5. Conduct an annual audit for three years of UTA's internal compliance with Title VII and Title IX policies;
6. In the event Dr. Huang files a renewed Title IX complaint, retain an external investigator at its own expense to investigate those complaints;
7. Retain an external firm at its own expense to review the Mechanical and Aerospace Engineering Department's workplace policies and prepare a corrective action plan that includes training for its personnel; and

---

simplest approach—especially considering the lack of expert testimony on either figure—is to multiply the lost income by the five-year duration.

8. Conduct an annual audit for three years of the Mechanical and Aerospace Engineering Department's internal compliance with Title VII and Title IX policies.

ECF No. 130 at 2.

Given the jury's verdict, the Court believes itself bound to issue an appropriate injunction "that will ensure the employer's compliance with the law." *E.E.O.C. v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 467 (6th Cir. 1999). But the Court possesses "broad discretion" to craft such an injunction. *Id.*; *see* 42 U.S.C. § 2000e-5(g)(1) (authorizing district courts to enter any equitable relief "as the court deems appropriate"). In this case, an appropriate injunction prohibits UTA from committing any further sex-based harassment or retaliation against Dr. Huang—the claims Dr. Huang prevailed on at trial.

The Court finds the remaining injunctive relief Dr. Huang requests overbroad and unnecessary to remedy the Title VII violations identified by the jury. Indeed, the request for protracted audits and oversight of UTA's internal operations is somewhat extraordinary under the facts of this case. Though the Court does not take the jury's verdict lightly, the Fifth Circuit regards sweeping institutional reform injunctions as "disfavored." *M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 271 (5th Cir. 2018).

To the extent Dr. Huang seeks to avoid any past findings or warnings being unlawfully used against her in the future, the Court believes an injunction prohibiting any future harassment or retaliation sufficient for that purpose. Accordingly, the Court will permanently enjoin UTA "from sex-based harassment or discrimination against Plaintiff and from retaliation for her protected activity." ECF No. 130 at 2.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiff's Motion to Enter Judgment and for Attorney's Fees and Costs, Front Pay, and Injunctive Relief (ECF No. 130). The Court further **ORDERS** the following:

1. Judgment shall be entered in favor of Plaintiff Haiying Huang and against Defendant University of Texas at Arlington on the jury's award of $65,000.00 in back pay and benefits and $10,000.00 in nonpecuniary damages, for a total jury award of $75,000.00.
2. Plaintiff is awarded $2,102.67 in supplemental back pay for the period spanning August 15, 2026 through September 10, 2026. This amount does not overlap with the front pay period, which begins upon entry of judgment.
3. Plaintiff is awarded $199,640.15 in reasonable attorney's fees and costs.
4. Plaintiff is awarded $140,000.00 in front pay in lieu of reinstatement to the associate chair position. This award is for lost associate chair compensation only and does not include or replace Plaintiff's continuing faculty salary.
5. Plaintiff is awarded $5,584.23 in prejudgment interest through September 10, 2026.
6. Post-judgment interest shall accrue on all eligible monetary amounts at the rate prescribed by 28 U.S.C. § 1961(a), beginning on the date judgment is entered, computed daily and compounded annually in accordance with 28 U.S.C. § 1961(b), until paid.
7. Defendant University of Texas at Arlington, together with its officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with Defendant and who receive actual notice of this Order, is permanently **ENJOINED** from:
    a. Retaliating against Plaintiff because she engaged in activity protected by Title VII, filed or pursued this action, sought or obtained relief in this action, or seeks enforcement of this Order;
    b. Subjecting Plaintiff to harassment or discrimination because of her sex in violation of Title VII; and
    c. Taking adverse employment action against Plaintiff because she reports, opposes, or participates in an

investigation of conduct that she reasonably believes violates Title VII.

This final judgment is issued pursuant to Federal Rule of Civil Procedure 58(a). The above-captioned case is **DISMISSED with prejudice**. The Clerk of the Court shall transmit a true copy of this judgment to the parties.

**SO ORDERED** on this **16th day** of **October 2026.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE